**Exhibit 17 to
Declaration of Srecko Vidmar
in Support of
Apple's Motion for Summary Judgment**

```
 1                UNITED STATES COURT OF APPEALS

 2                   FOR THE FEDERAL CIRCUIT

 3

 4    Appeal No. 16-2004
      _____
 5
      SAMSUNG ELECTRONICS CO., LTD., et al.,
 6
      Appellant,
 7
      v.
 8
      STRAIGHT PATH IP GROUP, INC.
 9
      Appellee.
10    _____

11
              REPORTER'S TRANSCRIPT OF AUDIO PROCEEDINGS
12
                          June 23, 2017
13
      _____
14
                          ORAL ARGUMENT
15
16    _____

17

18

19

20

21

22

23    Tran            :
      LAUR           NG, FCRR, CSR
24

25
```

H+G

Hunter+Geist, Inc.

303.832.5966
800.525.8490

1900 Grant Street, Suite 1025
Denver, CO 80203

■ www.huntergeist.com
■ scheduling@huntergeist.com

Your Partner in Making the Record

Court Reporting, Legal Videography, and Videoconferencing

Case 3:16-cv-03582-WHA   Document 131-19   Filed 10/05/17   Page 3 of 7
AUDIO PROCEEDING - 6/23/2017
Audio Transcription - Hogal Lovells v. Samsung Electronics, et al.

13

1  a hundred percent perfect accuracy.  We do not believe
2  that that was a part of the claimed construction.
3  And, indeed, Straight Path didn't even defend that
4  position in its opposing brief.
5         FEMALE JUSTICE:  Can I just ask you
6  before your time runs out, this is as an aside, the
7  one shout out you did get in SIPNET from the majority
8  was the suggestion that we haven't -- we're not saying
9  anything with regard to written description or
10 enablement, right?
11        MR. JACOB:  Yes, ma'am.
12        FEMALE JUSTICE:  Has that ever been at
13 issue?  I mean, there's so many IPRs going on, and,
14 obviously, the IPRs aren't covering that.
15        Is there litigation pending in the
16 district court?  Has anyone ever raised or adjudicated
17 the question of enablement description under this claim
18 construction?
19        MR. JACOB:  There is litigation pending
20 in the district court, and that issue has not yet been
21 adjudicated, Your Honor.
22        I'll reserve the rest of my time.
23        FEMALE JUSTICE:  Thank you.
24        MR. WODARSKI:  Good morning.  May it
25 please the Court.

14

1         To echo what was said in the first
2  argument today, here we are again.
3         Chief Judge, you actually put it exactly
4  right, SIPNET does speak loudly and clearly.  And --
5         CHIEF JUSTICE:  Can -- can we start with
6  where your friend on the other side left off, and that
7  is with the district court litigation?
8         Is it correct that -- that it says in
9  footnote 3 of the blue brief, or one of the blue
10 briefs, that -- that, in fact, in district court you
11 took a different position with respect to claim
12 construction?
13        MR. WODARSKI:  No, Your Honor.  Our --
14 our position has always been consistently that "is
15 connected" means is connected at the time the query is
16 transmitted.
17        CHIEF JUSTICE:  And that -- that there
18 could -- there is no infringement if they -- if it's
19 not accurate all the time?
20        MR. WODARSKI:  What we have said
21 consistently, including in all these proceedings and
22 in the SIPNET appeal and all the proceedings that led
23 to that appeal, is that the system must be designed to
24 be accurate and reliable.  Yeah.  So I think the
25 difference here is that only appellant's counsel and

15

1  (unintelligible) have turned that in this notion of
2  perfection.  That doesn't appear anywhere in any of
3  the proceedings below.
4         I think it should be somewhat
5  commonsensical that when you design a system to make a
6  determination, like the SIPNET panel said, it -- it has
7  to be accurate and reliable.  That's the whole purpose
8  for the system.  So it's designed to shrink or
9  eliminate that gap between actual and recorded --
10        CHIEF JUSTICE:  So you think that Judge
11 Dyk was wrong in his dissent when he said that the
12 majority opinion required absolute accuracy?
13        MR. WODARSKI:  I think the system --
14        This is what I think of Judge Dyk.  My
15 answer to that is that Judge Dyk didn't get it right
16 for this reason:  I think we and the SIPNET panel got
17 it right that the system has to be designed to always
18 return an accurate and reliable answer to the query.
19 The determination has to be reliable or else why design
20 the system.
21        What -- what Judge Dyk's dissent posited
22 was, well, if it requires this 100 percent, you know,
23 it doesn't require this 100 percent, actually, is
24 enough that I say I spoke to John five minutes ago, so
25 he must be at home.  In other words, does an inference

16

1  alone satisfy the reliability of the system.  And, no,
2  it doesn't.
3         If you had added to his hypothetical what
4  the patent actually calls for and the claim requires,
5  that, hey, I just spoke to John five minutes ago, and I
6  told him if for any reason he's going to go off line or
7  turn his phone off, just let me know, that --
8         FEMALE JUSTICE:  But -- but --
9         MR. WODARSKI:  -- that would be
10 different.
11        FEMALE JUSTICE:  But putting that
12 analogy aside, then.  So how -- how does it determine
13 if someone is on line if it's not been checking
14 registrations?  I mean, you concede that all of the
15 embodiments refer to checking registration databases.
16        MR. WODARSKI:  No, Your Honor.  I mean,
17 I -- I -- I --
18        That's why I think, actually, because
19 there was that discord between Judge Dyk and the -- the
20 other judges on the SIPNET panel, the majority of the
21 opinion actually discusses the specification to show
22 and demonstrate that it's not in any way in discord
23 with the opinion.
24        I mean, if -- they refer you to column
25 six and say, listen, what's happening is we have to

Case 3:16-cv-03582-WHA   Document 131-19   Filed 10/05/17   Page 4 of 7

AUDIO PROCEEDING - 6/23/2017
Audio Transcription - Hogal Lovells v. Samsung Electronics, et al.

17

1  know the computer has come on line is now an active
2  party ready for communication.
3      FEMALE JUSTICE:  Right.
4      MR. WODARSKI:  That's column five.
5  That's registration.
6      But then column six he goes on to, but
7  our system also has to track whether you are continuing
8  to stay on line.  We either have to -- there has to be
9  some mechanism in the system to flag you as off line --
10     FEMALE JUSTICE:  Okay.  What is the
11 mechanism?
12     MR. WODARSKI:  Excuse me?
13     FEMALE JUSTICE:  What's the mechanism?
14     MR. WODARSKI:  There's many mechanisms,
15 Your Honor.  One of ordinary skill in the art -- as
16 we -- we said to the panel below and mentioned in the
17 proceedings in SIPNET, there are many ways that you
18 could accomplish that, you know, pervasive connection,
19 constant pinging.  One of skill in the art would know
20 that.
21     The issue in SIPNET and the issue that
22 controls here is that the claim plainly requires that
23 it track that online status so that it can meet the
24 determination at the time that the query is transmitted
25 to the server.

18

1      So, Your Honor, I just --
2      MALE JUSTICE:  Is running the same thing
3  as being on line?
4      MR. WODARSKI:  Currently running would
5  be the same as being online status, being on line,
6  yes, Your Honor.
7      MALE JUSTICE:  Okay.
8      MR. WODARSKI:  So three things caught my
9  eye, Your Honor, that I just -- and I think the
10 colloquy between you and opposing counsel did a very
11 good job on these things, but three things quickly.
12     The appellants now say that they agree
13 that registration alone is enough.  I'm taking that --
14 that's clearly not true.  That has never been their
15 position.
16     The simple reality is they must continue
17 to argue that registration alone is enough because
18 without it, they lose.  There's know better example of
19 that then page 21 of their reply brief at Footnote 3
20 where they raise what they believe is a proper
21 hypothetical to understand why the prior art
22 invalidates the claims.
23     They say that there's a person that moves
24 to a city, John, the city registry, he goes and
25 registers his name and the address at which he lives,

19

1  and that enters into the city's database.  It's odd
2  enough that they choose as a hypothetical a registry,
3  but they then that say if someone comes in and asks is
4  John living in the city, they will go to the database
5  of their records and provide the information from the
6  database.  What they don't tell you is that will just
7  provide you the last known address of John.  That is
8  not the query that these claims require.
9      FEMALE JUSTICE:  Let me -- let me ask
10 you, and -- and I'm going to use some of your prior
11 statements against you here in this -- in this
12 question.  So you can tell me why I -- I shouldn't or
13 why it's wrong.
14     MR. WODARSKI:  Sure.
15     FEMALE JUSTICE:  But -- but --
16     So the board said that WINS and NetBIOS
17 don't disclose the is connected to.  But they never
18 actually address whether or not what WINS and NetBIOS
19 do disclose might otherwise lead a person of ordinary
20 skill in the art to the point of understanding how to
21 do the pinging or all those things that you said were
22 commonly known in the art, and that you didn't have --
23 that a person of skill in the art would understand.
24     So why isn't that a relevant question?
25     MR. WODARSKI:  Because the -- as the --

20

1  this Court in SIPNET said, the written
2  discrimination -- written description enablement issue
3  was not part of the (unintelligible) party's review
4  process.  It was not part of the proceedings --
5      FEMALE JUSTICE:  I'm not talking about
6  written description or enablement.
7      I'm saying you said that -- that there
8  really wouldn't have been -- there wouldn't be a
9  problem on written description or enablement because
10 one of ordinary skill in the art would understand
11 exactly how to do it.
12     So I'm saying on a pure obviousness
13 analysis, if one of ordinary skill in the art would
14 understand exactly how to get from tracking register --
15 whether they've registered or on line in the first
16 instance and continually pinging to make sure they're
17 still on line, if that's the case, why wouldn't that be
18 obvious?
19     MR. WODARSKI:  Well, I -- I don't think
20 that's obvious, Your Honor.
21     I -- I -- I think the -- the thing that's
22 actually before us, though, is whether or not this
23 system, the board in considering the prior art systems,
24 whether or not they actually attempt to make the
25 determination required by the claims, and they don't.

Case 3:16-cv-03582-WHA   Document 131-19   Filed 10/05/17   Page 5 of 7
AUDIO PROCEEDING - 6/23/2017
Audio Transcription - Hogal Lovells v. Samsung Electronics, et al.

25

1    MR. WODARSKI: But it -- it completes
2  something that's not quoted there. It says only that
3  it -- it --
4    They expressly acknowledge that --
5  that --
6    MALE JUSTICE: Mapping in the database
7  does not ensure that the related device is currently
8  running, only that it's there.
9    MR. WODARSKI: That -- that's right.
10 And so this -- it's not just --
11   The board quoted it that it doesn't
12 ensure part. But, you know, what wasn't quoted by the
13 board is equally as important right below that.
14   The system is only that a
15   departure claims a particular IP address
16   and that current -- that's currently valid
17   IP mapping.
18   MALE JUSTICE: Um-hum.
19   MR. WODARSKI: In other words --
20   MALE JUSTICE: Um-hum.
21   MR. WODARSKI: -- I've registered a
22 name. I've registered an IP address. They're mapping
23 together.
24   MALE JUSTICE: I understand that.
25   MR. WODARSKI: So, yeah. I --

26

1    But I think, Your Honor, I -- I don't
2  have something at the ready that says "currently
3  running" is -- is synonymous with "online status"
4  for --
5    MALE JUSTICE: (Unintelligible.)
6    MR. WODARSKI: But no one has ever
7  disputed that, and I don't think you really could.
8    So if I could just return briefly just to
9  the three points I want to make sure are clear.
10   Opposing counsel said that the board got
11 it wrong because they said it's some notion of a
12 question of timing. I just want to be clear. As I've
13 just run through with you, it was a question of the
14 system not doing it at all. And so it was very clear
15 that in this example the board clearly and
16 unambiguously followed the construction and the
17 guidance provided by the SIPNET court.
18   And three things are dispositive of why
19 we know that. One, the -- the SIPNET opinion gives us
20 the construction, an explanation of what the query must
21 do to accomplish something under that construction: It
22 must make the determination of online status at the
23 time of the query, and then it goes on to say it's --
24 and this is very important. It goes on to say it would
25 not be a reasonable construction to find that the

27

1  limitation is satisfied by something that only asks for
2  registration information regardless of its accuracy.
3    You have to understand the context of
4  that. When they -- when they had the SIPNET appeal,
5  when this Court had the SIPNET appeal, it knew the
6  exact same pieces of art were before it -- before the
7  board below, presented in the exact same way. And so
8  those --
9    FEMALE JUSTICE: And wasn't -- wasn't
10 SIPNET -- wasn't their analysis there an anticipation
11 analysis and not an obviousness analysis, or am I
12 wrong about that?
13   MR. WODARSKI: Your Honor, as I
14 recall --
15   FEMALE JUSTICE: With respect to
16 these --
17   MR. WODARSKI: -- it was -- it was both,
18 but I --
19   FEMALE JUSTICE: Both were in the case,
20 but I think the -- the claims we're talking about were
21 anticipation. I may be wrong.
22   You don't recall?
23   MR. WODARSKI: Fair.
24   The take-away point is -- is literally
25 this is simple: What they said is the -- the proper

28

1  construction of the claim is -- is this: "Is
2  connected" means is connected at the time of the query.
3  And for whatever might satisfy that going forward, it
4  cannot be the only thing that these prior art systems
5  do.
6    In other words, the -- the systems
7  acknowledge expressly that all they do is map an IP
8  address to a name, and that's the only information
9  they'll provide. And the SIPNET decision says, under
10 our construction, for whatever might in the future meet
11 or not meet that limitation, this type of thing cannot
12 do that.
13   And that, Your Honor, I believe is
14 dispositive of the issue you have here before you, and
15 that's why I think knowing that they've tried to
16 construct this argument that somehow the board
17 ingrafted a limitation at our invitation. It -- it's
18 simply wrong, Your Honor.
19   As a matter of fact, if -- if you look at
20 it, the board was literally just applying SIPNET
21 because it had to. As to these references, it not only
22 provided the proper construction, but it, essentially,
23 gave guidance that must be followed and controls the
24 outcome.
25   FEMALE JUSTICE: You've boxed yourself

Case 3:16-cv-03582-WHA   Document 131-19   Filed 10/05/17   Page 6 of 7
AUDIO PROCEEDING - 6/23/2017
Audio Transcription - Hogal Lovells v. Samsung Electronics, et al.

29

1  into a pretty narrow infringement argument, though,
2  haven't you, with this claim construction?
3           In other words, a system that only does
4  what -- what NetBIOS or WINS did wouldn't infringe,
5  right?
6           MR. WODARSKI:  A system does what
7  NetBIOS and WINS do does not meet the limitation of
8  "is connected," Your Honor; that's correct.
9           FEMALE JUSTICE:  Okay.
10          MR. WODARSKI:  I -- I don't think --
11 other than that, I --
12          In other words, I know that that's not
13 what satisfies the claim.  I don't think it speaks to
14 whatever might satisfy the claim.
15          FEMALE JUSTICE:  Okay.
16          MR. WODARSKI:  But, Your Honor, just --
17 I just want to be clear with this issue of the board.
18          I think the -- you fairly appreciate this
19 already, but to this notion that the board somehow
20 adopted their conclusions or contentions about how it
21 operates, it -- it's apparent from the record that --
22 with respect to 469, claim 1 -- is-connected limitation
23 isn't even present in that claim.  Those were claims
24 where the discussion was about other grounds, and those
25 claims were canceled.

30

1           And so I think (unintelligible).
2           FEMALE JUSTICE:  Thank you.
3           MR. WODARSKI:  Thank you.
4           MR. JACOB:  Thank you, Your Honors.
5           I would like to focus on two questions
6  that were raised to Straight Path.
7           The first question was Straight Path was
8  asked straight out, is a hundred percent perfect
9  accuracy required, and today Straight Path tried to
10 argue, oh, this isn't about accuracy.  This -- that's
11 not the limitation that is at issue.
12          But what I'd like to do is read what
13 Straight Path actually told the board and what Straight
14 Path previously told the federal circuit.
15          At oral argument in the SIPNET appeal,
16 the Court specifically asked whether Straight Path's
17 view, and I'm quoting:
18               -- view is that the database must
19         always be accurate, and that's the
20         difference between the patented --
21         patented invention and the prior art,
22         correct?
23          And Straight Path responded:
24               That's correct, Your Honor.
25               That's at 806 (unintelligible) 3rd --

31

1           FEMALE JUSTICE:  But -- but in -- in our
2  prior opinion --
3           MR. JACOB:  Yes.
4           FEMALE JUSTICE:  -- we expressly stated
5  that a query that asks only for registration
6  information does not satisfy the limitations of the
7  claim.
8           MR. JACOB:  That's correct.
9           FEMALE JUSTICE:  And do you dispute that
10 NetBIOS and WINS only asks for registration
11 information?
12          MR. JACOB:  We absolutely do.  And I
13 just want to make this perfectly clear, Your Honor.
14 When Straight Path was asked -- below, Straight
15 Path -- this was Straight Path's position about what
16 the embodiment is of the limitation that we are
17 discussing, the is-connected-to-the-network
18 limitation.  And I'm quoting now.  This is appendix
19 13-98.
20              To determine whether a process is
21        currently connected to the computer
22        network at the time of the query, the
23        specification describes that the
24        connection server performs at least a
25        two-step protocol to, one, track when the

32

1        process connected to the network, and,
2        two, track when the process disconnects
3        from the computer network.
4           That is exactly, exactly what the board
5  found that the prior art does in this case.
6           Chief Justice asked Straight Path, what
7  are the embodiments?  What are the embodiments?  And
8  Straight Path said, well, we don't have to answer that
9  question.  Straight Path has already answered it below.
10 They have answered what specific technology is required
11 to meet this limitation, and the board found that the
12 prior art actually performs those limitations exactly
13 as described by Straight Path.  That's the important
14 point here.
15          Today Straight Path tried to argue for --
16 for the first time in these proceedings, well, perfect
17 accuracy might not be required.  Maybe the patent could
18 make some errors.  It only has to be designed to be
19 accurate.
20          This shifting accuracy standard is -- is
21 absolutely crucial, Your Honor.  Straight Path is not
22 permitted to avoid the prior art by arguing for perfect
23 accuracy before the board, and then in later
24 proceedings attempt to dis --
25          FEMALE JUSTICE:  But that's not --

```
 1                    REPORTER CERTIFICATE

 2                    I, LAURA L. CORNING, Federal
     Certified Realtime Reporter, Certified Shorthand
 3   Reporter, certify that the above proceedings were
     transcribed by me from a secondary source, i.e.,
 4   audiotape, videotape, CD-ROM or DVD.

 5                    I certify that efforts were made
     to understand and transcribe portions which are not
 6   clear because of the method of recording; that
     inaudible portions are noted; that phonetic
 7   translations in place of correct spellings necessarily
     exist; that the above is a true and accurate
 8   transcript, to the best of my ability, of the media
     provided to me.
 9
                      I certify I am not related to any
10   party herein or their counsel and have no interest in
     the result of this litigation.
11
                      Attested to by me, this 15th day
12   of September, 2017.

13

14

15

16

17

18                         _____
                           LAURA L. CORNING
19                         Federal Certified Realtime Reporter
                           Certified Shorthand Reporter
20

21

22

23

24

25
```