1

2

3

4

5

6        IN THE UNITED STATES DISTRICT COURT

7        FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10    STRAIGHT PATH IP GROUP, INC.,              No. C 16-03463 WHA

11            Plaintiff,                         No. C 16-03582 WHA

12      v.

13    CISCO SYSTEMS, INC.,

14            Defendant.

15    _____           **ORDER GRANTING MOTIONS
                                                 FOR SUMMARY JUDGMENT
16    STRAIGHT PATH IP GROUP, INC.,              OF NONINFRINGEMENT AND
                                                 ORDER TO SHOW CAUSE**
17            Plaintiff,

18      v.

19    APPLE INC.,

20            Defendant.

21    _____/

22

23                              **INTRODUCTION**

24        In these related actions for patent infringement, defendants move for summary judgment

25    of noninfringement.  The motions are **GRANTED**.

26                               **STATEMENT**

27        The essence of this order is that the patent owner saved its patents from invalidity by

28    making clear-cut representations to the Federal Circuit — representations that it cannot now

disavow in order to prove its infringement case.  Being bound by the Federal Circuit's rulings

as a result of the patent owner's prior representations, this order holds that there is no way defendants' accused products infringe the asserted claims at issue. The patent owner and its counsel, the law firm of Russ, August & Kabat, are further ordered to show cause why they should not pay defendants' attorney's fees.

\*   \*   \*

The procedural background of these related actions has been described in prior orders and need not be repeated here (*see* Case. No. 16-3582, Dkt. Nos. 61, 78). In brief, plaintiff Straight Path IP Group, Inc., sued defendant Cisco Systems, Inc., alleging infringement of United States Patent Nos. 6,009,469 ("the '469 patent"), 6,108,704 ("the '704 patent"), 6,131,121 ("the '121 patent"), and 6,701,365 ("the '365 patent"). In a related action, Straight Path also sued defendant Apple Inc. for allegedly infringing these four patents plus United States Patent No. 7,149,208 ("the '208 patent").

The patents-in-suit belong to the same family and "concern a system and method for enabling point-to-point communications between running computer applications connected to the same computer network." Specifically, they "disclose a point-to-point Internet communications protocol that enables: (1) a first computer program to query a connection server to determine if a second computer program is currently connected to the network, and (2) if the second computer program is connected, to obtain its existing network address so that the desired point-to-point communication can be established at the time it is sought" (Case Nos. 16-3463, Dkt. No. 1 ¶¶ 12–13; 16-3582, Dkt. No. 84 ¶¶ 12–13).

In July of this year, Straight Path narrowed its asserted claims to the following (Case Nos. 16-3463, Dkt. No. 86; 16-3582, Dkt. No. 101):

Against Cisco —
- Claims 3, 6, and 9 of the '469 patent;
- Claims 1, 6, 11, 22, and 39 of the '704 patent;
- Claim 10 of the '121 patent; and
- Claim 3 of the '365 patent.

Against Apple —
- Claims 3 and 6 of the '469 patent
- Claims 1, 6, 34, and 39 of the '704 patent;
- Claim 10 of the '121 patent;
- Claim 3 of the '365 patent; and
- Claims 1 and 2 of the '208 patent.

2

Cisco now moves for summary judgment of noninfringement as to all asserted patents (Case No. 16-3463, Dkt. No. 125). Apple also moves for summary judgment of noninfringement as to all asserted patents with the sole exception of the '208 patent (Case No. 16-3582, Dkt. No. 131).

The "is connected" limitation now figures as the common issue underlying both motions. Claim 1 of the '704 patent is representative and reproduced below (emphasis added):

> A computer program product for use with a computer system, the computer system executing a first process and operatively connectable to a second process and a server over a computer network, the computer program product comprising:
> a computer usable medium having program code embodied in the medium, the program code comprising:
> program code for transmitting to the server a network protocol address received by the first process following connection to the computer network;
> *program code for transmitting, to the server, a query as to whether the second process is connected to the computer network*;
> program code for receiving a network protocol address of the second process from the server, when the second process is connected to the computer network; and
> program code, responsive to the network protocol address of the second process, for establishing a point-to-point communication link between the first process and the second process over the computer network.

This is not the first time that litigation over Straight Path's claimed invention, and the aforementioned claim language specifically, has darkened the doors of our judicial system. Prior proceedings before the Patent Trial and Appeal Board and the Federal Circuit provide crucial background that informs the instant dispute and is summarized herein.

In 2013 and 2014, the Board analyzed the "is connected" limitation during *inter partes* proceedings challenging the validity of Straight Path's '704 patent. Prior art references in play during those proceedings included NetBIOS and WINS. In its decision, the Board described NetBIOS as follows:

> NetBIOS ("Network Basic Input/Output System") is a software interface that *allows applications on different computers to communicate within a computer network*, such as a local area network or the Internet, and was originally designed for IBM's PC-Network. NetBIOS applications employ mechanisms to locate resources, establish connections, send and receive data with an

application peer, and terminate connections. A NetBIOS session is the exchange of messages between a pair of NetBIOS applications.

The NetBIOS name service is the collection of procedures through which nodes of a network acquire, defend, and locate the holders of NetBIOS names. *A node registers a name with the NetBIOS Name Server, which stores the registered name in a database. A name query transaction can be initiated by an end-node in an attempt to obtain the IP address associated with a NetBIOS name. If the NetBIOS Name Server has information regarding a queried node, the NetBIOS Name Server transmits a positive response. If the NetBIOS Name Server does not have information regarding a queried node, the NetBIOS Name Server transmits a negative response. Once the IP addresses have been found for a target name, a NetBIOS session service begins. The NetBIOS session service involves directed (point-to-point) communications.*

The Board described WINS, an implementation of NetBIOS, as follows:

WINS discloses how to install, configure, and troubleshoot Microsoft TCP/IP on a computer running the Microsoft Windows NT Workstation or Windows NT Server operation system. When a computer's name is registered with the Windows Internet Name Service server, the Windows Internet Name Service server accepts the entry with a timestamp, an incremental unique version number, and other information. A name query request is received by the Windows Internet Name Service server and allows a client to establish a session based on the address mapping received from the Windows Internet Name Service server. *For example, if a first computer wants to communicate with a second computer, the first computer queries the Windows Internet Name Service server for the address of the second computer. When the first computer receives the appropriate address from the Windows Internet Name Service server, it connects directly to the second computer.*

*Sipnet EU S.R.O. v. Straight Path IP Grp., Inc.*, No. IPR2013-00246, 2014 WL 5144564, at *8, 11 (P.T.A.B. Oct. 9, 2014) (emphasis added, citations and footnotes omitted).

To distinguish its claimed invention from NetBIOS and WINS, Straight Path argued in critical part that merely registering an address with a server, as with NetBIOS and WINS, did not satisfy the "connected to the computer network" or "being on-line" requirement because "a process may be on-line at the time of registration [but] may subsequently go off-line" while maintaining its registered status. *Id.* at *3, 8, 12. The Board disagreed and concluded that the broadest reasonable construction of "connected to the computer network" encompassed "a processing unit that is 'active and on-line at registration.'" *Id.* at *4, 9, 13. Based in part on this construction, the Board ultimately concluded that "(1) claims 1–7, 32, and 38–42 are

United States District Court

For the Northern District of California

anticipated by NetBIOS, (2) claims 1–7 and 32–42 are anticipated by WINS, and (3) claims

33–37 are obvious over NetBIOS and WINS." *Id.* at *15.

Straight Path appealed. In briefing before the Federal Circuit, Straight Path explained

(Case No. 16-3463, Dkt. No. 125-9 at 25 (italics added, bold in original)):

> Because the point-to-point communications that are the focus of
> the patent occur in realtime, it is also important to understand what
> it means for a process to be "connected to the computer network"
> or "on-line." *A central feature of the patented invention is a*
> *system for determining whether the "second process" — the target*
> *of a user's desired communication — is actually connected to the*
> *computer network at the time the communication is sought. This*
> *temporal dimension is a key part of the claimed invention.* The
> challenged claims expressly require a determination that the
> second process "**is** connected to the computer network" *at the very*
> *moment* when the first process queries whether it (the second
> process) is connected and available for communication.

Thus, Straight Path argued, the Board's conclusion that NetBIOS and WINS anticipated or

rendered obvious the challenged claims rested on an erroneous claim construction. Contrary to

the Board, Straight Path insisted that its claimed invention focused on "the determination of

whether a process is currently connected to the computer network, not whether it was

previously connected," since "having once registered with a name server is no indication that a

computer is actually connected to a computer network or is on-line at the time a particular

communication is sought." In other words, Straight Path described the crux of its invention as a

"temporal focus on the process's on-line status **at the time** the desired communication is

sought" — *i.e.*, "at the very instant in time when the first process queries whether the second

process is available" (*see id.* at 12 (bold in original), 17–19, 22–23, 41–56).

During oral argument in *Sipnet*, Attorney James Wodarski, counsel for Straight Path,

doubled down on these representations, specifically stating that "critical to the 704 system as

opposed to the prior art is . . . when the process goes offline, it has to communicate that to the

server. The server is obliged and required to update that status by either deleting that

information of that process or flagging it as offline." Attorney Wodarski further elaborated on

how this differed from the prior art as follows (emphasis added):

> Because it's doing it realtime, your Honor. Remember, this patent
> is directed at facilitating real time communication.

When the first process wants to communicate point to point, it's asking *the server* to confirm that that party is online and because dynamic addresses can be assigned and reassigned, it's saying, to confirm that it's on line *at that moment* and it's online at that address.

So, you see, *the database at that moment has to be able to make that binary decision*, your Honor. . . .

So it's not about whether at some earlier moment in time that second callee process is online or at some — *any other time other than when the first process says to the server, through the program code, I want to communicate with my peer.*

I'm Skype on computer one. I want to communicate with someone using the Skype process on computer two.

Please tell me if they're on line, and if so, give me the presently assigned dynamic address. *That binary decision has to be made by the server* then because it takes — the connection server under the patent is required to do a different thing based upon its decision and determination.

He reiterated again later in oral argument, "The difference between ours [and previous systems] is that our database is obliged to keep updated. *So it can actually answer that question* [about online status]." The court then pressed him to clarify the point even further, in an exchange reproduced below (emphasis added):

The Court: But you don't dispute even under your interpretation *the question of current connection is determined by checking a database*, right?

Mr. Wodarski: Checking the connection server claimed by claim 1, yes.

The Court: The database, checking a database.

Mr. Wodarski: *That's right*, your Honor, but the database — that begs the question of what the database, what information it has.

The Court: Is the difference in your invention that the database has to be updated when somebody logs off?

Mr. Wodarski: *Absolutely*. . . .

The Court: Under your claim construction, the database has to be *always accurate*. It cannot be ever inaccurate. Fair?

Mr. Wodarski: Again, accurate is not the term. What [it] has to do is, we know two things.

The Court: Accurate as to online status.

Mr. Wodarski:  Yeah, it has to be accurate for the purpose of —

The Court:  *Always accurate.*

Mr. Wodarski:  Within the meaning. . . .

The Court:  Why — please try to respond to my question.  Under . . . the prior art the database may sometimes be inaccurate because something happened which wasn't reflected in the database.

Your view is, *the database must always be accurate and that's the difference between you and the prior art*, correct?

Mr. Wodarski:  That's . . . correct, your Honor.  We must be accurate.  You have to be able to say present or current status.  I just —

The Court:  *At the time of the query* and the query —

Mr. Wodarski:  Exactly.

In reliance on the foregoing representations, the Federal Circuit agreed with Straight Path and reversed the Board's decision, construing "is connected to the computer network" and its variations to mean "is connected to the computer network at the time that the query is transmitted to the server."  *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015); *see also id.* at 1366 n.2 (quoting from the foregoing exchange).  On remand, the Board applied this construction and upheld the validity of the challenged claims.  The same result obtained in subsequent *inter partes* proceedings involving the '704, '469, and '121 patents.  *See LG Elecs., Inc. v. Straight Path IP Grp., Inc.*, Nos. IPR2015–00196, IPR2015–00198, IPR2015–00209, 2016 WL 2640549, at *5–6, 10–11 (P.T.A.B. May 9, 2016).

Defending the appeal from those proceedings, Straight Path once again successfully argued to the Federal Circuit that neither NetBIOS nor WINS queried whether a process "is connected to the computer network," as required by the challenged claims, because "not only is the prior art not designed to *keep track of current online status*, it is not designed to check online status when responding to a query for a user's IP address."  *Samsung Elecs. Co., Ltd. v. Straight Path IP Grp., Inc.*, 696 F. App'x 1008, 1013 (Fed. Cir. 2017) (emphasis added).  For example, Attorney Wodarski, again representing Straight Path, stressed during oral argument in *Samsung* that the claimed invention "has to be designed to always return an accurate and reliable answer to the query" because "[t]hat's the whole purpose for the system."  He also

7

reiterated Straight Path's position that "our system also has to *track whether you are continuing to stay on line*. We either have to — there has to be some mechanism in the system to flag you as off line. . . . The issue in SIPNET and the issue that controls here is that the claim plainly requires that it *track that online status* so that it can [make] the determination *at the time that the query is transmitted to the server*" (*see* Case No. 16-3582, Dkt. No. 131-19 at 14:17–17:25).

In its subsequent opinion, the Federal Circuit in *Samsung* expressly recognized that "WINS and NetBIOS both disclose querying a name server for the registered address of the callee computer" and further "disclose mechanisms for maintaining the accuracy of the addresses registered in these name server databases." It nevertheless agreed with Straight Path that those disclosures were "not sufficient" to invalidate the challenged claims in light of *Sipnet*'s holding that "'a query that asks only for registration information, regardless of its current accuracy,' will not satisfy the claim limitation." *Samsung*, 696 F. App'x at 1014.

In the instant actions, all agree that "is connected to the computer network" and its variations, including "on-line status" and "accessible," should be construed to mean "is connected to the computer network at the time that the query is transmitted to the server," consistent with the Federal Circuit's construction in *Sipnet* (Case Nos. 16-3463, Dkt. No. 32; 16-3582, Dkt. No. 68). The sole dispute here is whether the relevant limitations in the asserted claims actually read onto Cisco and Apple's accused products. The functionality of those products is described below within the context of the parties' arguments.

*          *          *

During oral argument in *Samsung*, the Federal Circuit and counsel for Straight Path had the following colloquy (Case No. 16-3582, Dkt. No. 131-19 at 28:25–29:8):

> The Court: You've boxed yourself into a pretty narrow infringement argument, though, haven't you, with this claim construction?
>
> In other words, a system that only does what — what NetBIOS or WINS did wouldn't infringe, right?
>
> Mr. Wodarski: A system [that] does what NetBIOS and WINS do does not meet the limitation of "is connected," Your Honor; that's correct.

Despite having "boxed" itself into narrow infringement territory to protect the validity of its patents before the Federal Circuit, Straight Path now seeks to reimagine its claimed invention with an astonishingly overbroad theory in an effort to capture Cisco and Apple's accused products. Cisco and Apple move for summary judgment that their accused products do not infringe the asserted claims at issue because the undisputed facts show they do not practice the "is connected" limitation as construed by the Federal Circuit in reliance on Straight Path's prior representations. After full briefing and oral argument, this order agrees.

## ANALYSIS

### 1. LEGAL STANDARD.

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. A genuine dispute of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In deciding a motion for summary judgment, the court must believe the non-movant's evidence and draw all justifiable inferences in their favor. *Id.* at 255. "The mere existence of a scintilla of evidence" or "some metaphysical doubt as to the material facts" in the non-movant's favor, however, will not suffice. *Id.* at 252, 261 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Summary judgment of noninfringement is proper here because, on the claim construction provided by the Federal Circuit, no reasonable jury could find infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of Straight Path. *See Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).

### 2. CISCO'S MOTION.

#### A. Cisco's Accused Products.

Cisco's accused products include the Cisco 9971 voice over internet protocol ("VoIP") phone, the Unified Communications Manager ("UCM"), and the Video Communications Server ("VCS"). For purposes of the instant motion only, Cisco disputes neither Straight Path's lineup

1  of accused products nor its description of the accused products' functionality as set forth in the

2  report and deposition testimony of Straight Path's technical expert, J. Tipton Cole, who

3  analyzed Cisco's implementation of Session Initiation Protocol ("SIP") in the accused products

4  "to enable basic calling between two devices" (*see* Case No. 16-3463, Dkt. No. 125 at 9–10).

5      According to Cole, the UCM is a server that acts as a SIP "registrar" and maintains a

6  database that associates particular identifiers (*e.g.*, extension numbers or MAC addresses) with

7  network contact addresses (*i.e.*, IP addresses and port information) for endpoint processes.

8  Each endpoint process registers when it connects to the network.  Registrations expire every

9  two minutes.  During a "basic call" between two processes, the first process sends an INVITE

10  message to the server by dialing a number for the second process.  The server then looks up the

11  registered IP address of the second process and uses that address to send an INVITE message to

12  the second process (*see id.*, Dkt. No. 139-8 ¶¶ 21, 25–26, 32–34).

13      If the second process actually answers the call, then it sends a 200 OK message back to

14  the server.  Upon receipt of a 200 OK message, the server delivers the first process's IP address

15  to the second process via an ACK message and delivers the second process's IP address to the

16  first process via a 200 OK message.  Both processes can then send and receive media content

17  directly from each other (*see id.* ¶¶ 32–34).  Cole uses three diagrams, reproduced below, to

18  illustrate this sequence of events:



Let's start with a basic call between two parties. In CM, a call is a software construct that associates two call legs. The following diagram does not attempt to include all the software constructs within CM. It is intended to illustrate the difference between a call, a call leg, and a media connection.

*Basic Call*

Every call in the CM environment has at most 2 call legs. Each call leg can be manipulated via signals akin to q.931. Each leg represents a signaling connection. In this particular example, the call has been answered resulting in a media connection between A and B. The table below is a more compact representation of the picture (1 call and 1 media connection).

Figure 1 – CISCO-SP00005932.0036

10



Figure 2 – CISCO-SP00005932.0070



Figure 3 – CISCO-SP00756813[6]

**B. Noninfringement.**

The infringement theory described in Straight Path's opposition to Cisco's motion is essentially that the entire "sequence" of messages that make up Cisco's "basic call" system, viewed in combination, meets the "is connected" limitation. As Straight Path and Cole tell it, by sending an INVITE message to the server, the first process signals that it wishes to call the second process. Thus, the first process necessarily also asks if the second process is online because, of course, a real-time, point-to-point communication simply cannot occur otherwise. After receiving the INVITE message from the first process, the server uses "relatively current registration information" to send an INVITE message to the second process. The second process will return a 200 OK message if and only if it actually answers the call, necessarily indicating its online status. Thus, Straight Path and Cole reason, the INVITE message from the first process to the server constitutes a "query as to whether the second process is connected to the computer network" within the meaning of the asserted claims (*see, e.g.*, *id.*, Dkt. Nos. 139-4 at 2–3, 8–15; 139-8 ¶¶ 375–76, 385–86, 424–25).

As Cisco points out, the 200 OK message that "necessarily" implies the accessibility of the second process is not generated unless and until *after* the call has been answered by the second process. Cole even admitted in deposition that the accused server cannot determine whether or not the second process is actually connected to the computer network at the moment in time that the first process sends an INVITE message to the server (*see id.*, Dkt. No. 153-2 at 34:10–35:8). Instead, when the first process indicates that it wants to call the second process, the server simply forwards that message to the second process based only on periodically-updated *registration information* and *regardless* of the second process's true online or offline status *at that moment in time*. In contrast, the invention that Straight Path described to the Federal Circuit requires a server that is able to, *at the very moment in time* that a first process asks, determine whether or not a second process is online by *checking its own database*, which must always remain accurate by continuously *tracking* the online or offline status of endpoint processes so that it can answer this very question. The undisputed evidence shows that Cisco's accused system simply does not work this way.

Straight Path's attempt to bridge the gap between the accused system and its claimed invention suffers from multiple defects. *First*, it is inconsistent with Straight Path's prior representations to the Federal Circuit. Straight Path flat-out told the *Sipnet* court that the claimed server must ask its own always-accurate database for the answer to a query about the second process's online or offline status. Cisco's accused system, however, does not have that information within its own database and must ask the second process itself if it will answer a call (and is therefore necessarily online to do so). Straight Path's infringement theory would render a nullity the requirement of an always-accurate database that tracks the current online or offline status of endpoint processes — a requirement that Straight Path itself had previously relied on as the key to distinguishing its invention from the prior art.

*Second*, Straight Path's infringement theory would expand its narrowly-preserved infringement theory into one of breathtaking scope. According to Straight Path, any server — no matter how accurate (or not) — can satisfy the "is connected" limitation so long as it makes some attempt to reach the second process in response to a query from the first process. This is

1    because — as Straight Path and Cole repeatedly point out — a successful attempt to reach the

2    second process will of course indicate that the second process was online and accessible at the

3    time of the attempt. Similarly, insofar as the second process must of course be online and

4    accessible for real-time communication to work, any call attempt by the first process must

5    necessarily entail a question as to whether or not the second process is online and accessible.

6    This cannot be the narrow infringement theory the Federal Circuit had in mind.

7        *Third*, this expansion to Straight Path's infringement theory rests on a premise so

8    patently obvious it cannot possibly be the key to any claimed invention, even if Straight Path's

9    interpretation of its invention were not constrained by its prior representations to the Federal

10   Circuit. Straight Path essentially purports to own Cisco's "sequence" merely because (1) a

11   caller's attempt to communicate with a callee in real time necessarily implies a question as to

12   whether or not the callee is accessible at that time and (2) by responding to the attempt, the

13   callee necessarily implies they were indeed accessible at the time. But the same would be true

14   of *any* "point-to-point communication," whether over a computer network, land line, radio

15   signal, or any other medium. No invention, program code or otherwise, would be necessary to

16   deduce such basic principles; common sense would suffice. It would be absurd for Straight

17   Path to claim ownership over such principles. Contrary to Straight Path, the mere fact that Cole

18   was willing to serve as a mouthpiece for this astonishing argument does not transform said

19   argument into "evidence" giving rise to any genuine dispute of material fact (*see, e.g.*, *id.*, Dkt.

20   No. 139-4 at 2–3). Nor does the fact that Cisco's witnesses "admitted" the aforementioned

21   truisms create any such dispute (*see, e.g.*, *id.* at 13–14).

22       *Fourth*, the claimed invention, as Straight Path would interpret it for infringement

23   purposes, would not achieve its purported goal of streamlining point-to-point communications

24   by obviating the need to attempt potentially-unsuccessful contact with the second process.

25   According to Straight Path and Cole, the point of the claimed invention is to *avoid* having to

26   actually call the second process to determine whether or not that second process is accessible.

27   As Cole explained in his rebuttal report (*id.*, Dkt. No. 125-7 ¶ 65 (emphasis added)):

28           [T]he inventors conceived of a way to streamline the process of
             connecting two network users — of abandoning the attempt *earlier*

14

*in the process* — based on insertion of a precursor step in the connection process. The patent specifications posit the circumstance in which a "caller" wants to make a point-to-point connection with a "callee." One known condition is that the caller is connected to the Internet and knows its current network protocol address. But the caller is not sure whether the callee is connected to the Internet or, if connected, what the callee's current network protocol address is. Instituting a call carries an expense in time and money as well as consuming network resources such as bandwidth. *The caller could attempt to make a point-to-point connection using network protocol addresses from previous connections, or make an attempt using the most recent or most commonly successful network protocol address. In each of these cases, though, the caller must pay for the call setup and the call teardown – even when the call fails because the intended recipient was not even connected to the network. By implementing the "query" elements of the Asserted Claims, though, the caller can avoid cost and uncertainty whenever the callee device is not online.*

This is consistent with what Straight Path told the Federal Circuit — *i.e.*, that the server must be able to answer the query based on accurate information in its own database. It is *not* consistent with what Straight Path now argues for infringement purposes — *i.e.*, that the online status of the second process would necessarily be revealed by a successful attempt to call it.

Straight Path suggests in its opposition brief that the server's "relatively current registration information" would somehow support a finding of infringement (*see, e.g.*, *id*, Dkt. No. 139-4 at 9–10). But Straight Path itself previously distinguished its claimed invention from systems that use "relatively current" information as a surrogate for actually determining current online or offline status. *See Sipnet*, 806 F.3d at 1361 (a process that "is still registered, once was connected, and may or may not still be connected" is *not* the same as a process that "is connected" within the meaning of the asserted claims). This is the way that the Federal Circuit, relying on Straight Path's representations, articulated the key distinction between the claimed invention and the prior art during oral argument in *Sipnet* (emphasis added):

> [T]he issue here is whether is connected means current information, it's always accurate, *or* whether it means checking a database as a surrogate which may be sometimes inaccurate, but is, quote, *relatively current*, right?

The Federal Circuit accepted that distinction, indeed relied on it, and it remains binding on Straight Path here. Straight Path cannot prove infringement by pointing to defendants' use of "relatively current registration information" in their databases.

15

In its opposition, Straight Path also resists the notion that its claimed invention requires a determination of the second process's status at the "precise instant in time" when the first process's query is sent to the server. The Federal Circuit in *Sipnet* distinguished the claimed invention from prior systems that used "stale" information, Straight Path reasons, so a system that retrieves "accurate" and "current" information about the second process's status — even if it does so *after* the first process's query to the server — still falls within the Federal Circuit's construction because later information would reflect the second process's status even *more* accurately than would information retrieved at the "precise instant in time" that the query was sent to the server (*see* Case No. 16-3463, Dkt. No. 139-4 at 15–18). This is simply sleight of hand on Straight Path's part. To repeat, Straight Path itself argued to the Federal Circuit that its claims require a determination as to the second process's status "*at the very instant in time when the first process queries*" the server (*see id.*, Dkt. No. 125-9 at 43 (emphasis added)).

That phrase deserves to be repeated: "*At the very instant in time.*"

Consistent with that position, *Sipnet* held that the plain language of "is connected to the computer network" requires a determination about the second process's *present* status *at the time the query is sent*. 806 F.3d at 1361. Beyond that, as explained, Straight Path's claim to ownership lapses into absurdity insofar as it attempts to capture the truism that a second process that *answers a call* must necessarily have been *accessible at the time of the call*.

Straight Path's asserted claims, properly construed, simply do not read onto Cisco's accused products. Notwithstanding Straight Path and Cole's *arguments* to the contrary, the undisputed *facts* show that Cisco's server does not track the current online or offline statuses of endpoint processes, nor can it determine that information by asking its own database *at the very moment in time* that it is queried. Instead, when the accused server receives an INVITE message or "query" from a first process, it simply attempts to make the requested call using periodically-updated registration information regardless of whether or not the second process is *actually* online *at that very moment*. Of course, if the second process answers the call, then that necessarily implies it was online at the time of the attempt — but this truism proves nothing for Straight Path. No rational jury could find Cisco liable for infringement on this record.

### 3.    APPLE'S MOTION.

#### A.    Apple's Accused Product.

Straight Path accuses Apple's FaceTime, a computer program that relies on the FaceTime server and Apple Push Notification Service ("APNS") to enable peer-to-peer video communications between Apple devices. APNS thinks of FaceTime as a "push provider" and Apple devices as "push platforms" identified by "push tokens." The FaceTime server registers push tokens to users through Unique Resource Identifiers ("URI") like email addresses or phone numbers. Each Apple device that connects to the network registers its push token with the APNS server so that it can send and receive various messages and notifications as part of a "Presence" database. If a device disconnects, it can signal the APNS server to remove its connectivity information from the Presence database. The APNS server periodically checks device connections at ten to sixty-minute intervals and removes devices that fail to check in. There are numerous situations wherein the APNS server will not detect a disconnected device, so its registration data is frequently wrong.

When an Apple device makes a FaceTime call, the FaceTime server looks up the push tokens associated with the specified recipient's URI and calls the APNS server to send an "Invite Push" message to each Apple device associated with those push tokens. The "Invite Push" message includes an IP address for the caller device. If the APNS server determines that a specified push token appears in the Presence database, it will *not* further determine whether the associated device is actually connected to the network but will simply attempt to deliver the "Invite Push" message.

Upon receiving an "Invite Push" message, the callee user can accept, reject, or ignore the call. If and only if the callee user accepts the call, their device will create and send an "Accept Request" message with its IP address to the FaceTime server. The two devices can then connect directly to each other using each other's IP addresses (*see* Case No. 16-3582, Dkt. Nos. 131-1 ¶¶ 4–5, 8–14, 17–21; 136-7 ¶¶ 35–42).

Cole, who is also Straight Path's expert on the subject of Apple's alleged infringement, uses the following diagram to illustrate this process:



Figure 1: Overview of FaceTime Calling Process

### B. Noninfringement.

Like Cisco's accused server — at the time that it receives a query from the first process — does not know if the second process is actually online. It simply checks a periodically-updated registration database and then attempts to transmit a message to the second process *regardless of whether or not the second process is actually online at that very moment in time* (*see, e.g.*, *id.*, Dkt. No. 144-3 at 174:20–23 (Cole agreeing that the FaceTime system "sends the invite push to the callee before it knows whether the callee is online")). If the second process actually responds to the message by accepting the call, then both the server and the first process know by obvious inference that the second process was indeed online when the server attempted to contact it.

Straight Path's tactic for accusing FaceTime mirrors its tactic for accusing Cisco's products. For example, Straight Path cites its expert, Cole, for the proposition that "[a]ny query about having a FaceTime call necessarily involves a query as to whether the other party 'is connected' because that is the only way to have a FaceTime call. The message seeks to

1    establish a FaceTime call with another device.  The callee must be on-line to have a FaceTime

2    call."  Straight Path also claims Apple's expert, Owen Astrachan, "admitted" that it is not

3    possible to "have a call with someone who's not online."  These truisms, according to Straight

4    Path, constitute evidence that the series of messages between Apple devices and Apple's servers

5    required to set up a FaceTime call infringes Straight Path's patents (*see, e.g.*, *id.*, Dkt. Nos. 136-

6    4 at 1–4, 7–12; 136-7 ¶¶ 254–55, 292–300).  As explained, this is inconsistent with Straight

7    Path's prior representations to the Federal Circuit that its claimed invention turned on the ability

8    to determine the online or offline status of the second process by querying a server with an

9    always-accurate database that tracked the current statuses of endpoint processes.  In addition, no

10   purported invention, let alone one as narrow as what Straight Path got by the Federal Circuit,

11   could turn on a principle as basic and commonsensical as the inference that any callee

12   responding to a call must have been accessible at the time of the call.

13        In its opposition to Apple's motion, Straight Path incredibly accuses *Apple* of trying to

14   rewrite the proper construction of the "is connected" limitation.  Contrary to Apple, Straight

15   Path contends, that limitation does *not* require that the "'system **track** the **current** connectivity

16   status of the devices' such that the server knows whether a device is connected '*before* placing a

17   call'" (*see id.*, Dkt. No. 136-4 at 15–16 (bold and italics in original)).  (Confusingly, Straight

18   Path also says later in the very same brief, "Apple is incorrect in arguing that Straight Path now

19   contends that infringing systems do not have to track current on-line connectivity status" (*see

20   id.* at 17).)  Again, this is not what Straight Path has repeatedly told the Federal Circuit.

21   Moreover, Straight Path's own expert had opined that determining the recipient's online or

22   offline status *before* attempting to place a call was precisely the point of the claimed invention,

23   further highlighting Straight Path's efforts to make a moving target out of its claimed invention

24   (*see* Case No. 16-3463, Dkt. No. 125-7 ¶ 65 (emphasis added)).

25        A further example of Straight Path's disingenuous litigation tactics deserves mention.

26   During oral argument in *Samsung*, counsel for Straight Path specifically explained that its

27   claimed invention "has to track" whether a computer that has come online and registered is

28

1    "continuing to stay on line" (Case No. 16-3582, Dkt. No. 131-19 at 16:24–17:25).  And in its

2    decision, the Federal Circuit specifically stated:

> The Board's determination is supported by substantial evidence,
> Straight Path argues, because "*not only is the prior art not
> designed to keep track of current online status*, it is not designed to
> check online status when responding to a query for a user's IP
> address."  *We agree with Straight Path.*

6    *Samsung*, 696 F. App'x at 1013 (emphasis added).  In its opposition to Apple's motion, Straight

7    Path actually quotes the foregoing passage of the *Samsung* decision and then claims, "Straight

8    Path's argument to the Federal Circuit, *that the prior art did not meet the limitation because it*

9    *did not 'check online status when responding to a query for a user's IP address,'* is wholly

10   consistent with Straight Path's argument here" (Case No. 16-3582, Dkt. No. 136-4 at 16

11   (emphasis added)).  The earlier part of the same passage — that the prior art was "not designed

12   to keep track of current online status" — is relegated to a tagalong footnote where Straight Path

13   baldly asserts that, even if it had argued that "tracking online status" was a requirement of the

14   "is connected" limitation (as it most definitely had), it would not matter "because the Federal

15   Circuit did not rely on such an argument" (*id.* at 16 n.7).  Nonsense.  The Federal Circuit plainly

16   did, as evident from both the *Samsung* decision and the unambiguous record of Straight Path's

17   repeated representations to the Federal Circuit in both *Sipnet* and *Samsung*.

18       In a similar vein, Straight Path suggested at the hearing on the instant motions that an

19   accused system can meet the "is connected" limitation by *either* keeping track of current online

20   status *or* checking online status (*e.g.*, by simply attempting to call the second process).  Thus,

21   Straight Path argued, the claimed invention does *not* require that the server determine the

22   second process's online or offline status solely by checking its database at the time of the first

23   process's query (*see, e.g.*, *id.*, Dkt. No. 153 at 14:6–23).  But Straight Path has repeatedly told

24   the Federal Circuit that its claimed invention requires precisely that.  Indeed, the Federal Circuit

25   in *Sipnet* went to great pains during oral argument to pin down this exact point.  Having won on

26   invalidity based on those representations, Straight Path cannot now take a different position for

27   purposes of proving infringement.  And, to repeat, insofar as Straight Path suggests it can own

28

systems that "check online status" based solely on the obvious inference that only an accessible callee can actually answer a call, that suggestion is absurd.

Straight Path then argues that even if the "is connected" limitation required "tracking," there is a genuine dispute of material fact as to infringement because Apple's Presence database is "continuously maintained" with periodic check-ins every ten to sixty minutes (*see id.*, Dkt. No. 136-4 at 16–17). Wrong again. In *Samsung*, the Federal Circuit — citing its earlier decision in *Sipnet* — concluded that WINS and NetBIOS did not satisfy the "is connected" limitation even though "both references disclose mechanisms for maintaining the accuracy of the addresses registered in [their] name server databases" through periodic updates. *See* 696 F. App'x at 1012, 1014. This was consistent with Straight Path's representations in *Sipnet* that a "relatively current" database cannot serve as a surrogate for the accuracy required by its claimed invention. Inasmuch as Straight Path successfully argued to the Federal Circuit that periodic maintenance of registration databases did not suffice to invalidate its patents before, it cannot argue that similar periodic maintenance by Apple suffices to infringe its patents now.

Straight Path also attempts to blur the differences between Apple's system and the claimed invention by asserting that *Samsung* expressly rejected an "accuracy" requirement for the claims at issue (*see* Case No. 16-3582, Dkt. No. 136-4 at 17–18). This argument misreads the relevant portion of *Samsung*, which merely explained that the Board did not improperly "import an additional perfect accuracy limitation" and, insofar as the Board discussed "accuracy," it simply followed precedent set by *Sipnet*. 696 F. App'x at 1013. Nothing in *Samsung* purported to erase the temporally-sensitive "accuracy" requirement inherent in *Sipnet*'s construction of the "is connected" limitation. This is consistent with Straight Path's insistence, during oral argument in *Samsung*, that the claimed system "has to be accurate and reliable" and "has to be designed to always return an accurate and reliable answer" (*see* Case No. 16-3582, Dkt. No. 131-19 at 14:5–15:20). In short, *Samsung* does not support Straight Path's argument that the substantial inaccuracy of Apple's accused database — which contains possibly millions of wrong entries on a daily basis — "is *irrelevant* to the issue of whether it infringes the claims" (*see id.*, Dkt. No. 136-4 at 18–19 (emphasis added)).

1    The undisputed facts show that the asserted claims at issue, properly construed, simply

2    do not read onto Apple's accused product.  Apple's accused server does not track the current

3    online or offline statuses of Apple devices but simply attempts to transmit received push

4    notifications based on information from a periodically-updated registration database *regardless*

5    *of whether or not the intended recipient is actually online at that moment in time*.  Again, the

6    mere fact that a response from the intended recipient necessarily implies the recipient's online

7    status proves nothing for Straight Path.  On this record, no rational jury could find Apple liable

8    for infringement of the claims at issue.

## CONCLUSION

10    To the foregoing extent, defendants' motions for summary judgment of noninfringement

11    are **GRANTED**.

12    This ruling covers all patents asserted against Cisco.  In Case No. 16-3463, Straight

13    Path's motions for summary judgment of no invalidity and to strike certain evidence by Cisco's

14    damages expert (Dkt. Nos. 126, 128) are **DENIED AS MOOT**.  The parties' requests to file

15    *Daubert* motions (Dkt. Nos. 144–45) are likewise **DENIED AS MOOT**.  Judgment will follow.

16    This ruling also covers all patents asserted against Apple with the sole exception of the

17    '208 patent.  In the Court's view, no more judicial resources should be invested in determining

18    the validity (or invalidity) of patents covered by this ruling of noninfringement.  By **NOVEMBER**

19    **16 AT NOON**, Apple shall file a statement (1) explaining any disagreement (or agreement) with

20    this view and (2) proposing a plan for the '208 patent going forward.

21    By **NOVEMBER 27 AT NOON**, Straight Path and its counsel, the law firm of Russ, August

22    & Kabat, shall **SHOW CAUSE** in writing why they should not be held liable for defendants'

23    attorney's fees by virtue of this being an "exceptional" case within the meaning of Section 285

24    of Title 35 of the United States Code.

26    **IT IS SO ORDERED.**

28    Dated:  November 13, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE