**HOGAN LOVELLS US LLP**
Clayton C. James (Cal. Bar No. 287800)
clay.james@hoganlovells.com
Srecko "Lucky" Vidmar (Cal. Bar No. 241120)
lucky.vidmar@hoganlovells.com
Helen Y. Trac (Cal. Bar No. 285824)
helen.trac@hoganlovells.com
Three Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499

Celine J. Crowson (*pro hac vice*)
555 13th St NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5600
celine.crowson@hoganlovells.com

Aaron S. Oakley (*pro hac vice*)
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
Telephone (303) 899-7300
Facsimile: (303) 899 7333
aaron.oakley@hoganlovells.com

*Attorneys for Defendant Apple Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| STRAIGHT PATH IP GROUP, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No. 16-cv-03582-WHA<br><br>**APPLE'S RESPONSE TO STRAIGHT PATH'S BRIEF ON ORDER TO SHOW CAUSE**<br><br>DATE:<br>TIME:<br>COURTROOM: 8, 19th Floor<br>JUDGE: Hon. William H. Alsup |

United States District Court
Northern District of California

# TABLE OF CONTENTS

Introduction .................................................................................................................. 1

ARGUMENT .................................................................................................................. 3

    I.    Straight Path's Infringement Case Against Apple was Objectively Baseless ...................... 3

        A.  Straight Path's Infringement Position Was Not Reasonable In Light of its Previous
Admissions About its Purported Invention. ........................................................ 3

        B.  Straight Path's Current Defense of Its Infringement Theory Is Not Reasonable ........... 6

    II.    Straight Path Brazenly Violated the Patent Local Rules and This Court's "No
Sandbagging" Rule By Playing "Hide the Ball" On Its Infringement Theories ........................ 10

        A.  Straight Path Waited Until its Summary Judgment Opposition Brief to Fully Disclose
Its Infringement Theory for the "Is Connected" Limitation and Deliberately Increased
Apple's Costs by Failing to Inform Apple That It Was Dropping a Patent ........................ 10

        B.  Straight Path and Its Expert Engaged in Sanctionable Misconduct on the '208 Patent ...
.................................................................................................................... 13

    III.  Straight Path Lacked Good Faith Basis for Claiming Willful Infringement or Pre-Suit
Damages. ..................................................................................................................... 14

        A.  Straight Path had no good faith basis for asserting pre-suit actual notice. ................... 15

        B.  Straight Path had no good faith basis for asserting pre-suit notice based on marking. 16

        C.  Straight Path had no good faith basis for claiming pre-suit damages. ........................... 17

    IV.    Straight Path's Royalty Demand Was Grossly Unreasonable. ........................................ 18

Conclusion ..................................................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Exergen Corp. v. Wal-Mart Stores, Inc.*
    575 F.3d 1312 (Fed. Cir. 2009) ...................................................................................6

*Huawei Techs. Co. LTD v. T-Mobile US, Inc.*
    Case No. 2:15-cv-00052-JRG-RSP, Dkt. 379 (E.D. Tex. Sept. 9, 2017) ...................................6

*Linex Techs., Inc. v. Hewlett-Packard Co.*
    No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) ...........................................1

*Logic Devices, Inc. v. Apple Inc.*
    No. C 13-02943 WHA, 2014 WL 6844821 (N.D. Cal. Dec. 4, 2014) ....................................2, 3

*Samsung v. Straight Path IP Grp., Inc.*
    Appeal No. 16-2004, at 17:4-9 (Fed. Cir. June 23, 2017) .........................................................5

*Sipnet EU S.R.O. v. Straight Path IP Group, Inc.*
    No. IPR2013-00246, 2014 WL 5144564 ...........................................................................7, 9

*Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*
    806 F.3d 1356 (Fed. Cir. 2015)...................................................................................6, 7
    Appeal No. 16-2004 (Fed. Cir. September 9, 2015) .............................................................4, 5

**Federal Statutes**

35 U.S.C.
    § 101...........................................................................................................................8
    § 285...........................................................................................................................3
    § 287.........................................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) .............................................................................................15, 16

Patent L.R. 3.1 .........................................................................................................12

# INTRODUCTION

On November 13, 2017 this Court entered a summary judgment of non-infringement on three of Straight Path's four patents asserted against Apple.  Order Granting Motions for Summary Judgment ("Order"), Dkt. 155 at 22.  The Court also directed Straight Path to show why Apple and Cisco should not be awarded attorneys' fees and costs.  Apple respectfully requests that the Court consider this response from Apple to Straight Path's brief in response to this Court's Order to Show Cause.  Straight Path's conduct over the course of the case resulted in unnecessary fees and costs to Apple and, therefore, had the Court not issued its Order to Show Cause *sua sponte*, Apple would have moved for sanctions following summary judgment and submits it is most efficient for the Court to take up the full scope of Straight Path's conduct as part of the current show cause process

The Court's Order to Show Cause presumably was based on Straight Path's bad faith tactics in telling the Federal Circuit and the Patent Trial and Appeal Board ("PTAB") one story in order to preserve the validity of the patents, then seeking to tell a jury in this Court the opposite story in order to get judgments against Cisco and Apple.  These circumstances warrant an award of fees.  For example, in *Linex Techs., Inc. v. Hewlett-Packard Co*., No. C 13-159 CW, 2014 WL 4616847, at *3 (N.D. Cal. Sept. 15, 2014), Judge Wilken granted a motion for attorneys' fees where plaintiff continued to assert its patents after two other courts had issued rulings that, while not *res judicata* as to the issues in the succeeding case, made the assertion against the same technology implausible.  The court held that "[e]ven though neither forum's determination was binding on this Court's determination as *res judicata*, Linex was not free to pursue another case targeting the same technology with impunity."  *Id*.  As noted by one of the judges during oral argument, Straight Path knew that its arguments to the Federal Circuit narrowed its claims substantially.  Straight Path's arguments regarding claim scope in that forum and before the PTAB made its claims against Apple exceedingly implausible and, in fact, unsustainable, as recognized by this Court's order on summary judgment.

Straight Path should be ordered to pay Apple's attorneys' fees and costs, but not only

because of its attempt to accuse registration systems of infringement, when it previously disclaimed such systems in order to preserve validity. Instead, Straight Path's approach to this *entire* litigation was characterized by similar gamesmanship and bad faith litigation tactics. It played "hide the ball" with its infringement theories, encouraged its experts to act as mouthpieces for unsupportable positions, ignored sworn testimony of its own witnesses and its own internal documents in order to maintain a bad faith royalty demand, and attempted to sandbag Apple by asserting new positions for the first time in reply reports and briefs. Even now, as it faces sanctions for similar conduct, Straight Path continues to litigate in bad faith, treating its response to the Show Cause Order ("Response to OSC") as little more than a disguised sur-reply on the estoppel issues that Apple fully briefed in its summary judgment motions, but which Straight Path barely addressed.

Straight Path's litigation misconduct is similar to, if not worse than, that of other patent litigants that this Court has sanctioned. For example, in *Logic Devices, Inc. v. Apple Inc*., No. C 13-02943 WHA, 2014 WL 6844821, at *1 (N.D. Cal. Dec. 4, 2014), this Court found the asserted patent invalid on summary judgment and declared the case exceptional "because of the unreasonable manner in which it was litigated." *Id.* at *4. The plaintiff's misconduct there included: (a) multiple misrepresentations to the Court and opposing counsel; (b) ignoring the defendants' repeated warnings regarding the invalidity of the patent; (c) failure to comply with the Local Rules; (d) sandbagging its opponent by introducing new theories late in the proceedings; and (e) a facially unreasonable royalty demand. *Id.*

Here, Straight Path ignored conclusive evidence that Apple's system did not infringe, and advocated for a contorted infringement theory that was at odds with numerous statements previously made to various tribunals about the true scope of its patents. In addition, Straight Path flagrantly disregarded the Patent Local Rules and this Court's prohibition against sandbagging by continuously shifting its infringement theories, and waiting until reply expert reports and summary judgment reply briefs before fully revealing them. Straight Path's ever-changing position is best illustrated by its conduct with respect to the '208 patent, where Straight Path and its expert

advanced no less than _four_ theories of infringement – at least two of which were not disclosed in its original or supplemental infringement contentions.  Moreover, Straight Path engaged in further sanctionable conduct by asserting willful infringement and pre-suit damages, and by continuing to assert them even after its witnesses discredited its only bases for doing so.  Finally, sanctions are additionally warranted because Straight Path's royalty demand was grossly unreasonable – indeed, orders of magnitude more than the highest license amount and several times greater than the combined value of all of the licenses to the Asserted Patents.  In short, Straight Path's conduct is similar to that in _Logic Devices,_ making this an exceptional case justifying an award of all Apple's fees and costs pursuant to 35 U.S.C. § 285.

## ARGUMENT

### I.  Straight Path's Infringement Case Against Apple was Objectively Baseless

#### A.  Straight Path's Infringement Position Was Not Reasonable In Light of its Previous Admissions About its Purported Invention.

Straight Path's response to the Court's Order is largely a plea for the Court to imagine systems that might infringe, while saying little about how Apple's FaceTime ever could, even though that is what the Court ordered Straight Path to explain.  Specifically, Straight Path devotes pages upon pages arguing that its claimed system is not confined to a server checking its own database.  But that argument is a red herring and a _non sequitur_ because at issue is not whether _other_ systems exist that Straight Path theoretically could have _reasonably_ accused.  Rather, the relevant inquiry here is whether Straight Path's allegation _that Apple's system infringed_ was reasonable, even though it operates in the same way as the registration systems which Straight Path previously disclaimed.

Very few of Straight Path's briefing pages are spent explaining how its infringement theories against Apple were reasonable.  It devotes several pages to arguing that its claimed system is not confined to a server checking its own database.  That argument is a red herring because Apple never argued, and this Court did not find, that a server interacting with its own database was the one and only way the claims could ever be infringed.  The argument is also a

*non sequitur* because, at most, it asserts that there may be *other* systems that Straight Path theoretically could have *reasonably* accused.  But, it says nothing about whether its infringement arguments against *Apple's system* were reasonable, which is what the Court ordered Straight Path to explain.

Straight Path's infringement read against Apple was far from reasonable on at least two levels.  First, Straight Path's arguments, both during summary judgment briefing and here, ignore concessions made by its expert and by Straight Path in earlier proceedings that, in combination, rendered its claims against Apple's systems facially unsustainable.  Second, however broadly the claims might reach, it was never reasonable—in light of the goal of the invention as described by Straight Path's own expert, the intrinsic evidence and Straight Path's allegations in its Complaints, and certainly how Straight Path described its alleged invention when trying to maintain the asserted patents' validity—to allege that a callee confirming its own on-line status at the end of a process met a construction that requires a server to determine that status at the very beginning of the process.

Straight Path tries hard to muddy the water regarding how it characterized its system in past proceedings.  But, many of Straight Path's statements are crystal clear, undisputed in Straight Path's Response, and in combination with the admissions of Straight Path's expert plainly rendered the claims against Apple unreasonable.  Before the Federal Circuit, Straight Path argued, "[B]ut *our system also has to track whether you are <u>continuing to stay on line</u>. We either have to – there has to be some mechanism in the system to flag you as off line*."  Oral Argument of Straight Path,  Case No. 2016-2004 [Ex. 17] at 17 (Federal Circuit).  Straight Path further argued, "The issue in SIPNET and the issue that controls here is that *the <u>claim plainly requires</u> that it <u>track that online status so that it can meet the determination at the time that the query is transmitted to the server</u>.*" *Id.*  It was those kinds of arguments that led the Federal Circuit to observe that, "is connected" cannot mean "is still registered, once was connected, and may or may not still be connected." *Sipnet,* 806 F.3d 1360 – 61.  Having won that battle, Straight Path could not reasonably accuse systems that do not continuously track whether a device has stayed on line,

1  systems that do not accurately flag when a device has gone off-line, or systems that *cannot*

2  *possibly* "meet the determination at the time that the query is transmitted to the server," because

3  they literally do not know the answer.

4       Yet, that is exactly what Straight Path accused, even after ***its own expert*** conceded Apple's

5  systems do not track online status and are not capable of answering the "is connected" query at the

6  time it is transmitted to the server.  Mr. Cole conceded that Apple's system does not track current

7  on-line status (Ex. 1 (Cole Tr.) at 121:13-19):

8        **Q:**  It's the case, is it not, that the presence map **is not current as to the callee's**
      **connection status?**

9        A:  There's no guarantee that it's current. **That's correct**.
      **Q:  So it would include past statuses of connection activity?**

10        A:  **Yes,** I believe that's true.

11  He conceded that Apple's system does not "flag you as offline," which Straight Path said was part

12  of the claims[1] (*id.* at 170:10-18):

13  
14        **Q:  Do you agree that devices don't de-register from APNS if, for example,**
      **they crash?**

15        A:  As I understand it . . . the devices may, after the device opens up a
      communications channel with an APNS server, it may become unreachable without

16        sending any message to that server at all. So **yes, it can become disconnected**
      **without notice**.

17  
18  Finally, Mr. Cole conceded that Apple's system does not "meet[] the determination" of online

19  status at the time the query is transmitted to the server, which is an express part of the construction

20  (*id.* at 174:20-23):

21        Q:  Do you agree that the system sends the invite push to the **callee before it knows**
      **whether the callee is online**?

22        A:  **I believe that's correct, yes**.

23  
24        [1]   *See* Transcript of Oral Argument in *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*,
Appeal No. 16-2004, at 3:22-4:4 (Fed. Cir. September 9, 2015) ("[Mr. Wodarski] But critical to

25  the '704 system as opposed to the prior art is a disclosure in column 6 which says, when the
process goes offline, it has to communicate that to the server. ***The server is obliged and required***

26  ***to update that status*** by either deleting that information of that process or flagging it as offline."
(emphasis added)); Transcript of Oral Argument in *Samsung v. Straight Path IP Grp., Inc.*, Appeal

27  No. 16-2004, at 17:4-9 (Fed. Cir. June 23, 2017) ("[Mr. Wodarski:]  [T]here has to be some
mechanism in the system to flag you as off line.").

28

It was not reasonable for Straight Path to continue to accuse Apple of infringement once its own expert conceded that Apple's system does not do the things that Straight Path itself characterized as "plainly required" by the claims.

### B.  Straight Path's Current Defense of Its Infringement Theory Is Not Reasonable.

Straight Path offers very little of substance to defend the reasonableness of its infringement case against Apple, and the arguments it does make are unavailing.  First, it argues that the claims themselves do not require tracking online status.  Second, it argues, in various ways, that its statements to PTAB and the Federal Circuit did not narrow its claims.  Third, it argues that the timing element in the construction does not really require the specific timing that Straight Path told the Federal Circuit was required.  Fourth, Straight Path seems to maintain that any argument that does not expressly contradict the exact language of the construction must be considered well-founded.

The first argument is easily disposed of.  Straight Path spent years advocating that "is connected" has a particular meaning.  That meaning expressly includes the requirement that the "is connected" status is determined "at the time that the query is transmitted to the server."  *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015).  Straight Path stipulated to that construction, and to that very particular timing element, in this case.  Therefore, it is that construction that governs and not Straight Path's belated re-casting of the "plain meaning" of the term.   Response to OSC [Dkt. 163] at 3-4, 17-19; *c.f. Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a [] court has construed the relevant claim terms . . . then that legal determination governs for purposes of trial.  No party may contradict the court's construction.").

Second, Straight Path suggests that its statements to two tribunals about what "is connected" means are not binding on it, because the Federal Circuit's opinions do not expressly rely on any particular statement by Straight Path's counsel.  That argument fails on both the law and the facts.  It fails on the law because estoppel may, in fact, apply to a patentee's statements

regarding the scope of its invention even if those statements are not accepted, let alone recited. "Regardless of whether an examiner or panel agreed with the patentee's statement, the statement itself may result in disclaimer because it constitutes a representation to the public about the scope of the patent." *Huawei Techs. Co. LTD v. T-Mobile US, Inc.*, Case No. 2:15-cv-00052-JRG-RSP, Dkt. 379, at 5 (E.D. Tex. Sept. 9, 2017) (citations omitted).

The argument also fails on the facts.  The Federal Circuit's reliance on Straight Path's arguments is reflected <u>in the construction itself</u>.  As the Court explained thoroughly in its Order, claim construction for these patents was first addressed by the PTAB in 2014, when it found that the claims were broad enough to encompass a system that was on-line and active at the time of registration.  *Sipnet EU S.R.O. v. Straight Path IP Group, Inc.,* No. IPR2013-00246, 2014 WL 5144564 at *4, *9, *13.  Based on that construction, the PTAB invalidated the patents.  Straight Path appealed, insisting on a construction that included the very narrow timing element that it now wants to avoid, *i.e.* that the determination of on-line status must happen at the time the query is transmitted, and not some earlier or later point in time.  Straight Path argued in its briefing on appeal that "[t]he challenged claims expressly require a determination that the second process '**is** connected to the computer network' *at the very moment* when the first process queries whether it (the second process) is connected and available for communication."  Order at 5, *quoting* Case No. 16-3463, Dkt. 125-9 at 25.  That limitation argued for by Straight Path throughout two levels of appeal appears *expressly* in the agreed upon construction, which was taken directly from the Federal Circuit's adoption of Straight Path's claim construction.  *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015).  Therefore, Straight Path's argument that it is not estopped—because there is no proof that its arguments were accepted—is simply wrong.

Third, Straight Path seems to argue that a determination made "at the very moment" means something other than at the precise time the query is transmitted to the server and can, instead, cover a determination that is made several steps later in the process, when a user displays his or her online status by answering a call.  Straight Path first points to statements on appeal or in the IPR proceedings in which it argued the invention could determine online status in "any number of

ways."  For example, Straight Path cites to its statements in the *Samsung* IPR proceedings

(IPR2014-01366 Trial Tr. at 58, 66 (emphasis added)):

> JUDGE DESHPANDE: How does [the system] <u>keep track</u> of that [(a user going offline)]?
> MR. MEUNIER: It can do it *however it wants to*.
>
> [T]he exemplary claim we have been talking about, for example, it <u>keeps track</u> of whether something is going offline or not. *It could be a system of anything*. It could be persistent connections. It could be *polling* if it's close enough. It could be also sending a message when you go offline if you combine it with those other things. <u>But it's designed to and meant to keep track of whether something is currently online at the time of that query.</u>

As the underlined portions make clear, however, when read in context these statements do not

expand the possibilities for *when* the determination of online status must be made by the server

but, rather, *how* the server tracks that information so that it is current at the time the query comes

into the server.  Theoretically, polling, persistent connections, and emails are all means for making

the registration information in a database more accurate, but they do not change or expand the

construction to include an option in which the determination of online status is made at <u>a different

point in time</u>, *i.e.* a time other than the moment at which the query is transmitted.[2]  Straight Path

also argues that Apple's expert does not interpret "this very instant" as literally as it sounds.  But,

it is clear that Apple's expert merely confirmed that he was not reading the construction in a way

that would require violating the laws of physics.  Ex. 20 (McNair Tr.) at 91:11-92:1.  There is

nothing in his testimony to suggest that he believed that the construction could reasonably cover a

sequence in which the server does not determine status at all when the query is transmitted and

that, instead, defers that determination to some completely *indeterminate* point in time in which

the user sees her phone ringing and decides whether to take the call.[3]

---

[2] If Straight Path truly contends that its alleged invention "could be a system of anything," *i.e.*, that it covers *any* method of determining connectivity status, then it is abstract and unpatentable under 35 U.S.C. § 101.  Straight Path argues that the Court is wrong in characterizing its invention as breathtakingly broad in scope and capturing any point-to-point connection, but it does not explain what it is that supposedly limits the invention, other than the fact that it is "server-mediated." Response to OSC at 11.

[3] And, if the user decides not to take the call, or if the caller is blocked, then no determination of online status is ever made, even if the user's phone is very much connected to the network.  This is

1         Finally, the entire discussion of the immediacy of the response in a computer system is a

2  strawman argument.  Nothing precluded Straight Path from proposing some reasonable limit on

3  "at this very moment" that did not violate the laws of physics but was true to the requirement that

4  "is connected" status must be determined by the server at the precise time when the query is

5  transmitted.  But, Straight Path chose not to do so, because anything it proposed still would not

6  cover Apple's system, which was simply too different from what Straight Path previously argued

7  the claims require.  And, as Apple's expert testified, a person skilled in the art would already

8  understand the limits of physics in reading the Federal Circuit's construction.  Since it cannot

9  explain how it could reasonably accuse Apple's system, Straight Path virtually ignores the timing

10  element of the construction and, instead, proposes a brand new theory in which the server merely

11  guesses at the IP address at which a device might be located (based on past registrations) attempts

12  to place the call to that address and, if the callee answers then we know she was on-line.

13         This cannot be a reasonable infringement read against Apple, for at least two reasons.

14  First, it is not true to the intrinsic evidence, which lays out an ordering of the steps in which the

15  determination of online status happens when the query comes in and by virtue of the server

16  making that determination, not by a user's subsequent "verification."  *See, e.g.* '704 Patent

17  Abstract; '704 Patent 5:55-67 ("The connection server 26 then searches the database 34 to

18  determine whether the callee is logged-in by finding any stored information corresponding to the

19  callee's E-mail address indicating that the callee is active and on-line.")  Second, Straight Path

20  cannot counter the overarching point made by Apple and this Court that its proposed re-definition

21  of "is connected" would not meet the purported goal of "obviating the need to attempt potentially-

22  unsuccessful contact with the second process." Order at 14.  Notably, Straight Path does not point

23  to a single embodiment in any of the Asserted Patents that suggests that a user's subjective

24

25

26

27

28

___

yet another reason why Straight Path's infringement read as to Apple was unreasonable.  It was
uncontested that there are a variety of circumstances in which the "Invite Push" that is sent from
the server to the callee device receives no "accept" response even if the user is, in fact, online.  For
example, no such response occurs if the caller is blocked or the user chooses to ignore it.  Ex. 1
(Cole Tr.) at 120:11-23.  Therefore, there was no reasonable basis for equating this step with a
"query" at all, because it is merely an invitation, not a question.

1    determination to answer or not answer an incoming call can fairly meet this primary goal of the

2    invention, because such an embodiment would run *counter* to that goal.  Straight Path's only

3    response to this is a tortured re-defining of the word "call."  According to Straight Path, an attempt

4    to contact the callee is not  a "call" unless a connection is made and that connection is point-to-

5    point – *i.e.*, a "call" is not a call if the user did not answer, if the call was blocked, or if a

6    connection was made but it was not point-to-point.  Response to OSC [Dkt. 163] at 11.  This is

7    pure sophistry, untethered to anything in the intrinsic evidence or the Federal Circuit's claim

8    construction.  And, it too is entirely inconsistent with Mr. Cole's description of the goal of the

9    invention, because the cost savings are associated with avoiding the very *attempt* to make the

10   connection:

> The  caller  could  <u>attempt</u>  to  make  a  point-to-point  connection  using  network
> protocol addresses from previous connections, or make an attempt using the most
> recent  or  most  commonly  successful  network  protocol  address.  <u>In  each  of  these</u>
> <u>cases,  though,  the  caller  must  pay  for  the  call  setup  and  the  call  teardown – even</u>
> <u>when  the  call  fails  because  the  intended  recipient  was  not  even  connected  to  the</u>
> <u>network.</u> By implementing the "query" elements of the Asserted Claims, though,
> the caller can avoid cost and uncertainty whenever the callee device is not online.

15   Ex. 5 (Cole Rebuttal Report) at ¶54.

16   **II.    Straight Path Brazenly Violated the Patent Local Rules and This Court's "No
         Sandbagging" Rule By Playing "Hide the Ball" On Its Infringement Theories,**

18        **A.    Straight Path Waited Until its Summary Judgment Opposition Brief to Fully
                Disclose Its Infringement Theory for the "Is Connected" Limitation and
                Deliberately Increased Apple's Costs by Failing to Inform Apple That It Was
                Dropping a Patent.**

21        When attempting to preserve the validity of the patents, Straight Path invoked a single,

22   narrow feature that distinguished them over the prior art, namely a "real time" determination of

23   on-line status that *preceded* calling the user.  Faced with the predictable consequences of those

24   statements, Straight Path *now* argues they were not meant to exclude the situation where the server

25   determines on-line status by "checking" with the user in some way.  However, while Straight Path

26   did sometimes use the word "check" when describing how the system might determine online

27   status, it never once suggested that "check" included simply checking with the user itself in the

1    form of placing a call and waiting to see whether that user answered.  Nor is there any suggestion

2    of such an embodiment anywhere in any of the Asserted Patents.

3           Straight Path's Opposition to Apple's summary judgment motion faulted Apple for not

4    anticipating this theory and, instead, basing its motion on the supposedly "incorrect premise that

5    Straight Path accused the 'registration' features of FaceTime."  Dkt. 137 at 13.  But, it was only in

6    that same brief that Straight Path revealed for the first time its "real" theory.  Instead of the

7    "narrow" infringement path identified by the Federal Circuit judge during oral argument, Straight

8    Path posited for the first time that any system that includes a server and attempts to place a call to

9    the user before a connection is established could theoretically infringe, because the user

10   supposedly provides an implicit indication of her online status when she picks up the phone.

11          Straight Path's belated revelation of its "real" infringement theory was the culmination of a

12   pattern of playing "hide the ball."  None of its Complaints and neither of its sets of Infringement

13   Contentions had any version of this final theory.  Nor does that theory appear expressly in any of

14   Mr. Cole's expert reports.  It was only in Straight Path's _reply_ brief on summary judgment that

15   Straight Path provided any real explanation of its theory and, ironically, with a full explanation

16   coming only with its current argument as to why it should not be sanctioned.

17          Apple's inability to get a straight answer regarding Straight Path's "real" infringement

18   theories was not for lack of effort.  Over the course of this litigation, Apple filed two motions to

19   dismiss, Dkts. 26 and 44, and one motion for judgment on the pleadings, Dkt. 89, each on the

20   basis that Straight Path's theories had not been adequately disclosed.  While the Court denied the

21   motions or granted them only in part, the Court was obviously not aware that the theories Straight

22   Path disclosed were not its actual theories.  Apple also raised these issues with Straight Path

23   directly, repeatedly asking Straight Path to comply with the Local Rules by fully disclosing its

24   infringement theories.  Straight Path repeatedly ignored these requests.  _See_ Ex. 2 (James Letter

25   Dated October 18, 2016) and Ex. 3 (James Letter Dated August 29, 2017).  In addition, on

26   September 8, 2017, counsel for Apple requested that Straight Path clarify opinions asserted in its

27   infringement report, where Mr. Cole continued to "reserve the right to assert" indirect

28

1    infringement and doctrine of equivalents theories, but did not disclose a basis for such theories on

2    any claim.  Ex. 4 (Vidmar Letter Dated September 8, 2017) at 1-2.  That same letter documented

3    additional misconduct, as Straight Path apparently had decided at some point to drop one of its

4    asserted patents (U.S. Patent No. 6,131,121) entirely, but never informed Apple of that decision.

5    *Id*. at 2.  Instead, the patent was simply missing entirely from Mr. Cole's opening infringement

6    report and had disappeared from Straight Path's damages report.  While Straight Path may now try

7    to claim credit for narrowing its case, the benefits of that narrowing accrued only to Straight Path,

8    because Apple and its experts continued to expend time, legal fees and expert witness costs

9    analyzing and preparing reports on invalidity and non-infringement on a patent that Straight Path

10   had already decided to drop from the case.

11        Straight Path's belated disclosure of its "real" infringement theory and its gamesmanship

12   regarding which patents it was asserting violated both Patent L.R. 3.1 and this Court's

13   Supplemental Order to Order Setting Case Management Conference ("Supplemental CMO").

14   Patent L.R. 3.1(d) specifically requires disclosure of any infringement theory that involves third

15   parties:  "For each claim which is alleged to have been indirectly infringed, an identification of

16   any direct infringement and a description of the acts of the alleged indirect infringer that

17   contribute to or are inducing that direct infringement.  <u>Insofar as alleged direct infringement is</u>

18   <u>based on joint acts of multiple parties, the role of each such party in the direct infringement must</u>

19   <u>be described.</u>"  Straight Path's infringement contentions never effectively disclosed a theory in

20   which infringement *requires* the *combination* of a server-based registration and a user's

21   affirmative response to a call invitation, as Straight Path concedes in its Response.[4]  Such belated

22   disclosures also violate paragraph 8 of this Court's Supplemental CMO, which has a "no

23

24   _____

     [4] Response to OSC [Dkt. 163] at 11, n.5:  "But Straight Path did not argue that registration in the

25   accused systems was by itself sufficient to meet the 'is connected' claim element, or even

     necessary to meeting the claim under Straight Path's understanding of the term.  Rather, Straight

26   Path argued that '[e]ven if the claim did require "tracking" – which it does not,' *the combination*

     of the registration with the invite messages confirming online status could satisfy the 'is

27   connected' element." Case No. 3:16-cv-03582 at 16-17, Case No. 3:16-cv-03463, at 11."

28

sandbagging" provision that specifically bars announcing "new points" in reply briefs.[5]

## B. Straight Path and Its Expert Engaged in Sanctionable Misconduct on the '208 Patent.

Then there were the repeated flip-flops by Mr. Cole on infringement and invalidity theories on the '208 Patent. As noted in Apple's letter proposing a *Daubert* challenge of Mr. Cole, Straight Path offered at least four different infringement theories on the '208 Patent, two of which were explained only at the expert report stage and one of them in a reply report. Mr. Cole also had a very difficult time threading the needle in trying to maintain validity without doing fatal damage to Straight Path's infringement case. As but one example, Mr. Cole's rebuttal report on invalidity offered an entirely new and unsupported claim construction position, which he needed in order to distinguish several prior art references asserted against the '208 Patent. According to Mr. Cole, the prior art did not disclose the second element of the claim (sending a response "in accordance with the identity of the source" of the call), because the preamble supposedly imposed an order in which the "response" element had to be sent *before* the user was "selectively alerted" to an incoming call. Straight Path had never sought construction of this term, and there was no support anywhere in the intrinsic or extrinsic evidence for Mr. Cole's position (and he did not cite any), but he used it to distinguish at least five different prior art references or combinations. Ex. 5 (Cole Rebuttal Invalidity Report) at ¶¶164, 235, 250, 306. After reviewing Apple's rebuttal report on infringement, however, Straight Path apparently realized that Mr. Cole's newly discovered ordering of steps made it impossible for Apple to infringe those claims. Therefore, while he never sought to correct his <u>invalidity</u> report, in his reply report on <u>infringement</u>, Mr. Cole inserted a

---

[5] Similarly with respect to the '208 Patent that was not subject to summary judgment motions, Straight Path's expert reports argued that a user's act of blocking or not blocking calls is part of the infringement read, but its "blocked" call theory was not explained in its infringement contentions, and its' "unblocked call" theory did not even exist until Mr. Cole's reply report on infringement. Straight Path did not attempt to comply with Patent. L.R. 3.1(d) with respect to either theory. Straight Path also has argued it marked patent practicing products but has never complied with Patent L.R. 3.1(g)'s disclosure requirements for such products, and has alleged willful infringement but has never complied with Patent L.R. 3.1(i)'s requirement of a full disclosure of the basis for such theory.

footnote that both retracted his prior theory <u>and</u> reversed his opinion on the role of call blocking, which previously had been that a ***blocked call*** infringed:[6]

> In my Validity Report, I believe that I misspoke in suggesting that a responsive packet must be sent temporally before the alert. My point was that the responsive packet must be sent based on the identity of the source, and that in the FaceTime system, ***this requires that the caller not be blocked***. For example, the responsive packet in the accept request in FaceTime is sent only when a caller is not blocked, and thus based on the identity of the source of the incoming packet. Because none of the prior art disclosed "selectively alerting," this mistake in the Validity Report does not change any of my opinions in the Validity Report.

Ex. 7 (Cole Reply Infringement Report) at 25 n.2.

When deposed on this reversal, Mr. Cole admitted that it came at the behest of Straight Path's counsel, and he claimed not to be able to remember who had written the original opinion on that issue.  Ex. 1 (Cole Tr.) at 81.

**III.    Straight Path Lacked Good Faith Basis for Claiming Willful Infringement or Pre-Suit Damages.**

Straight Path sued Apple (along with Cisco and Avaya) for the first time in June of 2014. Almost immediately after the lawsuit was filed, Straight Path approached the defendants asking that they agree to stay the three cases pending the outcome of several *Inter Partes Review* proceedings.  The Court denied that stay request.  Straight Path then requested that the defendants agree to a dismissal without prejudice.  Apple was not interested in that proposal if the dismissal would entitle Straight Path to any additional relief upon any re-filing.  Therefore, Apple insisted on a "Standstill Agreement," pursuant to which Straight Path agreed not to use the 2014 lawsuit as the basis for any claim of enhanced damages.  Straight Path agreed.  However, when Straight Path filed its original, Amended Complaint and Second Amended Complaints in the current action, each did, in fact, rely on the 2014 filing as notice of infringement for purposes of enhanced damages.  This was a clear breach of the 2014 Standstill Agreement.

---

[6] *See* Ex. 6 (Cole Infringement Report) at ¶373: "This response is done in accordance with the identity of the source because the response is sent based on the fact that the source <u>is on a block list</u>."

### A.  Straight Path had no good faith basis for asserting pre-suit actual notice.

When confronted on the Standstill Agreement breach during the briefing on Apple's Motion for Judgment on the Pleadings, Straight Path withdrew, at the oral hearing, its reliance on the 2014 complaint as the basis for its claim that Apple had notice of infringement as of that date. However, at that same hearing, Straight Path claimed that two letters allegedly sent to Apple in 2007 and 2012, provided the requisite notice of infringement.  Ex. 8 (Alroy 2007 Letters to Jobs and Serlet) and Ex. 9 (Ragnar 2012 Letter to Scott).

Not only was it unreasonable for Straight Path's attorneys to argue these letters provided knowledge of infringement, but Straight Path's own CEO did not support that position.  The 2007 set of letters consisted of two form letters allegedly sent to Apple's CEO Steve Jobs and another high-ranking Apple executive by Straight Path's predecessor, IDT.  The letters admit on their face that they were sent to over 200 companies. Ex. 8 at 1, 3.  Both letters propose the formation of an industry consortium of some sort, relating to establishing protocols for internet-based communications.  *Id.*  A vague reference to what are now the Straight Path patents is buried on the second page of the letter.  *Id.* at 2, 4.  But, there is no allegation of infringement.  Instead, the letters suggest that the patents demonstrate IDT's fitness to lead the proposed consortium. Moreover, the letters could not possibly have been meant to put Apple on notice of infringement, because not only do they not mention the accused FaceTime product, they <u>pre-date FaceTime's introduction by three years</u>.  Similarly, the 2012 letter also did not accuse Apple of infringement and did not mention FaceTime. Ex. 9.  Instead, the letter was sent by a patent brokerage service known as Global IP Group that Straight Path engaged to try to market the patents for a potential sale.  Dozens of identical letters were sent, none of them accusing any of the recipients of infringement.  Ex. 10 (Jonas Tr.) at 221:17-244:15, 246:19-247:10.

Relying on these letters for notice of infringement was, apparently, a bridge too far even for certain business people at Straight Path.  In August of this year, Apple deposed Straight Path's CEO, David Jonas, in both his personal capacity and as a Rule 30(b)(6) deponent.  When confronted with dozens of identical letters sent on Straight Path's behalf to various companies—

including other non-practicing entities that had no products to infringe—Mr. Jonas conceded these letters were part of a generalized effort to monetize the patents, whether through licensing or sale. When asked whether they provided notice of infringement to Apple, he confirmed that was <u>never their purpose</u>.  Ex. 10 (Jonas Tr.) at 247:6-11. When asked to identify Straight Path's contention as to the earliest date on which Apple *was* given notice of infringement, Mr. Jonas stated unequivocally that it was <u>with the filing of Straight Path's initial complaint on September 24, 2014</u>.  *Id.* at 275:70-276:7.  Yet, Straight Path's attorneys and their damages expert, Stephen Dell (who seems to function as a virtual in-house expert for the Russ August & Kabat firm)[7], continued to assert that these letters provided pre-suit notice for purposes of asserting a pre-2014 damages claim.  Ex. 11 (Dell Report) at ¶¶ 114-115; Attachment 9, note 6.

### B. Straight Path had no good faith basis for asserting pre-suit notice based on marking.

Throughout the litigation, Straight Path maintained that the previous owner of the Asserted Patents, a related entity called IDT, marked its products and that its licensees did so as well.  *See e.g.* Ex. 12 (Straight Path's November 14, 2016 Response to Apple's Interrogatory No. 9).  However, Straight Path's CEO, Mr. Jonas, who was Straight Path's designated Rule 30(b)(6) deponent on marking, was unable to provide any evidence of consistent marking by IDT and none at all by Straight Path's own licensees.  Straight Path's attorneys then put up a second Rule 30(b)(6) deponent on the marking issue, Vandana Koelsch, a lawyer with a complicated relationship with IDT and/or Straight Path's related entities.  On the morning of the deposition, Straight Path produced for the first time an internal document, prepared as part of an effort to

---

[7] Mr. Dell promotes himself as an "independent expert," Ex. 16 (Dell Tr.) at 30, and a "Certified Valuation Analyst," a "credential" that he admitted at his deposition resulted from a <u>six-day</u> "crash course," *id.* at 10:8-19.  Virtually all of his "valuation" experience seems to come from working for plaintiffs and their attorneys, primarily the Russ August & Kabat ("RAK") law firm.  His *curriculum vitae* lists 24 matters on which he has given expert testimony.  In 23 of those matters he represented the plaintiff and in all but eight he was hired by the RAK firm.  *Id.* at 23:20-24:15, 24:16-28:21.

value Straight Path and all its assets for purposes of a contemplated sale to a related entity.[8]

Ex. 13.  That document read, in relevant part:  "While previous owner (IDT) did mark their product with the accused [sic] patents, subsequent licensees have not marked."  *Id.* at 17.  That statement plainly contradicted positions Straight Path and its attorneys took throughout the case.  The document also referred to one of the letters discussed above that Straight Path relied upon for pre-suit notice, stating:  "A letter was sent to Apple requesting to discuss the patent portfolio generally.  It is unclear how substantive those communications were and whether they will satisfy the requirements of Actual Notice."  *Id.*

### C.  Straight Path had no good faith basis for claiming pre-suit damages.

Given that Straight Path had no good faith basis for alleging pre-suit notice of infringement or consistent marking, Straight Path had no good faith basis for pursuing a pre-suit damages claim against Apple.  Under 35 U.S.C. § 287, in order to be entitled to damages, Straight Path had to show either actual notice of infringement or consistent marking of patent practicing products.  The only evidence offered regarding actual notice was the 2007 and 2012 letters.  Straight Path's attorneys simply ignored their own client's sworn testimony that the letters did <u>not</u> provide pre-suit notice and were never intended to do so.  *See* Jonas Tr. 247:6-11, 275:70-276:7 (notice provided by 2014 Complaint).  Regarding marking, it is unclear when Straight Path's counsel learned of the internal document that refuted their litigation positions regarding marking, but what <u>is</u> clear is they never withdrew their damages claim nor did they ever stop claiming Apple had pre-suit notice of infringement.  To the contrary, they served a damages expert report which was <u>predicated</u> on that same pre-suit notice of infringement and used the earlier starting date to get to an astronomical royalty figure (see below).

Counsel for Apple raised all of these issues in his August 29, 2017 letter to the Russ Kabat

---

[8] The valuation, performed by a third-party valuation company on behalf of Straight Path's board of directors, valued the entirety of Straight Path IP Group—including the Asserted Patents, the rest of the Straight Path's portfolio, and all its pending lawsuits—at ████████ Ex. 10 (Jonas Tr.) at 10:18-22.  Yet, Straight Path's attorneys and damages expert argued that a reasonable royalty as to Apple alone was $95 million.

& August firm.  Ex. 3 at 1-3.  They sent a response that did not address, let alone refute, any of Apple's concerns.  Ex. 14 (August 19, 2017 Ledahl Letter to James).

**IV.     Straight Path's Royalty Demand Was Grossly Unreasonable.**

Straight Path is a non-practicing entity.  Its only business is licensing patents, primarily the Asserted Patents.  Over the years, it has entered into sixteen relevant licenses (5 others were between related entities or otherwise not relevant to this litigation).  Licensees include major Apple smartphone and operating system competitors (Blackberry, Google and various Android-based handset makers) as well as various successful video-conferencing software platforms (Skype).  Not a single company has ever paid Straight Path more than $6.5 million to license its entire portfolio.  Also, Straight Path apparently just completed a sale of its entire patent portfolio back to a related entity for $6 million.   Ex. 15, (Straight Path Communications, Inc. Form 8-K (Oct. 24, 2017)) at 2.  Yet, it maintained that a reasonable royalty from Apple was $95 million – *fourteen times* the amount anyone else has ever been willing to pay.  As Apple highlighted in its letter seeking a *Daubert* motion on Mr. Dell [Dkt. 138], Straight Path's eye-popping claim hinges on a fundamentally flawed damages analysis, including:

- Claiming damages back to the introduction of FaceTime in 2010, even though Straight Path could not prove marking and did not have any basis for claiming actual notice prior to 2014.  Since the Asserted Patents expired in 2015, this gamesmanship represented the difference between a one-year damages period and a five-year damages period.

- Apportioning damages based on the purported value of the entirety of FaceTime as a proportion of the entire device price, instead of apportioning damages to the alleged invention claimed in the Asserted Patents and mapping it to the alleged value of the accused FaceTime feature.

- Quadruple-counting the proportion of survey respondents who identified FaceTime as one of their favorite features by ignoring the fact that the surveys allowed people to designate multiple products as among those favorites.

- Cherry-picking two of sixteen licenses that had any royalty rate, ignoring the fourteen

others that were simple lump-sums.  Even the two licenses Straight Path relied on were not true running royalties, as one included a low total cap on all future royalty payments and the other never resulted in any running royalty payment.

The last item above again illustrates the lengths that Straight Path's attorneys and experts were willing to go to in order to maintain a deeply flawed analysis resulting in grossly excessive alleged royalties.  Straight Path's damages expert maintained that Straight Path's licenses with key Apple competitors distributing similar products were not instructive of what Apple should pay, because those licenses did not contain an express royalty rate or volume metrics from which a reasonable royalty could be derived.  Ex. 16 (Dell Tr.) at 223:4-225:16, 231:13-232:4, 233:9-234:3.  Yet, Straight Path's CEO had *testified* that, like virtually all of Straight Path's other licenses, they had been negotiated on a lump-sum basis without reference to such metrics.  Ex. 10 (Jonas Tr.) at 360:24-361:11.  Mr. Dell had access to that testimony, but chose to ignore it.  Ex. 16 (Dell Tr.) at 232:17-233:8.  He also maintained that he could not use the licenses with actual Apple competitors that were facially more comparable, because he supposedly lacked information on how they were negotiated.  *Id.* at 231:15-232:4.  Yet, he could not explain why he did not just pick up the phone and request that information from his client's CEO, Mr. Jonas, who was the signatory on every one of those settlement agreements.  *Id.* at 232:5-16.

Worse, Mr. Dell's professed lack of understanding of the basis of the licensing negotiations extended from the fact that over the course of the litigation, Straight Path never produced a single document related to their licensing negotiations, despite requests from Apple.  Straight Path took the implausible position that there was not a single non-privileged document related to those negotiations in the possession of a company whose one and only business is asserting these patents.  *See e.g.* Ex. 17 (Straight Path's July 11, 2017 Supplemental Response to Apple's Interrogatory No. 9); Ex. 18 (Straight Path's November 14, 2016 Response to Apple's RFP No. 34).  Straight Path then sought to profit from its own failure to produce relevant records in two ways.  First, as noted, this provided Mr. Dell with a ready-made excuse for not delving into the terms of the negotiations for licenses that were, on their face, the most comparable to Apple.

1    Second, when Straight Path deposed Apple's damages expert, Straight Path's attorney pursued a

2    thoroughly misleading line of questioning in which he insinuated that Apple's expert lacked a

3    basis for his opinions on those licenses <u>because he had not examined documents that Straight Path</u>

4    <u>never produced</u>.  Ex. 19 (Hansen Tr.) at 47:18- 53:1.

5                                    **CONCLUSION**

6          Under these circumstances, given the misconduct described above, Straight Path should be

7    ordered to pay all of Apple's attorneys' fees and costs.  Further, given that much of this

8    misconduct seems to have been directed by Straight Path's law firm (Straight Path's CEO did,

9    ultimately, provide testimony unfavorable to Straight Path that was simply ignored by Straight

10   Path's counsel and experts) the award should be against **<u>both</u>** Straight Path and its counsel, jointly

11   and severally.

12

13   Respectfully submitted on December 5, 2017.

14                                    **HOGAN LOVELLS US LLP**

15                                    <u>/s/  Clayton C. James</u>

16                                    Clayton C. James (Cal. Bar No. 287800)
                                      clay.james@hoganlovells.com
17                                    Srecko "Lucky" Vidmar (Cal. Bar No. 241120)
                                      lucky.vidmar@hoganlovells.com
18                                    Helen Y. Trac (Cal. Bar No. 285824)
                                      helen.trac@hoganlovells.com
19                                    Three Embarcadero Center, Suite 1500
                                      San Francisco, California 94111
20                                    Telephone: (415) 374-2300
                                      Facsimile: (415) 374-2499
21

22                                    Celine J. Crowson (*pro hac vice*)
                                      555 Thirteenth Street NW
23                                    Washington, DC 20004
                                      Telephone: (202) 637-5600
24                                    Facsimile: (202) 637-5600
                                      celine.crowson@hoganlovells.com
25

26                                    Aaron S. Oakley (*pro hac vice*)
                                      1601 Wewatta Street, Suite 900
27                                    Denver, Colorado 80202

28

Telephone (303) 899-7300
Facsimile: (303) 899 7333
aaron.oakley@hoganlovells.com

*Attorneys for Apple Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2017, I electronically filed a true and correct copy of the foregoing **APPLE'S RESPONSE TO STRAIGHT PATH'S BRIEF ON ORDER TO SHOW CAUSE** using he Court's CM/ECF filing system, which will serve the same upon all registered counsel of record.

*s/ Clayton C. James*
Clayton C. James