Clayton C. James (Cal. Bar No. 287800)
clay.james@hoganlovells.com
Helen Trac (Cal. Bar No. 285824)
helen.trac@hoganlovells.com
**HOGAN LOVELLS US LLP**
Three Embarcadero Center, Suite 1500
San Francisco, California  94111
Telephone:     (415) 374-2300
Facsimile:     (415) 374-2499

Aaron S. Oakley (pro hac vice)
aaron.oakley@hoganlovells.com
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
Telephone:     (303) 899-7300
Facsimile:     (303) 899 7333

Attorneys for Defendant APPLE INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

STRAIGHT PATH IP GROUP, INC.,

             Plaintiff,

      v.

APPLE INC.,

          Defendant.

Case No. 3:16-cv-03582-WHA

**DEFENDANT APPLE INC.'S MOTION FOR ATTORNEYS' FEES**

Date:          May 30, 2019
Time:          8:00 a.m.
Courtroom:   12, 19th Floor
Judge:         Hon. William H. Alsup

United States District Court
Northern District of California

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES .............................................. 1

STATEMENT OF RELIEF REQUESTED ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1

I.      INTRODUCTION .................................................................................................................. 1

II.     PROCEDURAL HISTORY & RELATED LITIGATION .................................................... 3

III.    FACTS ................................................................................................................................... 6

        A.      Straight Path's Belatedly Disclosed Infringement Theories Were a "Bait and
                Switch" ....................................................................................................................... 6

                1.      Straight Path's Arguments to the Federal Circuit in *Sipnet* Appeal .............. 7

                2.      Straight Path's Arguments to the Federal Circuit in *Samsung* Appeal ......... 8

                3.      Straight Path Waits Until Summary Judgment Briefing to Disclose
                        Its Real "Is Connected" Infringement Theory ............................................... 8

                4.      Straight Path Was Unable to Explain to the Federal Circuit How Its
                        New Theory was Covered by Its Patents. ...................................................... 10

        B.      Straight Path Could Not Defend Its '208 Patent at the PTAB ................................ 12

        C.      Straight Path Asserted Baseless Claims for Willful Infringement and Pre-
                suit Damages ............................................................................................................ 14

        D.      Straight Path Demanded Royalties that were Grossly Unreasonable ...................... 16

IV.     LEGAL STANDARD .......................................................................................................... 16

V.      ARGUMENT ....................................................................................................................... 18

        A.      Apple is the Prevailing Party ................................................................................... 18

        B.      This Case is Exceptional under the Patent Act and Was Litigated in Bad
                Faith ......................................................................................................................... 18

                1.      Straight Path's Infringement Theory was Objectively Unreasonable
                        and Litigated in a Manner that Needlessly Drove Up Costs for Apple ....... 18

United States District Court
Northern District of California

1

2.      Straight Path's Litigation Conduct Warrants Sanctions............................. 21

3.      Straight Path's Theory for Willful Infringement and Pre-suit
        Damages was Objectively Unreasonable ..................................................... 24

VI.     CONCLUSION ................................................................................................................ 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES:

*AdjustaCam, LLC v. Newegg, Inc.*,
   861 F.3d 1353 (Fed. Cir. 2017) ........................................................................................20

*Bayer CropScience AG v. Dow AgroSciences LLC*,
   851 F.3d 1302 (Fed. Cir. 2017) ........................................................................................24

*Buckhannon v. W. Va. Dep't of Health and Human Res.*,
   532 U.S. 598 (2001) .........................................................................................................18

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
   293 F. Supp. 3d 1038 (N.D. Cal. 2018) ...........................................................................24

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ...........................................................................................17

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   572 U.S. 559 (2014) .........................................................................................................17

*Highway Equip. Co. v. FECO, Ltd.*,
   469 F.3d 1027 (Fed. Cir. 2006) ..................................................................................17, 18

*ICON Health & Fitness, Inc. v. Octane Fitness, LLC*,
   706 F. App'x 666 (Fed. Cir. 2017) ...................................................................................24

*In re Keegan Mgmt. Co., Sec. Litig.*,
   78 F.3d 431 (9th Cir. 1996) .............................................................................................17

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017) .......................................................................................17

*IPVX Patent Holdings, Inc. v. Voxernet LLC*,
   No. 5:13-CV-01708 HRL, 2014 WL 5795545 (N.D. Cal. Nov. 6, 2014)..........................20

*Kilopass Tech. Inc. v. Sidense Corp.*,
   No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) .............................19, 22

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
   No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) ....................................19

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012).................................................................................3, 24, 25

*Mattel, Inc. v. MGA Entm't, Inc.*,
   No. CV 04-9049, 2011 WL 3420603 (C.D. Cal. Aug. 4, 2011), *aff'd*, 705 F.3d
   1108 (9th Cir. 2013) ...........................................................................................................3

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Max Sound Corp. v. Google, Inc.*,
  No. 14-CV-04412-EJD, 2017 WL 4536342 (N.D. Cal. Oct. 11, 2017).....................................24

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) .........................................................................................................17

*Phigenix, Inc. v. Genentech, Inc.*,
  No. 15-CV-01238-BLF, 2018 WL 3845998 (N.D. Cal. Aug. 13, 2018) ............................17, 22

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004) .........................................................................................18

*Raniere v. Microsoft Corp.*,
  887 F.3d 1298 (Fed. Cir. 2018) .....................................................................................23, 24

*Richtek Tech. Corp. v. uPI Semiconductor Corp.*,
  No. C 09-05659 WHA, 2016 WL 4269095 (N.D. Cal. Aug. 15, 2016) ............................20, 21

*Samsung Elecs. Co., Ltd. v. Straight Path IP Grp., Inc.*,
  696 F. App'x 1008 (Fed. Cir. 2017)...................................................................................8

*Sipnet EU S.R.O. v. Straight Path IP Group, Inc.*,
  No. IPR2013-00246, 2014 WL 5144564 (Patent Tr. & App. Bd. Oct. 9, 2014) .......................6

*Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*,
  806 F.3d 1356 (Fed. Cir. 2015) .........................................................................................8

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
  549 F.3d 1381 (Fed. Cir. 2008) .........................................................................................3

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
  726 F.3d 1306 (Fed. Cir. 2013) .........................................................................................20

*Tech. Properties Ltd. LLC v. Canon Inc.*,
  No. C 14-3640 CW, 2017 WL 2537286 (N.D. Cal. Jan. 26, 2017), *aff'd*, 718 F.
  App'x 987 (Fed. Cir. 2018) ...............................................................................................20

*Yufa v. TSI Inc.*,
  No. 09-CV-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014)................................20

**STATUTES:**

28 U.S.C. § 1927 ...........................................................................................................1, 17

35 U.S.C. § 285 ...................................................................................................... *passim*

## NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES

PLEASE TAKE NOTICE that on May 30, 2019 at 8:00 a.m. in Courtroom 8 of the United States District Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable William H. Alsup, Defendant Apple Inc. ("Apple") will and hereby does respectfully move for attorneys' fees and costs pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power.  This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and any exhibits[1] thereto, and such other authorities and argument as may be submitted in a reply at or before the hearing.

## STATEMENT OF RELIEF REQUESTED

Pursuant to 35 U.S.C. §285, 28 U.S.C. § 1927, and the Court's inherent power, Apple seeks attorneys' fees and costs from the beginning of the case through summary judgment on the ground that this is an exceptional case:  (1) Straight Path played "hide the ball" with its infringement theories, and had they been disclosed at the outset this case could have been disposed of at the pleadings stage; and (2) Straight Path litigated in an unreasonable manner, including taking facially inconsistent positions before multiple tribunals, pursuing objectively baseless infringement theories that were inconsistent with the stipulated claim construction, asserting an invalid patent that Straight Path later failed to defend at the USPTO, and pursuing inflated damages positions based on an Entire Economic Value theory that has been expressly rejected by this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Straight Path's litigation against Apple was characterized by gamesmanship and bad faith. Its misconduct permeated the entire case, beginning with its decision to expand dramatically the "narrow infringement argument" that a Federal Circuit judge observed Straight Path had left itself

---

[1]    Unless otherwise specified, references to exhibits are those referenced in the Declaration of Clayton C. James (attached Exhibits 1-27).

1    with its validity-preserving claim construction, transforming it—without disclosure to Apple or

2    Cisco until summary judgment briefing—into something this Court characterized as of "sweeping

3    breadth."  So sweeping an argument was Straight Path's only means of pursuing claims against

4    Apple's FaceTime system, which could not possibly infringe under the Federal Circuit's

5    construction.  Straight Path's multi-court "bait and switch"—arguing one thing to the Federal

6    Circuit and PTAB to preserve validity and the opposite to this Court to try to show infringement—

7    could have been disposed of in short order had Straight Path disclosed it early, as required by the

8    Patent Local Rules.  But, it didn't.  Instead, Straight Path hid its infringement theory for two years,

9    disclosing its "real" theory (which, on appeal of this Court's summary judgment ruling, was itself

10   later revealed to be untethered to anything disclosed in the asserted patents) only partially in its

11   opposition brief on summary judgment and, then, more fully only after this Court asked Straight

12   Path's why it shouldn't be sanctioned for its summary judgment arguments.

13       Straight Path also engaged in bad faith tactics with respect to asserting its U.S. Patent No.

14   7,149,208 ("the '208 patent"), which was not subject to Apple's summary judgment motion.  The

15   '208 patent was facially obvious; Straight Path's infringement contentions showed it to be

16   indistinguishable from basic "caller ID."  In trying to find a viable infringement read while

17   preserving validity, Straight Path's expert twisted himself into a pretzel, advancing no less than

18   *four* different infringement theories.  Worse, when the patent was challenged in an *ex parte*

19   reexamination, it proved so flimsy that Straight Path defaulted by failing to submit a substantive

20   opposition after the Examiner preliminarily rejected the claims on *six* independent grounds.

21       Finally, with respect to damages, Straight Path asserted baseless claims for willful

22   infringement and pre-suit damages, in breach of a 2014 Standstill Agreement.  When that failed, it

23   sought to prove pre-suit notice by virtue of two form letters that did not allege infringement by any

24   Apple product and that pre-dated the existence of the accused FaceTime product by several years.

25   Worse, Straight Path's Chief Executive Officer, deposed as Straight Path's Rule 30(b)(6) witness,

26   testified the letters did *not* put Apple on notice of infringement and were never intended to do so.

27

28

Yet, Straight Path's attorneys and its damages expert continued to rely on those same letters to pump up the damages claim by tens of millions of dollars. Their theories were not just factually baseless, but legally baseless as well. Straight Path's expert ignored governing law and this Court's rulings in similar cases, using a legally impermissible variant of the Entire Economic Value Rule to use total sales of Apple devices as the starting point for apportionment, even though the accused feature was one among hundreds in the accused products and there was no evidence that the accused feature drove customer demand. On similar facts, this Court has held that it is improper to even start the analysis using total device sales. This resulted in a claim that was orders of magnitude higher than the highest license amount Straight Path ever received, several times greater than the combined value of all of its licenses combined, and nearly 16 times Straight Path's going concern value (including its patent portfolio and its on-going litigations), as demonstrated by the fact that shortly before this Court's summary judgment ruling, Straight Path sold itself and all its assets for a fraction of the damages it demanded from Apple.

Given Straight Path's long litany of litigation misconduct, Straight Path should be ordered to pay Apple's attorneys' fees and costs of $4,571,883.87.[2]

## II.   PROCEDURAL HISTORY & RELATED LITIGATION

Straight Path first sued Apple (along with Cisco and Avaya) in June of 2014. Almost immediately after filing, Straight Path sought to stay the cases pending several *Inter Partes* Review proceedings. The Court refused to stay the case, so Straight Path then proposed a dismissal without prejudice. Apple agreed to the dismissal, but only after the parties executed a "Standstill Agreement," pursuant to which Straight Path agreed not to use the 2014 lawsuit as the

---

[2]     Courts have awarded fees comparable to and far higher than Apple's request. For example, a $105.7 million award was upheld on appeal in a copyright case. *Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049, 2011 WL 3420603, at *10 (C.D. Cal. Aug. 4, 2011), *aff'd*, 705 F.3d 1108 (9th Cir. 2013); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 910 (Fed. Cir. 2012) (affirming fee award of $3.8 million under section 285 and court's inherent authority); *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1383-84 (Fed. Cir. 2008) (affirming fee award of $11.4 and $5.4 million under section 285).

1    basis for claiming pre-suit notice of infringement for purposes of an enhanced damages claim in

2    any future lawsuit.

3           For the next two years, Straight Path litigated multiple IPR proceedings before the PTAB

4    and twice before the Federal Circuit.  In each forum, Straight Path argued that what distinguished

5    its patents over the prior art was an "is connected" claim limitation that cut across all patents

6    (except the '208).  Straight Path argued, successfully, that the "is connected" claim limitation

7    required that a callee's connectivity status be determined at the precise moment in time that the

8    caller's device transmitted a "query" about such status to a server that "tracked" and determined

9    current on-line status through an accurate database.  Straight Path claimed this critical timing

10   element made its invention novel and also valuable, because determining the callee's on-line status

11   before placing the call allegedly saved network resources.  The claim construction resulting from

12   that argument—requiring that "is connected" status be determined at the precise time of the caller

13   device's transmission of the "query" to the server—preserved the validity of Straight Path's

14   patents.  But, as one of the Federal Circuit judges observed at oral argument, it left Straight Path

15   with a "pretty narrow infringement argument."  Ex. 1 (Tr. of Oral Argument in *Straight Path IP*

16   *Grp., Inc. v. Samsung*, Appeal No. 16-2004 (Fed. Cir. June 23, 2017)) ("*Samsung* Oral Argument

17   Transcript") at 27-29.

18          On June 24, 2016, Straight Path filed the current action against Apple, again asserting

19   claims for direct and induced infringement of the '704, '121, '365, and '208 patents (the same four

20   patents asserted in 2014), and adding claims under the '469 patent (collectively, the "asserted

21   patents").  The Complaint itself gave no hint that Straight Path intended to trot out an infringement

22   theory that was not "pretty narrow" but, to the contrary, breathtakingly broad.  The Complaint

23   accused Apple's FaceTime feature, alleging that a FaceTime server determined on-line status via a

24   database that tracked connectivity status.  *See e.g.* Dkt. 1 at ¶29 ("Defendant's Accused

25   Instrumentalities utilize Apple servers and services . . . to, among other things, track the network

26   addresses and online status of users.").  After the server determined that the callee was on-line,

27

28

DEFENDANT APPLE INC.'S MOTION FOR ATTORNEYS' FEES
CASE No. 3:16-CV-03582-WHA                    4

1   FaceTime allegedly would place the call.  No other theory was disclosed in Straight Path's

2   original 2016 Complaint, or in either of its subsequent Amended Complaints or in its two sets of

3   infringement contentions, or even in its expert reports.  Nor did any of those disclose a theory

4   encompassing a system that initiates calls *before* on-line status is determined, placing calls to

5   callees who might or might not be on-line and whose on-line status is determined "implicitly" if,

6   and only if, the callee answers the phone.  Yet, that was the undisclosed theory Straight Path

7   ultimately used to try to defeat summary judgment.

8         Further, Straight Path's 2016 complaint asserted a claim for willful infringement that

9   facially violated the parties' 2014 Standstill Agreement.  Apple sought judgment on the pleadings

10  with respect to Straight Path's Second Amended Complaint (Dkt. 84), in part because it included a

11  willful infringement claim that was expressly premised on pre-suit notice of infringement by

12  virtue of the 2014 lawsuit—the very claim that the 2014 Standstill Agreement precluded Straight

13  Path from bringing.  Straight Path ignored the issue until the hearing on Apple's motion, then at

14  that hearing abruptly withdrew its reliance on the 2014 complaint , substituting (without amending

15  its pleadings) an entirely new theory in which two form letters that its predecessor supposedly sent

16  to Apple in 2007 and 2012 provided the requisite notice.  But, neither of the letters accused any

17  Apple product of infringing any patent, and Apple's FaceTime product did not even exist at the

18  time the 2007 letters were allegedly sent—it was not released until three years later.  *See* July 20,

19  2017 Hearing Tr. at 25:8-26:19; Ex. 2 (Alroy 2007 Letters to Jobs and Serlet) ("2007 letters") and

20  Ex. 3 (Ragnar 2012 Letter to Scott) ("2012 letter").  When subsequently deposed on this issue in

21  his capacity as a Rule 30(b)(6) witness, Straight Path's CEO candidly admitted that the letters

22  could not possibly have given Apple notice of infringement by FaceTime and were not intended to

23  do so.  Ex. 4 (Jonas Tr.) at 221:17-244:15, 246:19-247:6-11.  Yet Straight Path's attorneys and

24  damages expert continued to rely on them as the "notice" required for both indirect infringement

25  and enhanced damages. Ex. 5 (Dell Rep.) at ¶¶ 114-115.

26

27

28

1    On November 13, 2017, this Court granted Apple's Motion for Partial Summary Judgment

2    of Non-Infringement.[3]  *See* Order Granting Motions for Summary Judgment and Order to Show

3    Cause [Dkt. 155] ("MSJ Order") (November 13, 2017).  The Court further ordered Straight Path

4    and its counsel to show cause "why they should not be held liable for defendants' attorney's fees

5    by virtue of this being an 'exceptional' case within the meaning of Section 285 of Title 35 of the

6    United States Code."  *Id.*  Straight Path requested that the Court defer ruling pending Straight

7    Path's appeal of the MSJ Order,  Dkt. 175 at 12, which the Court granted.  Dkt. 179 at 1.  On

8    January 12, 2018, the parties filed a stipulated request that the Court "order that the Rule

9    54(d)(2)(B)(i) deadline for filing a motion for attorney's fees and/or nontaxable costs be held in

10   abeyance in each case pending resolution of Straight Path's appeals on the merits," Dkt. 183 at 1-

11   2, which the Court granted. Dkt. 185 at 1.

12   On January 23, 2019, after a hearing in which Straight Path failed to explain how its

13   current litigation position comported with the claim construction it had convinced prior Federal

14   Circuit panels to adopt, the Federal Circuit issued a summary affirmance of this Court's ruling on

15   summary judgment, pursuant to Federal Circuit Appellate Rule 36.  Straight Path petitioned for

16   rehearing, which the Federal Circuit denied.  Ex. 6 (Order Denying Rehearing).  The mandate

17   issued on April 4, 2019.  *Id.*

18   **III.    FACTS**

19       **A.  Straight Path's Belatedly Disclosed Infringement Theories Were a "Bait and Switch"**

20   Claim construction for these patents was first addressed by the PTAB in 2014, when it

21   invalidated them after finding that the claims were broad enough to encompass prior art

22   "registration systems," in which a system that was on-line and active at the time of registration.

23   *Sipnet EU S.R.O. v. Straight Path IP Group, Inc*., No. IPR2013-00246, 2014 WL 5144564 at *4,

24   *9, *13 (Patent Tr. & App. Bd. Oct. 9, 2014).

---

[3] The '208 patent did not include the "is connected" limitation and thus was not subject to the MSJ Order.  The Court stayed all proceedings in connection with that patent pending reexamination proceedings. Dkt. 171 at 1-2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1. Straight Path's Arguments to the Federal Circuit in *Sipnet* Appeal

Straight Path appealed, arguing that the determination of on-line status must happen at the precise time the query is transmitted by the caller's phone and not some earlier or later time. Straight Path argued that "[t]he challenged claims expressly require a determination that the second process '**is** connected to the computer network' *at the very moment* when the first process queries whether it (the second process) is connected and available for communication." *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, Appeal No. 15-1212, Straight Path Opening Br. [Dkt. 23] at 25 (March 13, 2015). At oral argument, Straight Path argued that the claimed invention differed from the prior art as follows:

> Because [the server is] doing it realtime, your Honor. . . When the first process wants to communicate point to point, it's asking *the server* to confirm that that party is online and because dynamic addresses can be assigned and reassigned, it's saying, to confirm that it's on line *at that moment* and it's online at that address.

> So, you see, *the database at that moment has to be able to make that binary decision*, your Honor. . . So it's not about whether at some earlier moment in time that second callee process is online or at some – *any other time other than when the first process says to the server, through the program code, I want to communicate with my peer*.

Ex. 7 (Tr. of Oral Argument in *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, Appeal No. 15-1212 (Fed. Cir. September 9, 2015)) ("*Sipnet* Oral Argument Transcript") at 5-6 (emphasis added). Straight Path emphasized the timing element: "*That binary decision has to be made by the server then* because it takes—the connection server under the patent is required to do a different thing based upon its decision and determination." *Id*. at 6 (emphasis added). Straight Path further argued that in order to make that "binary decision," the server has to "track" whether the user is online:

> [Mr. Wodarski] But critical to the '704 system as opposed to the prior art is a disclosure in column 6 which says, when the process goes offline, it has to communicate that to the server. *The server is obliged and required to update that status* by either deleting that information of that process or flagging it as offline.

*Id*. at 3-4 (emphasis added).

---

DEFENDANT APPLE INC.'S MOTION FOR ATTORNEYS' FEES
CASE NO. 3:16-CV-03582-WHA                                    7

The Federal Circuit reversed the Board's decision invalidating the patents and adopted Straight Path's construction of "is connected" as "is connected to the computer network at the time that the query is transmitted to the server." *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015); *see also id.* at 1366 n.2 (quoting from the oral argument).

### 2.  Straight Path's Arguments to the Federal Circuit in *Samsung* Appeal

Applying that construction on remand, the Board upheld the validity of the challenged claims.  The petitioners appealed, and Straight Path once again argued that the prior art did not perform the claimed query, because "not only is the prior art not designed to *keep track of current online status*, it is not designed to check online status when responding to a query for a user's IP address." *Samsung Elecs. Co., Ltd. v. Straight Path IP Grp., Inc.*, 696 F. App'x 1008, 1013 (Fed. Cir. 2017) (emphasis added).  During oral argument in *Samsung*, Straight Path again stressed that the claimed invention must track online status contemporaneously:

> [O]ur system also has to track whether you are continuing *to stay on line*. We either have to—there has to be some mechanism in the system to flag you as off line. . . . The issue in SIPNET and the issue that controls here is that the claim plainly requires that [the server] *track that online status* so that it can [make] the determination *at the time that the query is transmitted to the server*"

Ex. 1 (*Samsung* Oral Argument Transcript) at 17 (emphasis added).

In light of these representations, the Federal Circuit observed:  "You've boxed yourself into a pretty narrow infringement argument, though, haven't you, with this claim construction? In other words, a system that only does what—what NetBIOS or WINS did wouldn't infringe, right?"  *Id.* at 28-29.

### 3.  Straight Path Waits Until Summary Judgment Briefing to Disclose Its Real "Is Connected" Infringement Theory

Having survived the PTAB process, Straight Path did not stick with the "pretty narrow" position it had boxed itself into.  Instead, Straight Path played "hide the ball" until summary judgment.  Straight Path's Second Amended Complaint accused Apple's FaceTime of determining on-line status via a server that tracked on-line registrations using an accurate database.  But, Straight Path now had a problem; Apple's system did not work that way.  FaceTime did not

answer a "query" regarding on-line status at the precise moment the query was transmitted to the server.  Nor was its database always accurate. Uncontested evidence showed that Apple's database contained millions of inaccurate registrations on a daily basis and that it attempted to place calls to callees even when they were not, in fact, currently on-line.  MSJ Order at 21.  Thus, in order to maintain its case against Apple, Straight Path had to ignore both the "timing element" it told the PTAB and Federal Circuit was critical to validity and the "tracking" element that required an infringing system to keep track of each callee's on-line status. Having survived on validity, Straight Path simply ignored its own prior arguments, even though its own expert admitted that Apple's FaceTime servers (a) did not track current-online status; (b) did not know whether a callee was online before initiating the call; and (c) like the prior art, did not track current status but, rather, initiated connections based only on *past* online status:

> Q:  It's the case, is it not, that **the presence map is not current as to the callee's connection status?**
>
> A:  **There's no guarantee that it's current. That's correct.**
>
> Q:  So it would include *past statuses of connection activity?*
>
> A**:**  *Yes, I believe that's true.*

Ex. 8 (Cole Tr.) at 121:13-19.

Likewise, Mr. Cole conceded that Apple's system does not flag when a user is offline:

> Q:  **Do you agree that devices don't de-register from APNS if, for example, they crash?**
>
> A:  As I understand it . . . the devices may, after the device opens up a communications channel with an APNS server, it may become unreachable without sending any message to that server at all. So **yes, it can become disconnected without notice**.

*Id.* at 170:10-18.

Mr. Cole further admitted that Apple's system does not make the determination of online status *at the time the query is transmitted to the server*, which is an express part of the construction:

> Q:  Do you agree that the system sends the invite push to the *callee before it knows whether the callee is online?*
>
> A**:**  *I believe that's correct, yes.*

*Id.* at 174:20-23.

Finally, Mr. Cole conceded that in many circumstances, the server receives no "accept" response even if the user is, in fact, online—including when the caller is blocked or the user chooses to ignore it.  Ex. 8 (Cole Tr.) at 120:11-23.

These concessions by Straight Path's expert were, in part, the basis for Apple's summary judgment motion.  At that point, what Straight Path should have done is drop its claims against Apple.  Instead, Straight Path disclosed for the first time its "real" theory—comprised almost entirely of arguments of counsel untethered to any actual evidence or expert opinion—in which the server was not required to determine on-line status at the time of the query and, instead, need only "check" whether the callee is online by placing a call; if the callee answers, then she must have been online.  *See* Dkt. 137 at 1-2, 8.  This tautological theory was not disclosed in any Straight Path complaint or in its infringement contentions or expert reports, and it bore no resemblance to the "narrow" infringement path identified by the Federal Circuit during oral argument in *Samsung*.

**4.  Straight Path Was Unable to Explain to the Federal Circuit How Its New Theory was Covered by Its Patents.**

On appeal from this Court's summary judgment order, the Federal Circuit lent little credence to Straight Path's "check with the callee by calling her" theory.  Once again, Straight Path was forced to admit that Apple's server does not know the callee's online status *at the time of the query*:

> [COURT] I think this was maybe in the District Court's opinion [] who noted that your expert admitted in deposition that ***the accused server cannot determine whether or not the callee is actually connected to the computer network at the moment in time that the caller sends an invite message to the server***.
>
> MR. FENSTER:  ***It is true*** that the call—that the server does not know already at the time that it receives the query whether it's connected.

Ex. 9 (Tr. of Oral Argument in *Straight Path IP Grp., LLC. v. Apple Inc.*, Appeal Nos. 2018-1491, 2018-1492 (Fed. Cir. January 11, 2019)) ("*Apple* Oral Argument Transcript") at 506 (emphasis added).  The panel noted that Straight Path was ignoring the critical "timing element" that Straight

Path had advocated for, and won on, during its previous trips to the Federal Circuit:  "And this is all supposed to be happening at the same time.  ***Time was the underpinning*** for the claim construction."  *Id.* at 12 (emphasis added).  The panel further elaborated:

> THE COURT:  you know, among other things we said in [] *Sipnet*, the present tense ***is***—and is connected the computer network plainly says that the query transmitted to the server seeks to determine whether the second unit is connected at that time, i.e. connected at the time the query is se[n]t. . . . ***I mean, the question answers—is supposed to be answered at the time.***

*Id.* at 13 (emphasis added).

Worse, Straight Path demonstrated that it was, once again, merely drawing out the proceedings, as it had no explanation for how its "real" infringement theory was actually covered by its patents.  When asked to point the court to anything in the specification that described the query being answered by anything but a server using an accurate database, Straight Path answered:

> THE COURT: ***Can you point to me in your specification where this is disclosed***, all of this, and where the purpose of the invention is disclosed? ***Because I read your specification, and I see where, you know, you've got that database environment*** and embodiment that's disclosed, ***but I don't see a whole lot else*** about this claimed invention in the specification.
>
> MR. FENSTER: The—what the specification is primarily aimed at is helping to establish a point-to-point connection where you have dynamic IP addresses. Okay.  The "is connected" was not specifically drawn out as that—the benefit of that. ***I don't think that specifically disclosed here. That came out in the process of distinguishing the prior art and the IPRs and—in the subsequent appeals.***

*Id.* at 16-17.  When further pressed on the issue, Straight Path could only point to an *unasserted* email embodiment that no one was accused of infringing:

> THE COURT:  Do you have an embodiment disclosed in which the query is accomplished by doing something other than looking at a database?
>
> MR. FENSTER:  So there is the secondary protocol, Your Honor. And that secondary protocol is – it's described at Column 6, starting at Lines 17 and – if you look at Line 55, this is the mail server.

*Id.* at 17.  Straight Path could not point the Court of Appeals to anything in the specification that both:  (a) supported its new theory; and (b) that Apple's system was accused of doing.  And, of

---

course, Straight Path was unable point to any embodiment in which a server guesses at current connectivity status and then "confirms" it by placing the call to a user to see whether she will answer.  In short, Straight Path put Apple through extensive summary judgment briefing and then a Federal Circuit appeal over a theory that was never disclosed in its complaints, its infringement contentions, its expert reports, or even in its patents.

### B. Straight Path Could Not Defend Its '208 Patent at the PTAB

Straight Path's '208 patent was not the subject of Apple's summary judgment motion, because it did not contain the "is connected" limitation.  But, Straight Path's shifting sands approach to litigating it further illustrates why this is an exceptional case.  Straight Path and its expert, Mr. Cole, flip-flopped between four different theories of infringement, as Mr. Cole struggled to thread the needle between maintaining the validity of the '208 patent without fatally damaging Straight Path's infringement case, then utterly failed to defend the patent during an *ex parte* reexamination, essentially abandoning it after the examiner preliminarily rejected it on six independent grounds.

First, in both its original and amended infringement contentions, Straight Path asserted that Facetime meets the '208 patent's "responding . . . in accordance with the identity of the source" limitation, because a user could either accept or decline an incoming call based on the identity of the caller.  *See* Ex. 10 (Original Infringement Contentions, '208 chart) at 5-6; Ex. 11 (Amended Infringement Contentions, '208 chart) at 5-6. This interpretation plainly required user action to meet the claim limitations, but Straight Path had never disclosed any indirect infringement theories.  Therefore, in his opening report on infringement, Mr. Cole advanced a different theory, in which sending packets back to the caller met the limitation regardless of the user's decision to accept or reject the call.  Ex. 12 (Cole Opening Infringement Rep. dated Aug. 31, 2017) at ¶371.

Realizing that this created an invalidity problem, eleven days later Mr. Cole "corrected" that opinion in a supplemental infringement report served without leave of this Court, in which he advanced a third theory, in which this limitation was met by sending a notification to a ***blocked***

---

1    caller that the call was blocked.  Ex. 13 (Cole Corrected Opening Infringement Rep. dated Sept.

2    11, 2017) at ¶373.  Then, three days later, Mr. Cole created out of thin air a new claim

3    construction—never presented to the Court or proposed by any party—under which the claim

4    preamble was limiting and imposed an order in which the "responding . . . in accordance with the

5    identity of the source" limitation had to be performed *before* the callee was "selectively alerted" to

6    an incoming call.  Ex. 14 (Cole Rebuttal Invalidity Rep. dated Sept. 14, 2017) at ¶¶164, 235, 250,

7    306.  Mr. Cole used this novel "construction" to distinguish at least five different prior art

8    references/combinations.  *Id.*  But, much like with its arguments on the "is connected" term in the

9    other patents, Straight Path's attempt to preserve validity was backfiring on infringement, because

10   Apple did not perform this ordering of steps and did not send any notice to a ***blocked*** caller.

11   Therefore, in a bald attempt to have his cake and eat it too, Mr. Cole left his invalidity report

12   unchanged, but in his reply report on infringement he inserted a footnote that both retracted his

13   new "ordered requirement" invalidity theory and reversed his opinion that ***blocked*** calls infringed,

14   now arguing that it was ***non-blocked*** calls that infringed:

15            In my Validity Report, I believe that I **misspoke** in suggesting that a
              responsive packet must be sent temporally before the alert. My point
16            was that the responsive packet must be sent based on the identity of
              the source, and that in the FaceTime system, ***this requires that the***
17            ***caller*** **not** ***be blocked***. For example, the responsive packet in the
              accept request in FaceTime is sent only when a caller is not blocked,
18            and thus based on the identity of the source of the incoming packet.
              Because none of the prior art disclosed "selectively alerting," this
19            mistake in the Validity Report does not change any of my opinions
              in the Validity Report.

20   Ex. 15 (Cole Reply Infringement Rep. dated Sept. 21, 2017) at 25 n.2.  When deposed on this

21   reversal, Mr. Cole admitted that it came at the behest of ***Straight Path's counsel*** and that he could

22   not remember who had written the original opinion on that issue.  Ex. 8 (Cole Tr.) at 81.

23            Apple then filed an *ex parte reexamination* proceeding with the USPTO, laying out six

24   independent grounds of invalidity.  Instead of mounting a defense on the merits, Straight Path

25   initially focused on a declaration signed by a prior art inventor, claiming it had no way of

26   verifying that it was authentic and represented the actual opinions of that inventor.  But, Straight

27

28

Path neglected to mention that the inventor had been deposed, at a deposition that Straight Path attended, and testified consistently with every fact set forth in the declaration. Ex. 16 (Patent Owner's Statement to Institution); Ex. 17 (Reply to Patent Owner's Statement) at 2-6. After Apple pointed that out to the examiner, Straight Path essentially defaulted, confirming its decision not to proceed after the Examiner contacted Straight Path by telephone after its deadline to respond lapsed. Thereafter, the USPTO entered an *Ex Parte* Reexamination Certificate canceling claims 1 and 2 of the '208 patent, after which the parties filed a stipulation of voluntary dismissal with prejudice of the '208 patent claims, which the Court granted. Dkts. 199, 200.

## C. Straight Path Asserted Baseless Claims for Willful Infringement and Pre-suit Damages

When Straight Path filed its original 2016 complaint and its amended and second amended complaints, it relied on its earlier 2014 filing as notice of infringement for purposes of enhanced damages, in clear breach of the 2014 Standstill Agreement. Only at the hearing on Apple's motion for judgment on the pleadings did Straight Path change course. Without seeking to amend its pleadings or infringement contentions, for the first time, Straight Path claimed that letters allegedly sent to Apple in 2007 and 2012, respectively, provided the requisite notice of infringement. Ex. 2 (2007 letters) and Ex. 3 (2012 letter). The 2007 form letters from Straight Path's predecessor, IDT, stated on their face that they were sent to over 200 companies, including two letters allegedly sent to Apple's CEO, Steve Jobs, and another high-ranking Apple executive. Ex. 2 (2007 Letters) at 1, 3. Neither letter insinuated that Apple infringed any patent, and instead proposed the formation of an industry consortium relating to establishing protocols for internet-based communications, with IDT referring to its patent portfolio only as a data point demonstrating IDT's fitness to lead the proposed consortium. *Id.* at 2, 4. The letters do not and could not allege infringement by FaceTime, as they pre-date FaceTime by three years.

The 2012 letter also did not accuse Apple of infringement and did not mention FaceTime. Ex. 3 (2012 Letter). It was sent to Apple and many others by a patent brokerage service known as Global IP Group that Straight Path engaged to market the patents for a potential sale. Indeed,

1   Straight Path's CEO, David Jonas, when confronted with dozens of identical letters sent to various

2   companies (including other non-practicing entities that had no products to infringe) conceded the

3   letter was never intended to allege infringement.  Ex. 4 (Jonas Tr.) at 221:17-244:15, 246:19-

4   247:6-11.  Instead, as Straight Path's Rule 30(b)(6) deponent, Mr. Jonas unequivocally stated that

5   it was Straight Path's contention that the earliest date on which Apple was given notice of

6   infringement was September 24, 2014, with the filing of Straight Path's initial complaint.  *Id.* at

7   275:70-276:7.  Yet, Straight Path's counsel and its damages expert continued to assert that these

8   letters provided pre-suit notice for purposes of claiming millions of dollars in pre-2014 damages.

9   Ex. 5 (Dell Rep.) at ¶¶ 114-115; Attachment 9, note 6.

10          Similarly, Straight Path pressed for pre-suit damages based on marking, yet its own Rule

11  30(b)(6) witnesses contradicted its attorneys' assertions on that issue. Straight Path claimed

12  repeatedly that its predecessor, IDT, marked its products and that its licensees did so as well.  *See*

13  *e.g.* Ex. 18 (Straight Path's November 14, 2016 Response to Apple's Interrogatory No. 9).

14  However, Mr. Jonas, Straight Path's Rule 30(b)(6) deponent on marking, was unable to provide

15  evidence of consistent marking by IDT and none at all by Straight Path's own licensees.

16  Therefore, Straight Path put up a second Rule 30(b)(6) deponent, Vandana Koelsch, a lawyer with

17  a complicated relationship with IDT and/or its related entities.  On the morning of the deposition,

18  Straight Path produced for the first time an internal document that contradicted its previous

19  assertions on both marking and the 2012 letter to Apple, stating with respect to marking:  "While

20  previous owner (IDT) did mark their product with the accused [sic] patents, subsequent licensees

21  have not marked;" and with respect to the 2012 letter:  "A letter was sent to Apple requesting to

22  discuss the patent portfolio generally.  It is unclear how substantive those communications were

23  and whether they will satisfy the requirements of Actual Notice."  Ex. 19 (Koelsch Dep. Exh.

24  403).

25

26

27

**D. Straight Path Demanded Royalties that were Grossly Unreasonable**

Straight Path is a non-practicing entity, whose business consists of licensing the Asserted Patents. It has licensed them to several Apple smartphone and operating system competitors and to a prominent FaceTime competitor. Not a single company has ever paid Straight Path more than $6.5 million to license its entire portfolio of which the Asserted Patents are only a part. In addition, during the pendency of this action, Straight Path sold its entire patent portfolio and its pending lawsuits to a related entity for $6 million. Ex. 20, (Straight Path Communications, Inc. Form 8-K (Oct. 24, 2017)) at 2.

Nonetheless, Straight Path maintained that a reasonable royalty from Apple was $95 million—fourteen times the amount anyone else has ever been willing to pay and several times greater than the combined value of all 16 licenses. To arrive at that inflated figure, Straight Path's damages expert, Mr. Dell, made a number of deeply flawed and legally impermissible assumptions, including: (1) claiming pre-suit damages back to the introduction of FaceTime in 2010 despite no evidence of consistent marking and an admission by its CEO that Apple's first notice of alleged infringement came in 2014 (see above); and (2) apportioning damages based on the purported value of FaceTime generally, as opposed to the accused FaceTime features, contrary to binding Federal Circuit precedent and this Court's rulings in other cases. Ex. 5 (Dell Rep.).

Straight Path's damages positions were even more unreasonable given the testimony of its own witnesses. Straight Path's damages expert maintained that he could not use Straight Path's licenses with Apple competitors as the basis for his damages calculation because they were negotiated on a lump-sum basis and did not contain an express royalty rate. Ex. 21 (Dell Tr.) at 227:12 - 228:23, 231:15 - 234:3. Yet, its CEO testified that lump sum payments were, in fact, its licensing model and that none of its licensees had actually paid a metrics-based ongoing royalty. Ex. 4 (Jonas Tr.) at 360:24-361:11.

## IV.   LEGAL STANDARD

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "An 'exceptional' case is

1   simply one that stands out from others with respect to the substantive strength of a party's

2   litigating position (considering both the governing law and the facts of the case) or the

3   unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health &*

4   *Fitness, Inc.*, 572 U.S. 545, 554 (2014).  "District courts may determine whether a case is

5   'exceptional' in the case-by-case exercise of their discretion, considering the totality of the

6   circumstances."  *Id.*  "Because § 285 commits the determination whether a case is 'exceptional' to

7   the discretion of the district court, that decision is to be reviewed on appeal for abuse of

8   discretion."  *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014).  Indeed,

9   a district court has discretion to award fees for an entire case, including for any subsequent

10  appeals.  *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1380 (Fed. Cir.

11  2017) (affirming award of appellate attorneys' fees).  A movant must establish its entitlement to

12  attorneys' fees under § 285 by a preponderance of the evidence.  *Phigenix, Inc. v. Genentech, Inc.*,

13  No. 15-CV-01238-BLF, 2018 WL 3845998, at *3 (N.D. Cal. Aug. 13, 2018).

14       28 U.S.C.A. § 1927 provides: "Any attorney or other person . . .who so multiplies the

15  proceedings in any case unreasonably and vexatiously may be required by the court to satisfy

16  personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such

17  conduct."  An award under this section requires a finding of "subjective bad faith," where counsel

18  "knowingly or recklessly raise a frivolous argument, or argues a meritorious claim for the purpose

19  of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).

20       Finally, the district court has an "inherent authority to impose sanctions for bad faith,

21  which includes a broad range of willful improper conduct."  *Fink v. Gomez*, 239 F.3d 989, 992

22  (9th Cir. 2001).  These include litigating a case "vexatiously, wantonly, or for oppressive reasons,

23  delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Id.*

24

25

26

27

28

DEFENDANT APPLE INC.'S MOTION FOR ATTORNEYS' FEES
CASE NO. 3:16-CV-03582-WHA                    17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.   ARGUMENT

### A.  Apple is the Prevailing Party

Apple is the prevailing party under both 35 U.S.C. § 285 and Rule 54.  *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006) ("the prevailing party issue under Rule 54 and 35 U.S.C. § 285 [is treated] similarly").  A party is a "prevailing party" where a court grants relief on the merits such that there is a "judicially sanctioned change in the legal relationship of the parties."  *Id.* at 1033 (*citing Buckhannon v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 121 (2001)).

Here, Apple is the prevailing party both as to the "is connected" patents and the '208 patent.  With respect to the "is connected" patents, this Court granted summary judgment of non-infringement, which the Federal Circuit affirmed on appeal.  Likewise, with respect to the '208 patent, the USPTO cancelled the claims asserted against Apple on *ex parte* reexamination, after which this Court entered a stipulated dismissal with prejudice.  *Highway Equip. Co.*, 469 F.3d at 1035 (holding that "as a matter of patent law, the dismissal with prejudice, based on the covenant and granted pursuant to the district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur. . . [to allow] a fee claim under 35 U.S.C. § 285."); *see also Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004) (holding that a voluntary dismissal with prejudice confers "prevailing party" status on the defendant).

### B.  This Case is Exceptional under the Patent Act and Was Litigated in Bad Faith

Straight Path's unreasonable litigation positions and bad-faith tactics make this case "exceptional" under 35 U.S.C. §§ 285 and 1927.

#### 1.  Straight Path's Infringement Theory was Objectively Unreasonable and Litigated in a Manner that Needlessly Drove Up Costs for Apple

Straight Path's final infringement theory with respect to the "is connected" patents was unreasonable.  It conflicted with numerous representations Straight Path made to the Federal Circuit and the PTAB, was inconsistent with the entire purpose of the patents, ignored the billions of inaccurate registration entries in Apple's system that rendered a "binary" determination of on-

line status impossible, and replaced a "query" answered by a server at a precise point in time with a mere invitation to a user who might or might not "confirm" her status by implication if, and only if, she chose to answer the call.

First, Straight Path's conduct—telling the Federal Circuit one story to preserve the validity of its patents and then telling this Court an opposite story for infringement—easily meets this Court's standard for similar sanctions. For example, in *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 4616847, at *3 (N.D. Cal. Sept. 15, 2014), this Court granted a motion for attorneys' fees where plaintiff continued to assert its patents after two other courts had issued rulings that, while not *res judicata* as to the issues in the succeeding case, made the assertion against the same technology implausible. The Court held that "[e]ven though neither forum's determination was binding on this Court's determination as *res judicata*, Linex was not free to pursue another case targeting the same technology with impunity." *Id.* Similarly, in *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *6 (N.D. Cal. Aug. 12, 2014), the plaintiff took one position before this Court with respect to the meaning of a claim limitation and then a clearly irreconcilable position before the PTO's Board of Patent Appeals and Interferences (the "BPAI"). Plaintiff later sought to re-characterize its BPAI position as an error and filed a submission with the USPTO to "correct an error made without deceptive intent." *Id.* at *7. This Court held that plaintiff's "attempt to argue one thing to this Court, then argue a different thing to the BPAI, and then attempt to change its position before the BPAI only after it resulted in an unfavorable ruling from this Court amounts to 'gamesmanship'" that made the case exceptional. *Id.* at *10.

Here, Straight Path's new infringement theory eviscerated the "temporal element" that Straight Path told the Federal Circuit was critical to validity and that resulted in the exceedingly narrow construction of "is connected" that Straight Path advocated for and won—a timing requirement which required the server to make a "binary decision" on "is connected" status at the time the query was transmitted. *See* Section III.A.1-2, *supra*. It also eviscerated the entire

---

purpose of the patents as articulated by Straight Path's own expert. In *Tech. Properties Ltd. LLC v. Canon Inc.*, No. C 14-3640 CW, 2017 WL 2537286, at *3 (N.D. Cal. Jan. 26, 2017), *aff'd*, 718 F. App'x 987 (Fed. Cir. 2018), this Court found a case exceptional where the plaintiff "proposed an impermissibly broad reading of their claims that effectively would have covered prior art." Here, according to Mr. Cole, the asserted patents were inventive and valuable because the determination of on-line status *preceded* calling the user:

> The caller could *attempt* to make a point-to-point connection using network protocol addresses from previous connections, or make an attempt using the most recent or most commonly successful network protocol address. In each of these cases, though, the caller must pay for the call setup and the call teardown – even when the call fails because the intended recipient was not even connected to the network. *By implementing the "query" elements of the Asserted Claims, though, the caller can avoid cost and uncertainty whenever the callee device is not online.*

Ex. 14 (Cole Rebuttal Invalidity Rep. dated Sept. 14, 2017) at ¶54.

Second, fees are warranted here, because Straight Path continued to push its theory of infringement after Apple produced evidence that conclusively showed its system did not infringe. "[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013).  This Court routinely awards fees under section 285 when a party continues to assert infringement theories after they become unreasonable or baseless.  For example, in *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360-62 (Fed. Cir. 2017), the Federal Circuit held that the district court abused its discretion in denying defendant's motion for fees, when the plaintiff continued to press infringement contentions after an adverse Markman order and expert discovery showed that its infringement contentions were baseless.  *See also IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 5:13-CV-01708 HRL, 2014 WL 5795545, at *5-6 (N.D. Cal. Nov. 6, 2014) (finding case exceptional where the plaintiff's litigation position became "absurd and farfetched" at the summary judgment stage); *Yufa v. TSI Inc.*, No. 09-CV-01315-KAW, 2014 WL 4071902, at *5 (N.D. Cal. Aug. 14, 2014) (awarding attorney's fees

incurred after plaintiff was provided with discovery, which "even a pro se litigant" should have known rendered his lawsuit "objectively baseless."). Here, the undisputed evidence showed that Apple's FaceTime feature was implemented using a registration system with a database of past connectivity information and that it would attempt to contact the callee without knowing whether the callee device was currently online. Therefore, it could not meet the invention's purported goal of "obviating the need to attempt potentially-unsuccessful contact with the second process." MSJ Order at 14. Yet rather than drop its infringement claim against Apple when confronted with how Apple' system actually worked, Straight Path replaced a server that answered a *query* as to whether a device "is connected" at the precise time the query is transmitted with one that merely guessed at on-line status, which *might* be "confirmed" several steps later if, and only if, the caller was present, on-line, and chose to answer. That interpretation simply was not reasonable.

### 2. Straight Path's Litigation Conduct Warrants Sanctions

This case is exceptional not only because of Straight Path's unreasonable infringement positions, but also due to the unreasonable manner in which it was litigated. Specifically, Straight Path obfuscated its true infringement theories in violation of the Patent Local Rules by waiting until summary judgment briefing to reveal its "real" infringement theory for the "is connected" patents and until its expert's infringement reply report to disclose its final infringement theory for the '208 patent. Straight Path also essentially defaulted on its defense of the '208 patent during *ex parte* reexamination, but only after first forcing Apple to address frivolous evidentiary objections.

Patent Local Rule 3.1 requires a detailed explanation of a plaintiff's infringement theories. As this Court has explained:

> Our patent local rules were adopted in order to give claim charts more bite. The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed. The increased scrutiny applied to requests to amend infringement contentions as compared to requests to amend other pleadings is to prevent a "shifting sands" approach to patent litigation.

*Richtek Tech. Corp. v. uPI Semiconductor Corp.*, No. C 09-05659 WHA, 2016 WL 4269095, at *1 (N.D. Cal. Aug. 15, 2016) (citations and quotations omitted).  This Court has repeatedly awarded fees where the plaintiff changes infringement theories without promptly disclosing them to defendants.  For example, in *Phigenix, Inc. v. Genentech, Inc.*, 2018 WL 3845998 at *6-7, the plaintiff continued to "forge ahead with prolonged litigation when it had no tenable theory of infringement" by narrowing its infringement theory after the Court ruled that it was not entitled to its claimed priority date.  Yet, though it "transformed the nature of its infringement theory," the plaintiff did not amend its infringement contentions or notify the defendant of that change.  *Id.* Instead, plaintiff's expert witness revealed the new infringement theory for the first time during a deposition.  *Id.*  Referring to the new theory as a "stunning change of course," this Court found that plaintiff had "no good reason why it failed to disclose the new theory earlier" and held such gamesmanship was evidence that it "unreasonably manipulated its theories to postpone defeat." *Id.*

Similarly, in *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *13-14 (N.D. Cal. Aug. 12, 2014), this Court found a case exceptional where plaintiff "shift[ed] its theories of infringement late in the litigation and without following the proper procedures for amendment of contentions."  In that case, plaintiff unveiled a new theory of infringement during the expert discovery stage, yet could not provide any legitimate reason for changing course so late in the litigation.  *Id.*  The Court found that "it simply appears that [plaintiff], its infringement expert, or both did not like the theory of infringement that was contained in [plaintiff's] infringement contentions and decided to try a different theory at the expert discovery stage, hoping it would be better." *Id.*

Here, Straight Path dramatically changed its infringement theory very late in the case, arguing that the user confirmed her own on-line status by answering her phone.  Patent Local Rule 3.1(c) requires "identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality," and for infringement theories involving joint acts of their parties, Patent L.R. 3.1(d) requires specific disclosure of the "role of each such

1   party in the direct infringement." Straight Path never disclosed anything like its final infringement

2   theory in its three complaints, its two sets of infringement contentions, or in any of its expert

3   reports.  It was only in Straight Path's opposition to summary judgment that it first articulated this

4   theory, and fully explained it only—and ironically—in responding to this Court's order requiring

5   Straight Path to show why it should not be sanctioned.  *See* Dkt. 163.

6          Similarly, with respect to the '208 Patent, Straight Path's belated disclosure of its

7   infringement theories and its litigation tactics increased Apple's costs unreasonably.  Its

8   "unblocked call" theory was not disclosed in its complaints or infringement contentions and,

9   indeed, it did not even exist until Mr. Cole's reply report on infringement.[4]

10          Further, as described in Section III.B above, Straight Path forced Apple to incur expenses

11   which were entirely avoidable when it stopped defending the validity of the '208 patent before the

12   USPTO without informing Apple or the Examiner until its response to the Examiner's rejection

13   was due, and after forcing Apple to address frivolous evidentiary objections. Straight Path also

14   kept Apple working on a patent (U.S. Patent No. 6,131,121) Straight Path had decided to drop

15   entirely.  Straight Path never informed Apple that it did not intend to continue asserting that

16   patent, but when Straight Path served is expert reports, the '121 patent had vanished from both Mr.

17   Cole's infringement report and Mr. Dell's damages report.  *See* Ex. 24 (Vidmar Ltr. dated Sept. 8,

18   2017) at 2.  Because Straight Path never informed Apple of its intent to drop the patent, Apple had

19   continued to incur fees and costs analyzing prior art and the technical record to prepare reports on

20   invalidity and non-infringement.  Courts often find cases to be "exceptional" where the manner in

21   which a party litigated the case evidences intent to drive up costs for the other party, which is

22

---

23   [4]  Apple's inability to get a straight answer regarding Straight Path's "real" infringement theories
     was not for lack of effort.  Over the course of this litigation, Apple filed two motions to dismiss,
24   Dkts. 26 and 44, and one motion for judgment on the pleadings, Dkt. 89, each on the basis that
     Straight Path's theories had not been adequately disclosed.  While the Court denied the motions or
25   granted them only in part, the Court was obviously not aware that the theories Straight Path
     disclosed were not the one it intended to ride at trial.  Apple also repeatedly asked Straight Path to
26   comply with the Local Rules by fully disclosing its infringement theories and those "reserved" by
     its expert.  Straight Path repeatedly ignored these requests. *See* Ex. 25 (James Ltr. dated Oct. 18,
27   2016) and Exs. 26, 24 (James Ltr. dated Aug. 29, 2017; Vidmar Ltr. dated Sept. 8, 2017).

1  plainly what Straight Path did here.  *See Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1302, 1308

2  (Fed. Cir. 2018) (affirming an award of fees where plaintiff took positions to multiply proceedings

3  and avoid early dismissal, causing defendant to incur significant fees and costs to oppose those

4  positions); *see also ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, 706 F. App'x 666, 669

5  (Fed. Cir. 2017) (affirming award of fees where plaintiff litigated the case in a manner to increases

6  costs to defendant).

7        **3.  Straight Path's Theory for Willful Infringement and Pre-suit Damages was
   Objectively Unreasonable**

8        This case is also exceptional because Straight Path pursued a pre-suit damages claim

9  without a good faith basis and maintained its claim even after its basis for doing so had been

10  disavowed by its own witnesses and documents.

11        Courts routinely award fees where a party continues to maintain a litigation position after

12  evidence produced during discovery renders that position objectively unreasonable.  For example,

13  in *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306-07 (Fed. Cir. 2017),

14  the appellate court affirmed an award of attorney's fees where the plaintiff "marched onward with

15  a view of its case that was not supported by its witnesses," even though it rendered continued

16  litigation of the case "objectively unreasonable."  Similarly, this Court found a case exceptional"

17  where the plaintiff refused to withdraw its claim for almost a year after being provided notice that

18  it was unreasonable and after litigating the proper method of dismissal.  *Cave Consulting Grp.,*

19  *Inc. v. Truven Health Analytics Inc.*, 293 F. Supp. 3d 1038, 1048 (N.D. Cal. 2018).  *See also*

20  *MarcTec, LLC*, 664 F.3d at 920–21 (affirming fee award where plaintiff "not only initiated a

21  frivolous lawsuit, it persisted in advancing unfounded arguments that unnecessarily extended this

22  litigation and caused [defendant] to incur needless litigation expenses."); *Max Sound Corp. v.*

23  *Google, Inc.*, No. 14-CV-04412-EJD, 2017 WL 4536342, at *10 (N.D. Cal. Oct. 11, 2017)

24  (finding case exceptional where plaintiff "insisted on maintaining this lawsuit even when faced

25  with mounting evidence that it lacked standing" and drove up costs by opposing proposal to

26

27   

28

bifurcate discovery so that standing issue could be quickly resolved before expending resources on the merits).

Here, the only evidence Straight Path offered regarding actual notice was the 2007 and 2012 letters, which on their face, did not provide any notice of infringement.  Moreover, Straight Path's attorneys simply ignored their own client's sworn testimony that the letters did <u>not</u> provide pre-suit notice and were never intended to do so.  *See* Ex. 4 (Jonas Tr.) at 247:6-11, 275:70-276:7 (notice provided by 2014 complaint).  And, although it is it is unclear when Straight Path's counsel learned of the internal document that refuted their litigation positions regarding marking (Ex. 19), what <u>is</u> clear is that even after producing the document, they never withdrew their claim that Apple had pre-suit notice of infringement.  To the contrary, Straight Path continued to rely on the same letters for pre-suit notice of infringement in their expert's damages report, relying on the 2007 "notice" date to arrive at an astronomical royalty figure.  Counsel for Apple raised all of these issues in a letter to the Russ Kabat & August firm.  Ex. 26 (James Ltr. dated Aug. 29, 2017) at 1-3.  Straight Path's counsel did not address, let alone refute, any of Apple's concerns in their response.  Ex. 27(Ledahl Ltr. dated Sept. 19, 2017).  And, this was but one example of Straight Path's massive overreaching on damages.  As explained in Section III.D, Mr. Dell's damages opinion was so riddled with flawed analysis and legally faulty assumptions that Straight Path's reliance on his opinion was objectively unreasonable.  *See e.g. MarcTec, LLC,* 664 F.3d at 920 (affirming ruling that the testimony of plaintiff's expert was so unreliable that plaintiff's reliance on such opinion was "sufficiently egregious to support an award of attorney fees").

## VI.    CONCLUSION

Given the misconduct described above, Straight Path should be ordered to pay Apple's attorneys' fees and costs for this entire case.  Further, given that much of this misconduct seems to have been directed by Straight Path's law firm, the award should be against **both** Straight Path and its counsel, jointly and severally.

1    Dated:  April 18, 2019                    Respectfully submitted,

2                                               HOGAN LOVELLS US LLP

3                                               By:  */s/ Clayton C. James*

4                                               Clayton C. James (Cal. Bar No. 287800)
                                                 clay.james@hoganlovells.com
5                                               **Hogan Lovells US LLP**
                                                 3 Embarcadero Center, Suite 1500
6                                               San Francisco, California 94111
                                                 Tel:    (415) 374-2300
7                                               Fax:    (415) 374-2499

8                                               *Attorneys for Defendant Apple Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28