Clayton C. James (Cal. Bar No. 287800)
clay.james@hoganlovells.com
Helen Trac (Cal. Bar No. 285824)
helen.trac@hoganlovells.com
**HOGAN LOVELLS US LLP**
Three Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499

Attorneys for Defendant APPLE INC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| STRAIGHT PATH IP GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 3:16-cv-03582-WHA <br><br> **DECLARATION OF CLAYTON C. JAMES IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION FOR ATTORNEYS' FEES (ATTACHING EXHIBITS A AND B)** <br><br> Date: May 30, 2019 <br> Time: 8:00 a.m. <br> Courtroom: 12, 19th Floor <br> Judge: Hon. William H. Alsup |

I, Clayton C. James, declare and state as follows:

I am an attorney licensed to practice in California and admitted to practice before this court. I am a Partner in the law firm of Hogan Lovells US LLP, counsel of record and lead counsel for Defendant Apple Inc. I submit this declaration of my own personal knowledge. If called to testify to the matters herein, I could and would competently do so.

1. Pursuant to L.R. 54-5(b)(1), counsel for the parties met and conferred by telephone on April 11, 2019, and did not resolve their dispute.

2. Attached hereto as Exhibit A is a true and accurate chart prepared by individuals working under my direction upon a review of time-keeper records reflecting Hogan Lovells time-keeper entries billed to this case. The chart sets forth the total hours worked by each of the individuals set forth in Section I in connection with this matter. In addition, Exhibit A sets forth the amounts invoiced to Apple by Hogan Lovells in this matter and the amounts paid by Apple.

### I. BIOGRAPHIES AND ROLES OF THE HOGAN LOVELLS TEAM

3. The following section describes the attorneys who played a substantial ongoing role in this matter (*i.e.,* timekeepers who billed more than $100,000 in fees).

4. **Clay James:** Clay James is a partner in Hogan Lovells' intellectual property group. His practice focuses on complex intellectual property and business litigation, including patent, copyright, and trade secret litigation. Mr. James is recognized by Chambers USA's Intellectual Property section as a leading practitioner in intellectual property litigation. He is the lead counsel to Apple in this litigation, and has argued all of the motions in this case prior to the motions for summary judgment.

5. **Srecko "Lucky" Vidmar:** Mr. Vidmar was a partner in Hogan Lovell's intellectual property group until January 2019, when he left to take an in-house position. Mr. Vidmar's practice at Hogan Lovells focused on patent and trademark litigation, specializing in disputes involving computer software and hardware. He has undergraduate and graduate degrees in Computer Science. Mr. Vidmar managed much of the day-to-day discovery and motions practice on this matter from 2017 forward, after the departure of Matthew Rozier. Over the course

of the case, Mr. Vidmar helped supervise discovery, defended depositions, formulated claim construction, infringement and invalidity positions, worked with expert witnesses on reports and deposition testimony, and drafted briefs.

6. **Celine Crowson:** Celine Crowson has an undergraduate degree in Electrical Engineering and leads Hogan Lovells intellectual property practice in the United States. In 2018, Ms. Crowson was named a "Patent Star" by Managing Intellectual Property. Ms. Crowson deposed Straight Path's non-infringement and invalidity expert, Mr. Cole, and also argued Apple's successful motion for partial summary judgment of non-infringement in this case.

7. **Joseph Raffetto:** Joseph Raffetto is a partner in Hogan Lovells' intellectual property practice. He has an undergraduate degree in computer engineering. He specializes in patent litigation. He worked on the Straight Path matter intermittently since 2014, performing a variety of technical and invalidity analysis. He had primary responsibility for the *ex parte* reexamination that resulted in the United States Patent and Trademark Office's cancellation of the asserted claims of Straight Path's '208 patent.

8. **Matt Rozier:** Matt Rozier is a former Counsel at Hogan Lovells who worked on the Straight Path matter from 2014 until he left Hogan Lovells in 2017 for a position with another law firm. His practice at Hogan Lovells emphasized complex patent litigation. Mr. Rozier conducted non-infringement and invalidity analysis, supervised Apple's prior art investigation and helped draft Apple's invalidity contentions, conducted discovery, drafted motions, and supervised the technical analysis, briefing and discovery efforts of more junior attorneys on the case.

9. **Aaron Oakley:** Aaron Oakley is a Counsel in Hogan Lovells' intellectual property group. He has undergraduate degrees in Electrical Engineering and Computer Science. His practice focuses on intellectual property and technology litigation, especially patent and trade secret disputes. Mr. Oakley worked on this case intermittently since the fall of 2016 and had substantial involvement from July 2017 onward. His contributions included legal research, drafting motions, technical analysis, working with expert witnesses on reports, and assisting in taking and defending depositions of expert witnesses.

10.    **Helen Trac:**  Helen Trac is an Associate in Hogan Lovells intellectual property group.  She has an undergraduate degree in Electrical Engineering.  Her practice focuses on intellectual property litigation.  She has represented a number of high-technology clients in wide-ranging areas of technology, including e-book readers, tablets, smartphones, video compression standards and wireless communication standards.  Ms. Trac has worked on this case since the fall of 2016.  Her contributions included legal research; drafting motions and invalidity contentions; discovery; technical analysis and claim construction, assisting in taking and defending the depositions of fact and expert witnesses; and working with expert witnesses on reports.

11.    **Katherine "Katie" Nelson:**  Katie Nelson is an Associate in Hogan Lovell's intellectual property group.  Her practice focuses on intellectual property and commercial litigation.  She has represented a number of clients in patent, trademark, copyright, and privacy matters.  Ms. Nelson has worked on this case since the fall of 2016.  Her contributions included legal research; drafting motions; drafting written discovery; and assisting in taking and defending the depositions of fact witnesses.

12.    **Jane Li Carter:**  Jane Carter was an Associate in Hogan Lovell's litigation group until March of 2019, at which time she took a position with an in-house legal department.  Her practice focused on commercial and intellectual property litigation.  Ms. Carter worked on the Straight Path case from the fall of 2016 through trial preparation and summary judgment.  Her contributions included legal research; working on offensive and defensive discovery; and preparing procedural, discovery, dispositive, and damages motions and briefing.[1]  Ms. Carter also worked on trial preparation efforts, including drafting motions in limine.

13.    **Corey Leggett:**  Corey Leggett is an Associate in Hogan Lovells' intellectual property group. He has an undergraduate degree in Chemical Engineering. He has litigated patent cases in an array of industry sectors, including high-tech, automotive, commodities, industrials,

---

[1]    Ms. Carter performed much of the drafting on *Daubert* letter briefs and a draft *Daubert* motion with respect to Straight Path's damages expert. Because the Court took *Daubert* and dispositive motions in stages, allowing filing of only one motion at the outset and the Court ordered summary judgment on non-infringement, Apple's *Daubert* motion on damages was completed but not filed.

and healthcare. In the high-tech space, he has worked on cases in which the patents-at-issue have been directed to various software and hardware features of computers, tablets, smartphones, and other smart devices. Mr. Leggett has worked on this case since the summer of 2017 and has contributed by conducting legal research, technical analysis, drafting motions, and working with expert witnesses on reports.

14.   **Alali Dagogo-Jack:**  Alali Dagogo-Jack is a Senior Associate in the Intellectual Property, Media and Technology group at Hogan Lovells US LLP.  She has an undergraduate degree in Engineering Science.  She focuses her practice on intellectual property litigation.  She has represented a range of clients in the technology sector in matters covering a range of technologies, including satellite broadcasting, digital communication, motion detection, thin film solar cell manufacturing, and video compression.  Ms. Dagogo-Jack has been providing advice in this matter since fall 2016.  Her contributions include legal research and analysis, propounding and responding to discovery requests, drafting invalidity contentions, formulating claim construction positions, drafting motions, and preparing for depositions of fact witnesses.

## II.   HOGAN LOVELLS' RATES ARE REASONABLE

### A. The Billing Rates Charged in this Matter are Consistent with Prevailing Industry Rates

15.   The Straight Path case began in 2014. Summary judgment issued in November of 2017 and the asserted '208 patent was canceled in July 2018.  Hogan Lovells' standard rates changed at times during that period, as did the rates charged to Apple.  Attached hereto as Exhibit B is a true and accurate chart prepared by individuals working under my direction upon a review of our billable rates for all time-keepers billed to this case.  The chart sets forth the standard rates charged by those attorneys over the course of the case, as well as their rates charged to Apple.

16.   Every other year, the American Intellectual Property Law Association (the "AIPLA") produces an Economic Survey that reports on, among other things, individual billing

rates for intellectual property services. I have reviewed the 2015[2] and 2017 editions of the AIPLA Economic Survey Report and compared the rates to the rates charged by the Hogan Lovells attorneys who worked on the Straight Path case.

17. The 2015 AIPLA Economic Survey indicates that the median billing rate for partners and associates at private firms in the San Francisco Consolidated Metropolitan Statistical Area was $530 and $425, respectively, in 2014.  For private law firms with 150 or more associates, the median rate for partners and associates during the same time period was $795 and $425, respectively.

18. The 2017 AIPLA Economic Survey indicates that the median billing rate for partners and associates at private firms in the San Francisco Consolidated Metropolitan Statistical Area was $525 and $488, respectively, in 2016.  For private law firms with 150 or more associates, the median rate for partners and associates and during the same time period was $825 and $583, respectively.

19. The rates charged to Apple reflect the experience and technical credentials of the attorneys involved and the necessity of such specialized legal and technical experience in light of the complex technology accused in the case.  There are a relatively small number of firms with the size, experience, and expertise to effectively and successfully litigate this case.  Hogan Lovells' representation was, in fact, successful, in that Apple was granted a summary judgment of non-infringement on four of the five asserted patents (which was upheld on appeal) and a dismissal with prejudice on the fifth patent after the asserted claims were canceled in an *ex parte* reexamination proceeding.  These successful proceedings saved substantial attorney's fees, expert witness fees and costs, and other party and Court resources that would otherwise have been incurred at trial.  I note that Hogan Lovells has a highly regarded intellectual properly litigation practice and has been recognized as one of the leading practices in the country and worldwide.  For example, in 2018, Hogan Lovells was the only law firm ranked Band 1 for intellectual

---

[2]  Straight Path filed its first complaint against Apple on September 24, 2014.

property in Chambers Global, Europe-wide, and Asia-Pacific guides, and was named "Global IP Firm of the Year" by the Managing Intellectual Property Awards.

### B. The Billing Rates Charged in this Matter Reflect Substantial Discounts.

20. As demonstrated above, Hogan Lovells standard billing rates are in-line with peer firms that handle cases of similar complexity. As with other matters on which it retains Hogan Lovells, Apple received significant discounts on those standard rates in this matter. Hogan Lovells and Apple generally renegotiated billable rates every 18 months to two years. For the lawyers who worked on the Straight Path matter, Apple's discount generally reflected a 15% discount off of the timekeepers' standard rates as they existed at the beginning of each period that resulted in a new rate setting. Over time, this would reflect a greater than 15% discount from standard rates, because Hogan Lovells' standard rates increased on an annual basis throughout the Straight Path case, yet our agreed-upon Apple rates increased only every 18 months to two years. Further, the rates charged to Apple during the period typically did not increase when an Associate timekeeper advanced in level within the firm, even though that Associate's standard rates increased based on the change in level. The actual billing rates charged to Apple are reflected in Exhibit B.

### C. Hogan Lovells and Apple Has Stringent Billing Policies and Controls

21. Hogan Lovells also conducts thorough reviews of each invoice before sending it to Apple to confirm that each entry reflects time appropriately charged to Apple.

22. In instances where an entry reflects time that should not be charged to the client—whether due to a special client arrangement, inefficiencies, or otherwise—the entry is removed from the invoice and is not billed to the client. Some instances where entries are removed from an invoice or otherwise not billed to the client include: (i) time spent by a new team member getting up-to-speed on case basics; (ii) training on various tools and processes; (iii) internal case administration, such as updating case calendars; and (iv) preparing case budgets and reviewing draft invoices. In the end, each invoice is reviewed by myself and accounting support staff.

23. Hogan Lovells and Apple have agreed to additional rigorous billing requirements, including: (i) no block billing—only one task per time entry; (ii) billing in 0.10 time increments;

(iv) a specificity requirement for each time entry; and (v) pre-approval by Apple of each person who bills time to a matter.

24. Over the course of the case, these billing policies and controls resulted in substantial amounts of time written reduced by me as the Matter Supervising Partner or by Apple upon review of each invoice. Over the course of this litigation, over $110,000 in timekeeper entries were written off by Hogan Lovells prior to invoice submission. Apple also wrote off certain charges during its billing review, as reflected in Exhibit A.

### III. TOTAL FEES PAID AND REQUESTED BY APPLE

25. For purposes of its Motion for Attorney's fees, Apple requests actual fees paid and actual costs incurred by Apple. As set forth in Exhibit A, Apple paid $3,925,045.01 in fees defending this case, after the discounts and reductions detailed above. In addition, Apple incurred $646,838.86 in costs for expert witnesses and trial consulting charges. *See* section IV below.

26. While the amount requested is substantial, it is not out of line with patent cases of similar complexity. For example, according to the 2015 AIPLA survey, the median cost of defending a patent case in San Francisco against a non-practicing entity asserting a claim of over $25 million through the end of discovery is $4.75 million. The median cost of defending such a case through trail and post-trial (referred to as "Inclusive") was $6.75 million.

27. Further, this matter was more complex and expensive than many patent matters, due in whole or substantial part to Straight Path's own actions, including:

    a. Straight Path filed this case in 2014, then for two years defended various *Inter Partes Review* proceedings and ensuing appeals. Apple's initial non-infringement and invalidity analysis hinged in substantial part on the arguments Straight Path made during those proceedings. Straight Path's later reversals on key infringement issues contributed to both the length of the case and disproportionate fees and costs.

    b. As described in Apple's Motion and as reflected in this Court's order granting summary judgment of non-infringement (Dkt. 155), in order to

1      preserve the validity of four of the asserted patents, Straight Path argued for
2      a very narrow construction of the common "is connected" claim term.
3      During summary judgment briefing, however, Straight Path advanced a
4      previously undisclosed infringement theory in which a callee would confirm
5      its own on-line status by answering the phone.  In its summary judgment
6      Order, the Court described this new theory as (a) negating Straight Path's
7      prior arguments to the Federal Circuit, (b) transforming a narrowly-
8      preserved infringement theory into one of "breathtaking scope"; and (c)
9      premised on a theory that was "patently obvious."  (Dkt. 155 at 13 - 14.)
10     This theory was not disclosed at any point prior to summary judgment
11     briefing, in violation of the Patent Local Rules.  Straight Path's actual
12     infringement theory was disclosed only in opposition to Apple's motion for
13     summary judgment on non-infringement and in its response to this Court's
14     order requiring it to show cause as to why it should not be sanctioned.
15     Virtually none of its real infringement theory was reflected in its pleadings,
16     infringement contentions or expert reports.  Therefore, for the better part of
17     two years (plus the time period in which Apple was monitoring Straight
18     Path's IPR proceedings), Straight Path kept both Apple and the Court
19     guessing about what its actual infringement theories really were.  This
20     deprived Apple of the opportunity to challenge Straight Path's patently
21     obvious infringement theory via an early dispositive motion under 35
22     U.S.C. §§ 101 or 103.

   c. At the expert report stage, Straight Path dropped an entire patent from its assertions, yet never informed Apple that it was doing so, thereby ensuring that Apple and its attorneys and experts continued to devote resources and fees to their non-infringement and invalidity analysis and expert reports with respect to that patent.

      d.   Straight Path pursued an inflated damages theory that was more than 16 times the amount of any license Straight Path had ever received for the patents-in-suit and that hinged on factual assertions regarding marking and pre-suit notice that were contradicted by Straight Path's own 30(b)(6) witness on damages.

      e.   Straight Path disclosed at least four inconsistent and incompatible infringement and validity theories on the '208 patent, then ultimately failed to defend the patent on the merits at the PTAB during the course of Apple's *ex parte* reexamination.

## IV. COSTS PAID BY APPLE

28. In addition to attorneys' fees, Apple is also seeking costs that it incurred in connection with its expert witnesses.

29. As part of its defense, Apple engaged technical experts Owen Astrachan and Bruce McNair, consulting source code expert Walter Overby, as well as damages expert John Hansen.

30. Owen Astrachan is a Professor of the Practice of Computer Science and Associate Director of Undergraduate Studies in the Computer Science Department at Duke University. He has studied and practiced in the fields of computer science and mathematics for more than 30 years, and have been a professor of computer science since 1993. Dr. Astrachan received an AB degree with distinction in mathematics from Dartmouth College in 1978. At Duke University, he earned a master's degree in mathematics in 1979, a master's degree in computer science in 1989, and a PhD in computer science in 1992. In total, Apple has paid Dr. Astrachan $42,556.03.

31. Bruce McNair is a Distinguished Service Professor of Electrical and Computer Engineering at Stevens Institute of Technology in Hoboken, NJ. He has studied and practiced in the fields of electrical engineering, computer engineering, and computer science for over 40 years, and have been a professor of electrical and computer engineering since 2002. Mr. McNair received his Masters of Engineering degree in Electrical Engineering from Stevens Institute of

DEFENDANT APPLE INC.'S MOTION FOR ATTORNEYS' FEES (ATTACHING EXHIBITS A AND B)
CASE NO. 3:16-CV-03582-WHA         9

1   Technology in 1974 and his Bachelor of Engineering degree in the field of Electrical Engineering
2   from Stevens Institute of Technology in 1971.  In total, Apple has paid Mr. McNair $55,204.68.

3       32.    Walter Overby is the founder of Devonwood Logistics, a firm that provides legal
4   consulting services to law firms for software-related intellectual property cases.  Mr. Overby has
5   experience in a wide range of technologies, focusing on software, and has nine years' experience
6   supporting counsel and expert witnesses involved in patent and trade secret litigation.  Earlier in
7   his career, Walter specialized in software product development.  His technical specialties include
8   application design, team management, programming, development tools, web, database, and
9   algorithms.  In total, Apple has paid Mr. Overby $32,470.71.

10      33.    John Hansen is the Vice President and founding member of TM Financial
11  Forensics, LLC ("TMF"), a business, economic, financial and damages consulting company.  He
12  is a Certified Public Accountant licensed in the State of California, Certified in Financial
13  Forensics, a Chartered Global Management Accountant and a Certified Licensing Professional.
14  Mr. Hansen graduated with honors from Santa Clara University in 1989 with a Bachelor of
15  Science in Commerce, degree in finance and minor in economics, and currently serves on the
16  Advisory Board for the Leavey School of Business at Santa Clara University.  In total, Apple paid
17  Mr. Hansen's firm $417,968.14.

18      34.    In addition, as this case neared the eve of trial, Apple engaged the services of trial
19  and jury consulting firm The Focal Point LLC.  In connection with trial consulting, mock jury and
20  trial, and production of graphics, Apple paid The Focal Point LLC $98,639.30.

21      35.    Apple is seeking only a fraction of the costs that it incurred defending this case.
22  For example, Apple is not seeking the cost of travel expenses, deposition and transcript costs, and
23  shipping costs for expert witness depositions.  Moreover, Apple is not seeking reimbursement for
24  third-party costs that were not engaged by Hogan Lovells and that Apple uses in managing its
25  discovery process, including third-party services that handled most of the collection and
26  processing of electronic discovery in this matter.

1   I declare under penalty of perjury under the laws of the State of California that the
2  foregoing is true and correct.
3   Executed April 18, 2019 in San Francisco, California.

      */s/ Clayton C. James*
      Clayton C. James