RUSS, AUGUST & KABAT
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Brian D. Ledahl, SBN 186579
bledahl@raklaw.com
Benjamin T. Wang, SBN 228712
bwang@raklaw.com
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
STRAIGHT PATH IP GROUP, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| STRAIGHT PATH IP GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | **Case No. 3:16-cv-3582-WA** <br><br> **PLAINTIFF STRAIGHT PATH IP GROUP, INC.'S OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION FOR ATTORNEYS' FEES** <br><br> Date: Thursday, June 20, 2019 <br> Time: 8:00 a.m <br> Courtroom: 8, 19th Floor <br> Judge: Hon. William Alsup |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................... 1

II.    THIS CASE AND THE MANNER IN WHICH IT WAS LITIGATED DOES NOT WARRANT AN AWARD OF FEES ....................................... 1

III.   STRAIGHT PATH PRESENTED A REASONABLE THEORY OF INFRINGEMENT.................................................................................. 3

    A.    Straight Path's Theory Of Infringement Was Aligned With The Purpose Of The Invention.................................................................4

    B.    Straight Path's Analysis Was Based On An Agreed Claim Construction.........................5

    C.    Straight Path Presented A Reasonable Theory Of Infringement Under The Agreed Claim Construction.................................................................7

    D.    Straight Path Understood Its Infringement Theory To Be Consistent With Its Prior Arguments About The Validity Of Its Patents .................................................11

IV.   STRAIGHT PATH CONDUCTED THIS LITIGATION APPROPRIATELY ............... 14

    A.    Straight Path Asserted A Consistent Theory Of Infringement ........................................14

    B.    Straight Path Asserted An Appropriate Theory Of Damages .........................................15

        1.    Straight Path factually supported its claims for pre-suit damages ........................... 16

        2.    Straight Path factually supported its claims for willful infringement ..................... 19

        3.    Straight Path asserted a proper royalty theory that was never adjudicated by the Court ....................................................................................20

    C.    Straight Path Acted Appropriately Regarding the '208 Patent .........................................21

    D.    Straight Path Acted Appropriately Regarding the '121 Patent .........................................22

V.    APPLE SEEKS INAPPROPRIATE FEES ........................................................ 23

    A.    Apple Seeks Fees For Activities Other Than This Case .........................................23

    B.    Apple Fails To Properly Apportion Its Requests .........................................24

    C.    Apple's Overall Request Is Excessive.................................................................25

VI.   CONCLUSION...........................................................................................25

**STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEY'S FEES**

# TABLE OF AUTHORITIES

**Cases**

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  23 F.3d 374 (Fed. Cir. 1994)............................................................................23

*Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017)........................................................................17

*Bandag, Inc. v. Gerrard Tire Co.*,
  704 F.2d 1578 (Fed. Cir. 1983)........................................................................17

*Biax Corp. v. Nvidia Corp.*,
  626 Fed. Appx. 968 (Fed. Cir. 2015)..................................................................4

*Collectors Universe, Inc. v. Blake*,
  2015 WL 12698449 (C.D. Cal., Mar. 16, 2015)..................................................2

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
  559 F.3d 1308 (Fed. Cir. 2009)........................................................................17

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*,
  2016 WL 5842187 (C.D. Cal., Oct. 5, 2016)......................................................2

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ............................................................................2

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ........................................................................................1

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
  318 F.Supp. 1116 (S.D.N.Y. 1970)..................................................................20

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) ..................................................................................19

*Hanson v. Alpine Valley Ski Area, Inc.*,
  718 F.2d 1075 (Fed. Cir. 1983)........................................................................17

*In re Keegan Mgmt. Co., Sec. Litig.*,
  78 F.3d 431 (9th Cir. 1996) ..............................................................................2

*In re Protegrity Corp.*,
  2017 WL 747329 (N. D. Cal., Feb. 27, 2017) ..................................................16

*Lieb v. Topstone Indus., Inc.*,
  788 F.2d 151 (3d Cir. 1986)..............................................................................1

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
  2014 WL 6844821 (N.D. Cal. Sept. 15, 2014) ................................................16

*Morgan v. County of Yolo*,
  277 Fed.Appx. 735 2008 WL 2019591 (9th Cir., May 8, 2008) ..........................2

*Mytec Prod. Inc. v. Harris Research, Inc.*,
  2010 WL 11509000 (S.D. Cal. Feb. 4, 2010) ..................................................22

*New Alaska Dev. Corp. v. Guetschow,*
    869 F.2d 1298 (9th Cir. 1989) ............................................................ 2, 24

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
    134 S.Ct. 1749 (2014) ............................................................................. 1

*Oracle America, Inc. v. Google Inc.,*
    2011 WL 5576228 (N.D. Cal. Nov. 11, 2011) .................................... 18

*Phonometrics, Inc. v. Westin Hotel Co.,*
    350 F.3d 1242 (Fed. Cir. 2003) ............................................................ 2

*Samsung Electronics Co. Ltd. v. Straight Path IP Group Inc.,*
    696 Fed. Appx. 1008 (Fed. Cir. 2017) ..................................... 6, 7, 12

*Small v. Implant Direct Mfg. LLC,*
    2014 WL 5463621 (S.D.N.Y., Oct. 23, 2014) .................................... 2

*Stone Basket Innovations LLC v. Cook Medical LLC,*
    892 F.3d 1175 (Fed. Cir. 2018) ............................................................ 2

*Straight Path IP Group, Inc. v. Sipnet EU S.R.O.,*
    806 F.3d 1356 (Fed. Cir. 2015) ............................................................ 6

*United States v. Blodgett,*
    709 F.2d 608 (9th Cir. 1983) .............................................................. 24

*Worldwide Home Products, Inc. v. Bed, Bath & Beyond, Inc.,*
    2015 WL 1573325 (S.D.N.Y., Apr. 9, 2015) .................................... 23

**Statutes**

35 U.S.C. § 287 ................................................................................. 16, 17

**STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

RUSS, AUGUST & KABAT

## I. INTRODUCTION

Apple contends that this case stands out from the norm as unusually weak or without merit so as to justify an award of fees. But ultimately, the dispute between the parties turned on disagreements about the proper application of agreed claim construction language and the implications of arguments made in other proceedings. Straight Path did not bring this action in bad faith and did not believe its claims were frivolous.

Straight Path also denies that it engaged in unreasonable litigation tactics. For example, Apple argues that it was improper for Straight Path to assert a claim for pre-suit damages due to an alleged failure to satisfy the marking requirement. But at least one of the asserted patents involved only an assertion of a method claim as to which no marking requirement would apply. While this Court ultimately ruled that Apple's accused systems did not infringe Straight Path's patent claims, the fact of such a determination does not make this case exceptional. No court holds that summary judgment in favor of one party alone renders a case exceptional. As discussed in detail below, Straight Path acted in good faith in asserting its litigation positions and in applying the agreed claim constructions to its understanding of the operation of Apple's systems. Straight Path therefore respectfully requests that the Court deny Apple's motion.

## II. THIS CASE AND THE MANNER IN WHICH IT WAS LITIGATED DOES NOT WARRANT AN AWARD OF FEES

Apple must show that this case is an outlier to justify fees under Section 285 by showing that it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). Relevant factors to consider in a fees motion include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19 (1994) (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). The Supreme Court has noted that a "case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-

RUSS, AUGUST & KABAT

run cases to warrant a fee award." *Octane*, 134 S.Ct. at 1757. Put simply, "[e]xceptional cases are, by definition, the exception." *Collectors Universe, Inc. v. Blake*, 2015 WL 12698449, *1 (C.D. Cal., Mar. 16, 2015) (denying fee motion for party that obtained summary judgment of invalidity).

A case is not exceptional simply because one party prevails; much more must be shown to support a fee award. "[A] strong or even correct litigating position is not the standard by which we assess exceptionality." *Stone Basket Innovations LLC v. Cook Medical LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018) (affirming denial of attorneys' fees). "[W]here a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims." *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, 2016 WL 5842187, *4 (C.D. Cal., Oct. 5, 2016) (quoting *Small v. Implant Direct Mfg. LLC*, 2014 WL 5463621, *3 (S.D.N.Y., Oct. 23, 2014)).

Apple's burden to seek fees under other theories such as Section 1927 or the Court's inherent power requires even more: a showing of subjective bad faith. Such claims are governed by Ninth Circuit law. *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003). Sanctions under Section 1927 "must be supported by a finding of subjective bad faith." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). This requires a showing that a frivolous argument was knowingly or recklessly raised, or that a claim was advanced for the purpose of harassing an opponent. *Id., see also In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Sanctions under Section 1927 are an abuse of discretion where an adverse result was not "so obvious in advance that it can be inferred that [counsel] knowingly or recklessly pursued a futile claim." *Morgan v. County of Yolo*, 277 Fed.Appx. 735, 736, 2008 WL 2019591, *1 (9th Cir., May 8, 2008). Sanctions under the Court's inherent power also are only "available if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). Thus, Apple must demonstrate more than exceptionality under these doctrines – it must demonstrate subjective bad faith by Straight Path.

This case should not give rise to an award of fees under Section 285, or under the higher standards of Section 1927 or the Court's inherent powers. This case was not unusually weak or brought in bad faith. It was filed in 2016 only after the Patent Office had confirmed the validity of

2

the patents in IPR proceedings. Nor does Apple does not assert that Straight Path failed to investigate its claims. Rather, Apple relies on 1) its ultimate success in arguing non-infringement; and 2) allegations that Straight Path conducted this litigation inappropriately, which rely on the assumption that various issues the Court never ruled on would have been resolved in Apple's favor.

The first argument does not make the case exceptional. The parties disputed the implications of the agreed construction of "is connected". But Apple never sought to have the construction clarified to include the additional restrictions it argued for on summary judgment. Though Apple argued that the claim construction was limited by prosecution disclaimer through arguments to the Federal Circuit, it did not present that theory in its claim construction contentions or briefing. Essentially the parties had different views of the meaning of the claim construction. As explained in greater detail in Section III, Straight Path's view was not unreasonable.

Apple's second argument also does not make the case exceptional. Apple argues that various issues, particularly damages issues, would have been resolved in Apple's favor, and that this makes the case exceptional. But these issues were never resolved, would not have been resolved short of a trial, and the resolution of such issues in Apple's favor was not a foregone conclusion. As explained in Section IV, Straight Path presented reasonable assertions that were consistent with the applicable law and the relevant evidence.

Apple's burden under either Section 1927 or the Court's inherent power requires even more than Section 285: an affirmative showing of bad faith. The record does not support such a finding. Straight Path did not believe its positions were non-meritorious. For the one issue actually adjudicated in Apple's favor, infringement of the "is connected" claim element, Straight Path did not believe its infringement theory was incorrect or inconsistent with prior arguments and rulings. As to the other issues, the record does not show that Straight Path proceeded in bad faith.

## III.    STRAIGHT PATH PRESENTED A REASONABLE THEORY OF INFRINGEMENT

Apple's main argument for exceptionality asserts that Straight Path's infringement theory was unusually weak. But Straight Path asserted a reasonable infringement theory that it understood to be within the agreed claim construction. While the Court later entered a contrary ruling, that

does not make a case exceptional. *See Biax Corp. v. Nvidia Corp.*, 626 Fed. Appx. 968, 971-73 (Fed. Cir. 2015) (reversing grant of fees under Section 285 as an abuse of discretion because a disagreement about the meaning of a claim construction was not resolved until the district court ruled on summary judgment and it was not unreasonable for the plaintiff to assert infringement under the literal language of the claim construction).

### A. Straight Path's Theory Of Infringement Was Aligned With The Purpose Of The Invention

Straight Path's asserted patents relate to techniques to allow computer processes to establish direct, point-to-point communications over a computer network like the Internet. The claims recite, for example, "a method for enabling point-to-point communication between a first process and a second process over a computer network." Ledahl Decl., Ex. A ('704 patent), claim 4. Point-to-point communications can be used for voice and video. *Id.* at Col. 1:48-50. Establishing such communications requires that the two devices know one another's device address, such as an Internet Protocol ("IP") address. *Id.* at Col. 1:22-26. Because many devices connect to the Internet with temporary IP addresses (that would not necessarily be known to other devices), establishing point-to-point communications could be difficult. *Id.* at Col. 1:53-56.

The Straight Path patents solved this problem by allowing a device to communicate with a server to determine if the other device is connected to the network at the time the caller places the call, and if so, providing the other device's current IP address to the caller, to enable the devices to establish a direct, unmediated, point-to-point communication. The patent claims, such as claim 4 of the '704 patent (from which asserted claim 6 depends), claimed a protocol where a first process would contact a server with a query about the connected status of a second process, and the server would only provide the first (querying) process with the IP address of the second process if it was currently connected to the network. These communications could be thought of as Phase 1 of the process, signaling communications between the endpoint and the server. Only after the server provided the IP address of the second process would the first and second process switch to Phase 2, where they establish point-to-point communication with one another, no longer intermediated by the connection server. Phase 1 is just signaling to set up Phase 2. No audio or video is conveyed

in Phase 1 (because the devices are not yet connected). The direct point-to-point communication line between the devices is the "call" and allows audio/video communication.

Straight Path's analysis of Apple's accused Face Time system reasonably concluded that this was how Apple's system worked. Apple's system gives users the illusion of a process that works the same way as making a traditional telephone call, but in fact works very differently. In Apple's system, Phase 1 involves a first device sending a message to a central server. The central server then sends a message to the second device, causing it to ring. At the second device, if the user "accepts" the communication, the second device sends an acceptance message to the server (not to the first device). Apple's server makes a determination of whether the second process is currently on-line and willing to accept the call at the time when the caller placed the query. At this time, the first and second devices have still not begun Phase 2 of establishing a point-to-point communication between one another. Instead, after the server receives the second device's accept message, the server sends a message to the first device, containing the second device's IP address. Only then do the first and second devices begin Phase 2 of setting up the point-to-point communication between them. *See generally* Ledahl Decl., Ex. B (Cole Corrected Infringement Report) at pp. 10-27. While this entire process can seem instantaneous to a human user (so that the user may not perceive a meaningful time delay between accepting the communication and being connected), the devices actually perform this complex exchange of messages with the server (and not each other) before they begin to establish the actual point-to-point communication.

**B.  Straight Path's Analysis Was Based On An Agreed Claim Construction**

This Court's summary judgment turned on a particular claim term – "is connected/on-line status." In claim 1 of the '704 patent, for example, the claim recites "program code for transmitting, to the server, a query as to whether the second process is connected to the computer network." Claim 4 recites "B. receiving a query from the first process to determine the on-line status of the second process; C. determining the on-line status of the second process." The parties agreed that "is connected" and "on-line status" had the same meaning. Specifically, both terms meant "is connected to the computer network at the time that the query is transmitted to the server."

That construction came verbatim from the Federal Circuit. *See Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015).

No language in the construction restricted the mechanism or process by which the server must make the determination of connection status. For example, the construction does not require that the determination must be made by means of a connection server contacting an always-accurate database.[1] The Federal Circuit never included such a requirement in its construction, and Straight Path did not understand the construction to contain such a further requirement. In its claim construction disclosures and submissions, Apple never requested such a requirement. *See* Dkt. # 68 (Joint Claim Construction Statement). To the extent Apple believed that the claim was somehow further limited than the express language of the Federal Circuit's construction, it never disclosed that position in its local patent rule disclosures.

Straight Path understood the claim construction to require a determination whether the second process was connected at the time the query is transmitted to the server. The construction did not specify how that determination must be made. Straight Path understood this to be akin to a question like: "Is the temperature 75 degrees now?" when transmitted at 4:00 p.m. To answer such a question, one might immediately consult a thermometer, or check some other information, before responding either yes or no, based on the actual temperature at 4:00 p.m. The fact that the response might be determined at 4:01 p.m. by looking at the information that was current at 4:00 p.m. (the relevant time of the query) would not change the fact that the response matched the query by providing accurate information for the time of the query. Straight Path submitted evidence that Apple's system worked in exactly this way: it received a query from a first process, effectively asking (among other things) "is the second process connected now?" Apple's system promptly performed a check and would only respond positively if the second process was, in fact, connected at the precise moment that the query was transmitted. While this determination was, in part, retroactive, it still answered precisely the question asked. Importantly, it did so immediately upon receiving the query, in real time, right when the caller wanted to place the call. *See Samsung*

---

[1] Apple's expert agreed. Ledahl Decl., Ex. C (Astrachan Depo.) at 174:4-175:10 ("I don't think that the claims talk about a particular kind of database, nor does this statement about 'connected at the time the query is transmitted to the server' discuss any particular kind of database.").

**STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

*Elecs.*, 696 Fed. Appx. At 1013 (recognizing that the asserted prior art will not "determine whether the second process *is connected* to the [computer] network *at the time the query is transmitted to the server*, i.e., whether a user is on-line at the relevant time." (internal quotations omitted)).

Nothing in the claim construction prohibited this manner of responding to the query, nor did Straight Path ever understand the construction to be limited to exclude such a system. In fact, Straight Path understood the Federal Circuit's *Samsung* opinion to suggest that the construction would cover such a system. The Court stated that "not only is the prior art not designed to keep track of current online status, it is not designed to check online status when responding to a query for a user's IP address." *Samsung*, 696 Fed. Appx. at 1013. Apple's system checks online status when responding to a query.

### C. Straight Path Presented A Reasonable Theory Of Infringement Under The Agreed Claim Construction

While this Court ultimately concluded that Straight Path's infringement theory was not consistent with the claim construction entered by the Federal Circuit, Straight Path respectfully submits that its theory was reasonable and consistent with its understanding of that construction.

Apple's system implements a series of messages before providing a first device with the information needed to begin establishing a point-to-point communication. Apple's documents contained this figure depicting some of these messages that was relied on by Apple's expert, Professor Astrachan. Ledahl Decl., Ex. C (Astrachan Depo.) at 20:4-21:18.



RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

We have annotated that figure to show the separation between the signaling between the devices and the server (Phase 1) – shown in a red box, and establishing the point-to-point connection between the devices (Phase 2) – shown in a blue box. As Apple's expert confirmed, the actual "call" (the video or audio communication takes place only at the bottom of the figure (labeled "Media"). Ledahl Decl., Ex. C (Astrachan Depo.) at 64:12-65:2.

In Apple's system, a caller device sends a message (referred to as an "Invite Request") to an Apple server. Ledahl Decl., Ex B (Cole Corrected Infringement Report) at ¶¶ 48-52, 152, 243-249; Ex. D (Cole Decl. in Opp. to MSJ) at ¶¶ 5-6, 15-17; Ex. C (Astrachan Depo.) at 17:9-20:16, 58:16-59:15. The Apple server immediately looks up whether the callee device is registered in its database of connected devices. If it is not, Apple will not provide a positive connection response to the caller device. Ledahl Decl., Ex. B (Cole Corrected Infringement Report) at ¶¶ 49-53; Ex. E (Thurmulai Deposition) at 59:3-61:16; Ex. D (Cole Decl. in Opp. to MSJ) at ¶ 18. If the callee device is registered, Apple's server will immediately send a message (referred to as an "Invite Push") to the callee device *to determine if the callee device is online*. Ledahl Decl., Ex. B (Cole Corrected Infringement Report) at ¶¶ 42, 53; Ex. F (Cole Reply Infringement Report) at ¶¶ 26-27; Ex. D (Cole Decl. in Opp. to MSJ) at ¶19. Ex. C (Astrachan Depo.) at 37:25-38:9, 178:15-179:9 ("For FaceTime to be able to contact the callee, it has to be able to determine how the callee is connected. And, as I've written in my report, it does that by sending a message, using the presence tables to connect the callee.").

If the callee device is online and accepts the communication (such as by a user pressing an accept button to "answer" a call), the callee device sends a message back to the Apple server (referred to as an "Accept Request") indicating that it is online and accepts the call. Ledahl Decl., Ex. B (Cole Corrected Infringement Report) at ¶¶ 53-55; Ex. D (Cole Decl. in Opp. to MSJ) at ¶ 20; Ex. C (Astrachan Depo) at 42:2-10, 60:11-19. Even though the callee has "answered" the call at this point, the two devices are still not connected to one another and cannot yet begin direct communications. Ledahl Decl. Ex. B (Cole Corrected Infringement Report) at ¶¶ 59, 81-82; Ex. C (Astrachan Depo.) at 64:2-10.

STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

When Apple's server receives the Accept Request message, it determines that the second device is connected to the network at the time of the query. It knows this because it sent its invite request to the last known IP address for the callee (the registered address) to confirm that the callee is still connected. If the callee receives the message, it necessarily means that it is not only online now, but has been online continuously since the last registration with the database (which predated the query). Thus, in receiving the accept message, the server determines that the callee is both presently connected and was connected at the time the query was transmitted to the server. Ledahl Decl., Ex. B (Cole Corrected Infringement Report) at ¶¶ 49-56, 243-255, 292-300; Ex. D (Cole Decl. in Opp. to MSJ) at ¶¶ 18-24; Ex. C (Astrachan Depo.) at 43:17-25, 180:10-182:22.

Having determined that the callee device "is connected," the Apple server sends a message to the caller device (called an "Accept Push") confirming the second device's availability, and, for the first time, provides the first device with the second device's IP address. Ledahl Decl., Ex. C (Astrachan Depo.) at 60:11-62:19, Apple's server will never provide the callee's IP address to the caller's device unless the callee was connected at the time that the query was sent. *Id.* at 91:14-25, 102:22-103:1, 146:1-20, 164:9-165:23.[2] At this point the two devices still have not established any direct point-to-point communication. Only after receiving the Accept Push message from the server, do the two devices start setting up the point-to-point communication. Ledahl Decl. Ex. B (Cole Corrected Infringement Report) at ¶¶58-59. Only after that communication (the actual "call") is established can they exchange voice or video data. *Id.*; *see also*, Ex. C (Astrachan Depo.) at 64:2-65:2. All of these messages and the point-to-point communication set up take place instantaneously from the user perspective, but they happen in a precise sequence. Without the successful completion of the messages between the devices and the server (Phase 1), there is no set-up (or even attempted set-up) of a point-to-point communication between devices (Phase 2).

Straight Path's belief that this system met the agreed claim construction was not unreasonable. As discussed above, after receiving the query from the first device, the Apple server

---

[2] Professor Astrachan speculated that it might be possible for a device to connect after the query and for an accept request to be sent, but admitted that it was merely an assumption and that he had seen no data demonstrating that it ever happened or was actually possible. Ledahl Decl., Ex. C (Astrachan Depo.) at 92:2-93:18.

**STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

immediately sends an invite message to determine that it is currently on-line. The Apple server receives an Accept message from the second device, and based on the server receiving that message, the server has determined that the callee device is on line at that time (and was necessarily on line since its last registration with the server, including at the precise time of the query). Only then does the Apple server provide the IP address of the callee device to the caller device so that they can begin setting up a point-to-point communication.

Straight Path believed in good faith that this was consistent with the agreed claim construction and presented substantial evidence to support its infringement claims. This evidence included expert testimony that Apple's system literally and expressly met the agreed claim construction. Ledahl Decl., Ex. B (Cole Corrected Infringement Report) at ¶¶ 243-265 ("The parties agreed that the construction of 'is connected to the computer network" is "is connected to the computer network at the time that the query is transmitted to the server.' The functionality above shows infringement under the agreed construction. The caller device only receives the response push with the connection blob if the callee is connected to the network at the time the query (Invite Request) was sent by the caller.") (¶ 254), ¶¶ 292-300; Ex. D (Cole Decl. in Opp. to MSJ) at ¶ 24 ("Apple's devices running FaceTime meet the 'is connected' limitation of the Asserted Claims because they transmit a query as to whether the callee device is connected to the computer network at the time the query (the invite request) is transmitted to the server, and because the Apple servers determine whether the callee device is presently connected at the time the query is transmitted to the server, and because the network address of the callee device is provided to the caller device when the callee devices [sic] connected at the time the query is transmitted to the server.")

Many of Apple's arguments mischaracterize Straight Path's positions or the evidence by vaguely referring to a "call" without distinguishing between the Phase 1 signaling messages and the Phase 2 direct point-to-point communications. But this conflates communications between the endpoints and the server with communications between the two endpoints directly. For example, Straight Path's expert explained that by using the patented system, the signaling messages (between endpoints and the server) could be used to determine on-line status before the endpoint

**STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

devices attempted to establish a point-to-point communication between one another. Ledahl Decl., Ex. G (Cole Invalidity Rebuttal Report) at ¶ 54. Apple describes both the signaling messages with the server (Phase 1) and the point-to-point communication (Phase 2) all as the "call" to suggest that Mr. Cole applied the patents in a manner inconsistent with Apple's systems. *See, e.g.* Mot. at 5. But when Mr. Cole referred to the set-up of a "call," it is clear that he was referring to the difficulty and cost of setting up the point-to-point communication between the endpoints (Phase 2), not the entire process of both signaling messages with the server (Phase 1) and the separate point-to-point communication (Phase 2). Mr. Cole explicitly pointed out that without current information (from signaling messages with a server), a caller might, for example, "attempt to make a point-to-point connection using network protocol addresses from previous connections." Ledahl Decl., Ex. G (Cole Invalidity Rebuttal Report) at ¶ 54. As discussed above, in Apple's system, like the patented system, the caller never attempts to set-up the point-to-point communication until it first receives positive indication from the server that the second process is available. Straight Path extensively explained the detailed, and good faith, basis for its contention of infringement in prior briefing both to this Court and to the Federal Circuit, all of which demonstrate that Straight Path had a legitimate basis for its claims. While the Court ultimately disagreed with Straight Path's theory, that theory was neither ridiculous, nor expressly contradicted by some prior ruling of this or any other Court.

### D. Straight Path Understood Its Infringement Theory To Be Consistent With Its Prior Arguments About The Validity Of Its Patents

Prior to this Court's grant of summary judgment, no court had ever ruled on Straight Path's infringement theory or issued any ruling clarifying the meaning of the claim term beyond the words of the construction discussed above. Apple argues that the Federal Circuit had determined that Straight Path's patents could not apply to Apple. Straight Path did not understand that to be the case. The Federal Circuit only ever passed on the question of validity of Straight Path's patents in prior proceedings, specifically on the validity of the patent claims over systems called WINS and NetBIOS. As discussed in greater detail below, Straight Path argued that its patents claimed systems and methods that worked differently than WINS and NetBIOS. In those prior-art systems,

11

when a first device contacted a server seeking information about the address of a second device, it was not asking about the current status of the second device, but rather just the last known address of the second device, whether or not that second device remained connected. The Federal Circuit held that the prior art involved servers "that have information that a process 'was' connected to the computer network." *Samsung Electronics Co. Ltd. v. Straight Path IP Group, Inc.*, 696 Fed. Appx. 1008, 1014 (Fed. Cir. 2017). This did not meet the claim requirements because the systems would provide the address of the second system even if it was no longer connected. As the Federal Circuit noted, the prior art systems were "not designed to check online status when responding to a query for a user's IP address." *Id.* at 1013. In contrast to the prior art, Apple's system does check online status when responding to the query (by sending a message to the callee to confirm it remains online). Ledahl Decl., Ex. C (Astrachan Depo). at 80:10-82:15, 91:14-25, 178:15-179:9.

Apple relies particularly on a statement from oral argument (not an opinion of the Federal Circuit) suggesting that Straight Path had "boxed itself into a pretty narrow infringement argument." Apple Mot. at 8. But the Federal Circuit Judge who made that statement went on to clarify that "a system that only does what – what NetBIOS or WINS did wouldn't infringe, right?" *Id.* (quoting Apple's Ex. 1, Dkt. #216-1, at 28-29).[3] His "boxed in" statement is not relevant to infringement in this case, because even Apple's expert admitted that Apple's system was different than NetBIOS and WINS. In particular, the NetBIOS and WINS systems used servers that received a query from one computer process about another and merely returned whatever information about the connection status of the second server was in their database, whether stale or not. Then the querying system would try to make a direct connection to the other process, but might fail if the server had provided it with outdated information. If Apple's system merely checked the presence table and returned the IP address to the caller, without checking to determine if the callee was still online, then it would be like WINS and NetBIOS. But that is not the case. Apple's system, unlike the prior art, never provides stale information to the querying process. Apple's system checks with the second process to confirm its current availability <u>before</u> providing

---

[3] Notably, such statements upon which Apple bases its claim of exceptionality (arguments made to the Federal Circuit in *Samsung Electronics Co. Ltd. v. Straight Path IP Group, Inc*) did not even exist until June 2017, nearly a year after this case was filed in June 2016.

**STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

information to the querying process. Apple's expert admitted that WINS and NetBIOS did not use the series of signaling messages that Apple's system uses. Ledahl Decl., Ex C (Astrachan Depo.) at 80:10-82:15. He confirmed that Apple does not send a message to a querying process that would allow it to initiate a point-to-point communication with a second process unless the second process is actually connected. *See, e.g., id.* at 91:14-25. He confirmed that, unlike WINS and NetBIOS, Apple's systems would not send a positive response with stale information. Indeed, to the specific point raised during oral argument, Apple's expert conceded that WINS and NetBIOS "are not systems that connect a caller and a callee in the same way that FaceTime is." *Id.* at 97:1-7. Straight Path's expert further confirmed that Apple's accused system is not merely a registration system (like the prior art). Ledahl Decl. Ex. F (Cole Reply Infringement Report) at ¶¶ 31-34.

Straight Path understood the statements it made to the Federal Circuit to be consistent with the distinction discussed above: the prior art disclosed systems that would receive a query and provide whatever stale information they might have about a second process, without taking any steps to verify that the second process was still presently connected to the network. In contrast, the patent claims contemplated querying for present connection status, and a determination about that present status in order to allow a live, point-to-point communication.

In the first appeal to the Federal Circuit, the issues turned only on embodiments described in the specification, and whether the claims encompassed a system that would provide stale registration information. Straight Path understood its arguments to indicate that the specification embodiments taught examples where current (not stale) information was provided. Straight Path understood discussions of particular means of achieving that currency from the oral argument to relate to exemplary embodiments. Straight Path did not understand any of those statements to be a disclaimer limiting the claim scope to a particular disclosed embodiment, and did not understand the Federal Circuit's decision to have limited the claim scope to a particular embodiment.

Similarly, during the second appeal, Straight Path understood the arguments offered by its counsel to be distinguishing the provision of stale information (as contemplated by the prior art), with the provision of current information when responding to a query, as claimed in the patents.

Again, Straight Path did not understand these statements to be disclaimers limiting the claim scope to a particular embodiment or way of making the determination of current connected status.

While Straight Path understands that the Court takes a different view of the meaning of various statements made during the heat of oral arguments, Straight Path did not intend to limit its claims in the manner that the Court has ruled, and did not understand its counsel's statements to create such further limitations. Straight Path did not understand such further limitations to be needed to distinguish the prior art at issue in the prior IPR proceedings.

## IV. STRAIGHT PATH CONDUCTED THIS LITIGATION APPROPRIATELY

Apple also asserts that the conduct of this litigation provides a basis for an award of attorneys' fees. We address below each allegation. In many instances, Apple's understanding of the applicable law, relevant evidence, or both, is mistaken. In general, Apple asks the Court to adjudicate a host of issues that were not previously ruled on (except in one instance where the Court ruled in Straight Path's favor) and to adjudicate factual issues for the first time unnecessarily. Straight Path's conduct of this litigation, however, does not support a finding of fees.

### A. Straight Path Asserted A Consistent Theory Of Infringement

Straight Path always asserted that the query from a caller device to Apple's servers was the query about connected status required by the claims, in its Complaint, infringement contentions, expert reports, summary judgment opposition, and on appeal. Apple argues that Straight Path changed its theory. Apple suggests that the theory in Straight Path's Complaint and infringement contentions was somehow different than that in Straight Path's eventual summary judgment opposition. Motion at 8-9. But Apple does not cite or quote any actual language from the Complaint or infringement contentions to support its assertion. Straight Path consistently, throughout the litigation, asserted that 1) the initial message from a device seeking a FaceTime communication was a "query" about the on-line status of a second device (as required by the claims), and 2) that Apple's servers would only provide the first device with the second device's IP address if the second device was, in fact, on line at the time of the query. *See, e.g.*, Dkt. # 84-10 (Ex. J to Second Amended Complaint) at 3 (referencing the query to the Apple server to obtain an IP address of another process), and at 5 (indicating that the Apple server will only provide the

RUSS, AUGUST & KABAT

IP address of the other process if it is actually connected at the time of the query).  This is the same theory that Straight Path asserted throughout this litigation.

Straight Path's expert, Mr. Cole, offered the same analysis in his expert report.  He used a figure produced by Apple to show the signaling that takes place before the two devices begin to establish any point-to-point communication.  *See, e.g.,* Ledahl Decl., Ex. B (Cole Corrected Infringement Report) at 10-21; 84-90.  In particular, he explained in his report how the Apple system determined the on-line status of the second (callee) process.  He noted that, based on testimony of Apple witnesses, the callee device can only receive the initial message from the server if it is connected at the time of the query, and thus a positive response can only happen if the callee device was, in fact, connected at the moment the query was sent.  Ledahl Decl., Ex. B (Cole Corrected Infringement Report) at ¶¶ 299-300, ¶ 294.  While Apple and the Court may disagree that these facts establish infringement, the arguments are not different from those advanced in summary judgment.

The evidence Straight Path submitted on summary judgment also shows it did not change its theory of infringement.  Straight Path relied extensively on its expert reports as evidence showing that summary judgment was not warranted.  If Straight Path had changed its theory, as Apple suggests, it could not have relied on the expert reports (with the supposedly different theory) as evidence to oppose summary judgment.  While this Court's filing rules limited the total amount of material Straight Path was permitted to submit with its summary judgment opposition, Straight Path submitted more than 50 pages from Mr. Cole's expert report, as evidence of Apple's infringement.  *See, e.g.,* Dkt. #177-2 (unsealed exhibit to Mr. Cole's declaration in opposition to Apple's motion for summary judgment).  Though Apple now suggests that Straight Path somehow submitted improper evidence at the summary judgment stage, Apple filed no objection to any evidence Straight Path submitted with its summary judgment opposition.

### B.    Straight Path Asserted An Appropriate Theory Of Damages

Apple asks the Court to adjudicate both factual and legal issues regarding damages for the first time in seeking fees.  Apple makes three basic arguments regarding damages, none of which supports a request for fees.  First, Apple argues that Straight Path improperly sought pre-suit

damages. But Apple misapplies the law regarding pre-suit damages and the marking requirement and also misapplies the facts and evidence regarding both marking and actual notice. Apple also argues that Straight Path inappropriately sought enhanced damages. As to this issue, the only ruling the Court issued denied Apple's motion for judgment on the pleadings, hardly a basis for finding that Straight Path's theory was inappropriate. Apple further argues that Straight Path asserted an inappropriate theory of damages regarding the amount of a reasonable royalty. This Court never ruled on this issue and Apple presents arguments that would, at best, require the Court to conduct a completely collateral proceeding regarding damages issues at this time.

Courts reject the approach Apple requests of conducting mini trials of unadjudicated issues in the context of a fee motions. As to all of the damages issues, this Court never rendered any ruling in Apple's favor. Judges in this District reject requests for a new adjudication of issues solely for the purposes of a fee motion. *See, Linex Techs., Inc. v. Hewlett-Packard Co.*, 2014 WL 6844821, *4 (N.D. Cal. Sept. 15, 2014); *In re Protegrity Corp.*, 2017 WL 747329, *3 (N. D. Cal., Feb. 27, 2017) ("evidence of the frivolity of the claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes"). Not only did the Court not actually adjudicate these issues, but the record shows that Apple specifically requested leave to file a motion for summary judgment regarding damages issues, though not the general issues of the allegedly excessive amount of damages claimed (Dkt. # 118), and that the Court did not grant that request (Dkt. # 126). The Court need not now undertake such a complex and fact-intensive inquiry solely for the purpose of considering Apple's motion for attorneys' fees.

### 1.    Straight Path factually supported its claims for pre-suit damages

Straight Path sought pre-suit damages based on both proper compliance with the marking requirement, and evidence of actual notice of its patents to Apple long before it filed suit. Apple invokes the provisions of the marking requirement of 35 U.S.C. § 287. That provision can limit damages to those arising after notice to the infringer, such as from the filing of a lawsuit.

First, Apple's arguments about marking are misplaced because one of the asserted patents, the '365 patent, involved only an asserted method claim which carries no marking requirement. Straight Path asserted infringement in its complaint of U.S. Patent No. 6,701,365 (the "'365

patent"). In its initial Complaint (Dkt. #1), Straight Path attached an exemplary claim chart for the '365 patent regarding claim 3 – a method claim. Dkt. #1-12. Straight Path identified no other asserted claim of the '365 patent in its Complaint. Straight Path subsequently served infringement contentions on October 6, 2016 which again asserted only claim 3 from the '365 patent. Ledahl Decl., Ex. I (Infringement Contentions for '365 Patent). Straight Path's Amended Complaints also only ever asserted claim 3 from the '365 patent. Dkt. # 34 (FAC); 84 (SAC). In a subsequent notice of asserted claims, Straight Path also identified only claim 3 from the '365 patent. Dkt. # 101. In its expert reports, Straight Path also asserted only claim 3 from the '365 patent. Ledahl Decl., Ex. B (Cole Corrected Infringement Report) at ¶¶ 315-359. Thus at no time in this case did Straight Path ever assert any claim of the '365 patent other than a method claim.

"The law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) (citing *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983)). Thus, there is no marking requirement for a method claim, and no limitation on damages applies to an asserted method claim regardless of marking. The only exception to this principle arises if a single patent contains both apparatus and method claims **and** the patentee asserts infringement of an apparatus claim from that patent in the litigation. *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1082-83 (Fed. Cir. 1983); *Crown Packaging*, 559 F.3d at 1316 ("In *Hanson* . . . , we held that 35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims."). While the '365 patent does contain an apparatus claim – claim 1 – Straight Path never asserted infringement of that claim. Thus, no marking requirement was ever applicable to Straight Path's assertion of the '365 patent, and no limitation on damages under Section 287 could have been applied.

Apple's arguments regarding marking also fail because Apple did not identify any product that should have been marked but wasn't. The Federal Circuit holds that a defendant asserting a limitation on damages based on a failure to mark bears a burden of production of, at a minimum, identifying devices that allegedly should have been marked. *Arctic Cat Inc. v. Bombardier*

RUSS, AUGUST & KABAT

Russ, August & Kabat

*Recreational Prod., Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). Apple made no such identification, and thus did not meet its burden of production in this case. Moreover, this burden was arguably heavier in this Court at the time that the Court entered its summary judgment ruling, and Apple failed to meet that heavier burden. At the time of summary judgment, the relevant precedents in this Court held that Apple was obliged to show that Straight Path "failed to mark patented articles offered for sale, sold, or imported into the United States before [the relevant filing date]" and after the issuance or license of a patent in suit. *Oracle America, Inc. v. Google Inc.*, 2011 WL 5576228, *2 (N.D. Cal. Nov. 11, 2011). Apple never made such a showing. It asserted a limitation on damages as its Fifth Affirmative Defense. Dkt. # 25 at 13. Straight Path sought the basis for Apple's affirmative defenses, including marking, in its Interrogatory Number 3. Apple initially provided no response. Ledahl Decl. Ex. J (Apple initial response to Interrogatory No. 3). In a supplemental response that Apple served two days before the discovery cut-off, it provided its first substantive response to this interrogatory, but still did not identify any product that was sold in the United States by Straight Path or subject to a license that practiced any claim of any patent in suit but was not marked. Ledahl Decl. Ex. K (8/29/2017 supplemental rog response). Straight Path provided evidence of marking in discovery, which Apple largely ignored, relying instead on vague statements that did not identify any allegedly unmarked products. Thus, under the law at the time, and even under *Arctic Cat*, Apple failed to carry its initial burden of production regarding the identification of allegedly unmarked products.

Even if Straight Path were shown to have failed to mark products at a relevant time, actual notice can provide a separate basis for pre-suit damages under Section 287. Apple acknowledges in its motion that Straight path sent letters to Apple about its patents that predated the lawsuit in both 2007 and 2012. Apple purports to attach one such letter as Exhibit 3 with its motion (Dkt. #216-3). Apple argues that it could not have received meaningful notice from such a short letter, and relies on deposition testimony of witnesses that were asked only about this one-page letter. But in reality, that letter and others sent to Apple contain far more information than Apple admits. For example, the 2012 letter that Apple attaches to its motion was merely a cover letter attaching a 24-page presentation about Straight Path's patents, and their applicability to Apple. Ledahl Decl.

Ex. M (Ex. 31 to the Mewes Deposition). The presentation indicated that Apple (and other companies) "use the technology disclosed" by the portfolio. *Id.* at Bates No. 57463. The presentation also specifically referenced Apple's Face Time service. *Id.* at Bates No. 57475. The presentation also identified various of the patents-in-suit, including the '704 patent, the '365 patent, and the '208 patent as applicable to such technologies. *Id.* at Bates No. 57476. Thus, Apple's suggestion that Straight Path's communications to Apple about its patents (through a representative) could not have provided Apple with actual notice presents, at a minimum, a complicated factual analysis for a finder of fact. Apple's reliance on Straight Path deposition testimony about these letters is also misplaced because Apple asked about the cover letters in isolation and without the attached detailed presentation materials. Ledahl Decl., ¶ 16. Even the 2007 letters, which preceded Apple's introduction of Face Time, set out the nature of Straight Path's patents and what they could cover to Apple. Ledahl Decl., Ex L (Mewes Ex. 27). Once again, the reasonable conclusions that could be drawn from these letters about notice to Apple was, at a minimum, a factual matter for the trier of fact.

### 2. Straight Path factually supported its claims for willful infringement

Willful infringement carries different notice standards than pre-suit damages generally. As this Court recognized in denying Apple's motion for judgment on the pleadings regarding this issue, "there is no precise rule or formula for awarding damages under Section 284, but a district court's discretion to do so is not to be exercised in 'a typical infringement case.'" Dkt. # 114 at 7. The Court noted that the standard for finding willful infringement was relaxed by the Supreme Court's decision in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931-32 (2016). The Court further noted that Straight Path had alleged Apple was aware of the patents in suit and their infringement well before the Complaint, and nonetheless continued infringing conduct. The Court found that such allegations were sufficient to claim willful infringement and denied Apple's motion for judgment on the pleadings. Straight Path provided evidence to back up its allegations. For example, the 2012 letter and presentation discussed above provided Apple with notice of the patents, and their relevance to Apple's Face Time service, but Apple nonetheless continued to offer the service. While Apple may dispute what conclusions should have been drawn from such

**STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

communications, these documents substantiate Straight Path's allegations.

Apple argues that it was improper for Straight Path to assert willful infringement. But the Court expressly ruled that Straight Path's allegations were sufficient to allege a proper basis for willful infringement, and Straight Path had evidence to substantiate those allegations that the Court held were sufficient under applicable Supreme Court precedent. Further, Apple subsequently sought leave to move for summary judgment regarding this issue (Dkt. # 118), and the Court denied such leave (Dkt. # 126). In light of all of these circumstances, Apple cannot credibly contend that it was facially unreasonable for Straight Path to maintain its claim for willfulness.

### 3. Straight Path asserted a proper royalty theory that was never adjudicated by the Court

Straight Path presented a theory of reasonable royalty supported by extensive evidence and expert opinion. Apple's motion is unclear as to what extent it actually contends that Straight Path's damages theory is a basis for its claim for fees. In the factual section of its motion (at 16), Apple includes several conclusory assertions about Straight Path's damages theory being "Grossly Unreasonable." Later, in the argument section of its motion, Apple does not mention these issues or explain how they support its fee application (it mentions only pre-suit damages and willfulness at pages 24-25 of its Motion). Regardless, the assertions by Apple about Straight Path's general reasonable royalty theory do not support an award of fees.

As an initial matter, Apple fails to explain why its assertions about this issue constitute anything more than factual issues that would ultimately have been presented to a jury. For example, Apple argues that a corporate valuation of Straight Path showed a lower value for the entity than the amount of damages calculated by Straight Path's damages expert, Mr. Dell. Apple cites no authority for the proposition that the acquisition value for a company that owns patents (which were already in litigation and where Apple disputed issues of infringement and validity) constitutes a per se limit on the reasonable royalty for Apple's infringement of the patents-in-suit. At a basic level, the hypothetical negotiation that guides a reasonable royalty analysis takes place 1) at the time of first infringement, 2) between a willing licensee and licensor, and 3) where the licensee agrees that the subject patents are both valid and infringed. *See generally, Georgia-*

**STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1   *Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). The

2   valuations that Apple points to share none of those characteristics. While Apple may have been

3   able to present arguments about these valuations to the ultimate trier of fact, it cites no case (and

4   Straight Path is aware of none) that would hold that the mere fact of such valuations provides a

5   limit on a reasonable royalty as a matter of law. When Apple sought leave to file a *Daubert*

6   challenge to Straight Path's damages expert analysis, it did not include this as an issue, suggesting

7   that the issue was not one-sided, or easily resolved as a matter of law. *See* Dkt. # 138.

8   Apple also argues that Mr. Dell's apportionment of revenue for purposes of assessing

9   damages was incorrect. Once again, this is a factual dispute that goes to the weight of Mr. Dell's

10  opinions, but certainly does not show that they were incorrect. Mr. Dell provided extensive

11  analysis explaining the basis for his apportionment opinions. Ledahl Decl. Ex. H (Dell Damages

12  expert report) at ¶¶ 52-84. Apple would have been free to challenge Mr. Dell through cross-

13  examination at trial, but it provides no basis to suggest that Straight Path's damages model and the

14  expert opinions underlying it were facially incorrect or frivolous. While Apple indicated its desire

15  to file a *Daubert* motion relating to this issue, the Court had not granted that request at the time of

16  its summary judgment ruling, and these issues were never briefed to the Court, much less decided.

17          **C.      Straight Path Acted Appropriately Regarding the '208 Patent**

18  Apple's argument relies entirely on proceedings that occurred in other fora. It contends

19  that this Court should enter an award for fees regarding the '208 patent based on proceedings

20  before the U.S. Patent Office, not on proceedings or adjudications by this Court. Straight Path

21  asserted infringement of the '208 patent in its June 2016 complaint in this matter. Apple never

22  filed a petition for Inter Parties Review ("IPR") of the '208 patent. On September 15, 2017 (after

23  the close of fact discovery in this case), Apple filed a request for *ex parte* reexamination with the

24  patent office. Dkt. # 152. Apple's request was first granted on November 9, 2017. *Id.* Less than

25  one week later, on November 13, 2017, this Court entered its order granting Apple's motion for

26  summary judgment regarding the other patents-in-suit. Dkt. # 155. As the new patent office

27  proceeding progressed, Straight Path had to weigh the continued costs of proceeding against the

28  potential benefits. This Court had already ruled on summary judgment as to the other patents-in-

suit.  Straight Path appealed that ruling, but recognized that if that appeal was successful, further assertion of the '208 patent might be unnecessary, and if the appeal was unsuccessful, further proceedings on the '208 patent alone were unlikely to yield sufficient damages to warrant the independent assertion.  Straight Path made an economic decision to limit further costs given the new circumstances presented at the time.  Straight Path further understood that it could not practically propose an amendment of the claims of the '208 patent at the patent office given the patent's expiration prior to the conclusion of the proceeding.

Given all of these factors, Straight Path decided not to pursue further proceedings on the '208 patent.  Nothing about that decision indicates that Straight Path's assertion of the '208 patent was improper.  Indeed, Apple's current theory is that Straight Path should have understood that the '208 patent was invalid, but Apple did not even request leave to file a motion for summary judgment regarding the validity of the '208 patent.  *See* Dkt. # 118.  Instead, the evidence merely shows that after this Court had entered its summary judgment ruling, Straight Path made a decision about the economic viability of pursuing the '208 patent alone under the new circumstances.  Nothing about this reflects inappropriate conduct.  Instead it reflects the ongoing evaluation of matters that any party should be expected to pursue.

### D.    Straight Path Acted Appropriately Regarding the '121 Patent

Straight Path elected to narrow its assertions at the expert stage in an ongoing effort to focus the issues in this case.  Straight Path's decision to further narrow its claims in its expert report is not misconduct, but rather compliance with the Court's directives and the interests of efficiency to narrow the claims that would be tried to the jury.  *See* Ledahl Decl., Ex. N (9/22/16 Tr.) at 24-25.  Straight Path's decision was reflected in its expert report, allowing Apple to limit the scope of its rebuttal reports.  Courts recognize that decisions to narrow the claims at issue after the close of discovery does not make a case exceptional.  *See Mytec Prod. Inc. v. Harris Research, Inc.*, 2010 WL 11509000, *5 (S.D. Cal. Feb. 4, 2010) ("The . . . determination not to pursue a claim . . . after the close of discovery, does not equate to the determination that the [claim] was asserted frivolously or in bad faith.   Rather, it is the result of the adversarial process.").  Additionally, Apple fails to either a) explain when Straight Path should have further narrowed its

**STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

claims if not between fact discovery and expert reports, or b) identify any expenditures that it made solely because of the assertion of the '121 patent. Straight Path's decision to narrow its claims on an ongoing basis does not constitute inappropriate litigation conduct.

## V.     APPLE SEEKS INAPPROPRIATE FEES

Apple's brief spends almost no space articulating the basis for the fees it seeks, instead submitting a lengthy, argumentative declaration from counsel purporting to justify the fees requested. This form of submission is inappropriate and violates the Court's rules, including its rules on page limits. Additionally, however, several aspects of Apple's request purport to seek fees inappropriately. For example, Apple seeks fees for time periods before this case was even filed. It also appears to seek fees for proceedings in other venues and not this case. Apple also seeks recovery of expert witness costs, which are not recoverable under Section 285. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994); *Worldwide Home Products, Inc. v. Bed, Bath & Beyond, Inc.*, 2015 WL 1573325, *5 (S.D.N.Y., Apr. 9, 2015). Finally, Apple's overall demand – for more than 8,000 hours of attorney time, as well as extensive expert costs – is not supported by applicable law.

### A.     Apple Seeks Fees For Activities Other Than This Case

Apple's submitted evidence does not break out time spent on this litigation from time spent on other proceedings outside this Court. As noted previously, the Complaint in this action was filed June 24, 2016. The materials submitted by Apple seek recovery for time expended by attorneys in 2014 and 2015 and in 2016 before filing in June 2016. In general, Apple does not present detailed records of the time for which it seeks to recover. It submits an exhibit to counsel's declaration containing aggregate amounts for large blocks of time. For example, the entries for Mr. James (reflected at Dkt. # 215-1, page 5) identify three large blocks of time in the aggregate: October 2014-March 2016; April 2016-May 2018, and June 2018 to the present. The same broad blocks of time are used for each Apple lawyer for whom fees are requested.

Each of these time periods includes inappropriate amounts that should not be recovered. The first (October 2014-March 2016) is entirely before this case was filed. Apple offers no explanation of how it should be entitled to recover attorneys' fees incurred before the lawsuit had

**STRAIGHT PATH'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

been filed. Apple's next block of time (April 2016-May 2018) also includes time that should not be included. As noted before, this lawsuit was filed in June 2016, so any time Apple seeks before that should not be recovered. Further, this Court entered its ruling on summary judgment in November 2017. No substantive briefing on any issue took place in this Court after December 2017. Straight Path filed its notice of appeal, divesting this Court of jurisdiction in favor of the Court of Appeals, on January 16, 2018. Dkt. No. 184. Apple did not seek any award of fees in connection with the appeal proceedings, nor did the Federal Circuit order any such fees. Nonetheless, Apple's motion appears to include time recorded by attorneys for periods when the only proceedings were before the Court of Appeals. Apple's final block of time (June 2018 to the present) similarly includes time where the only proceedings were before the Court of Appeals. The Court of Appeals issued its ruling on January 23, 2019 and its mandate issued on April 4, 2019. Thus, again from June 2018-until April 4, 2019, no proceedings were ongoing before this Court, yet Apple nonetheless seeks recovery of substantial fees for that period. Apple's inclusion of these inappropriate periods cannot be separated from the time during which this case was actually ongoing because Apple has only submitted aggregations of its request over large blocks of time (though all time from the October 2014-March 2016 period should be rejected regardless).

Apple also appears to include time for other proceedings outside this case even during the time that this case was pending. For example, Apple's declaration seeks recovery for time incurred by Joseph Raffetto. But Apple's declaration concedes that Mr. Raffetto "had primary responsibility for the *ex parte* reexamination of the '208 patent." Dkt. # 215 at 2, ¶ 7. That proceeding was not part of this case, and Apple submits no evidence or legal basis to support recovery for proceedings before other tribunals and not this Court. The aggregated nature and vague descriptions in Apple's submission make it impossible to determine how much of Apple's request is attributable to other proceedings.

### B. Apple Fails To Properly Apportion Its Requests

As discussed above, Apple's request broadly aggregates activities. This cannot support a request for fees associated with some alleged multiplication of proceedings. Any remedy under these doctrines must be limited to the amount of additional expenditures incurred by the defendant

as a result of the alleged multiplicity of proceedings. *Alaska Dev..*, 869 F.2d at 1306 (citing *United States v. Blodgett*, 709 F.2d 608, 610-11 (9th Cir. 1983)). Apple has provided no such identification or apportionment as required by the applicable case law.

### C. Apple's Overall Request Is Excessive

Apple's contention that it spent more than 8000 hours of attorney time defending this case is excessive. As shown above, Apple included significant amounts that were never expended in actually defending this case. Apple did not separate this time, nor did it explain why these more than 8,000 hours were reasonably incurred in a case pending for less than 18 months before summary judgment. While Straight Path contends fees are not warranted in this case, even if the Court were to enter some award, Apple's demand is excessive in light of the record submitted.

## VI. CONCLUSION

In light of the foregoing, Straight Path respectfully requests that Apple's motion be denied.

Respectfully submitted,

DATED: May 16, 2019                        RUSS, AUGUST & KABAT

                                           _/s/ Brian D. Ledahl_____
                                             Brian D. Ledahl

                                           RUSS, AUGUST & KABAT
                                           Marc A. Fenster, SBN 181067
                                           mfenster@raklaw.com
                                           Brian D. Ledahl, SBN 186579
                                           bledahl@raklaw.com
                                           Benjamin T. Wang, SBN 228712
                                           bwayg@raklaw.com
                                           12424 Wilshire Boulevard
                                           Twelfth Floor
                                           Los Angeles, California 90025
                                           Telephone: (310) 826-7474
                                           Facsimile: (310) 826-6991

                                           **Attorneys for Plaintiff**
                                           **STRAIGHT PATH IP GROUP, INC.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on May 16, 2019.  As such, this document was served on all counsel who have consented to electronic service.

_/s/ Brian D. Ledahl_
Brian D. Ledahl

RUSS, AUGUST & KABAT