HOGAN LOVELLS US LLP
Clayton C. James (Cal. Bar No. 287800)
Helen Y. Trac (Cal. Bar No. 285824)
3 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone:      (415) 374-2300
Facsimile:      (415) 374-2499
clay.james@hoganlovells.com
helen.trac@hoganlovells.com

Aaron S. Oakley (*pro hac vice*)
aaron.oakley@hoganlovells.com
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
Telephone:      (303) 899-7300
Facsimile:      (303) 899-7333

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| STRAIGHT PATH IP GROUP, INC., | Case No. 3:16-cv-03582-WHA |
| Plaintiff, | **DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES** |
| v. | |
| APPLE INC., | Date:       June 20, 2019 |
| Defendant. | Time:       8:00 a.m. |
| | Courtroom:   12, 19th Floor |
| | Judge:       Hon. William H. Alsup |

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT APPLE INC.'S REPLY ISO
MOTION FOR ATTORNEYS' FEES
3:16-CV-03582-WHA

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................. 2

A.  Straight Path did not disclose its actual infringement theory until summary judgment .............................................................................................. 4

B.  Straight Path's "Track or Check" theory of infringement was objectively unreasonable ........................................................................................ 5

C.  Straight Path's "Retroactively Accurate" interpretation was not supported by any record evidence or by the disclosures in the asserted patents. ................ 7

D.  Straight Path introduces a new multi-phase theory to defend against claims that it improperly asserted new infringement theories ...................................... 9

E.  Straight Path's inability to defend the '208 patent before the PTAB is strong evidence that the patent was facially invalid ........................................... 9

F.  Straight Path's positions on certain issues that were not adjudicated were objectively unreasonable in light of facts not in dispute ........................... 10

1.  Contrary to Straight Path's interrogatory answers, many licensed products were not marked ..................................................................... 11

2.  The 2007 and 2012 Letters did not provide pre-suit notice of infringement .................................................................................. 12

G.  This Court has discretion to award attorneys' fees in proceedings related to the 2016 action ...................................................................................... 13

III. CONCLUSION .......................................................................................... 14

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Wowza Media Sys.*,
No. 11-CV-02243, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014) ..........................................1, 4

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
607 F.3d 817 (Fed. Cir. 2010) ...............................................................................................3

*Advantacare Health Partners v. Access IV*,
No. C 03-04496, 2004 WL 1837997 (N.D. Cal. Aug. 17, 2004) ............................................14

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
723 F.2d 1573 (Fed. Cir. 1983) .............................................................................................13

*Deep Sky Software, Inc. v. Sw. Airlines Co.*,
No. 10-CV-1234, 2015 WL 10844231 (S.D. Cal. Aug. 19, 2015) ..........................................13

*IA Labs CA, LLC v. Nintendo Co.*,
No. CV10-833, 2012 WL 1565296 (D. Md. May 1, 2012), aff'd, 515 F. App'x
892 (Fed. Cir. 2013) ...............................................................................................................13

*KlausTech, Inc. v. Google LLC*,
No. 10CV05899, 2018 WL 5109383 (N.D. Cal. Sept. 14, 2018) ........................................1, 4

*Manion v. Am. Airlines, Inc.*,
395 F.3d 428 (D.C. Cir. 2004) ...............................................................................................14

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
No. CV 13-06787, 2018 WL 7504404 (C.D. Cal. Dec. 27, 2018) ..........................................13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) .................................................................................................................3

*United States v. Collorafi*,
876 F.2d 303 (2d Cir. 1989) .....................................................................................................3

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.  INTRODUCTION

Straight Path argues that this litigation was not "exceptional" for purposes of an award of attorney's fees under 35 U.S.C. § 285 or litigated in bad faith under 28 U.S.C. 1927.  Two years of documented litigation history prove otherwise.  Straight Path's antics on the core claim construction and infringement issues in the case—reversing itself repeatedly on whether its own proposed construction was exceedingly narrow or breathtaking wide—was well documented in this Court's Order granting summary judgment of non-infringement to Apple and Cisco.  Dkt. 155.  Straight Path now spends the better part of 25 pages laying out, long after the fact, its alleged "understanding" of what its own proposed construction meant.  Yet, as with its brief opposing summary judgment, its opposition to paying Apple's fees consists largely of page after page of attorney argument untethered to anything in the actual record.

The Patent Local Rules require early and robust disclosure of a patent plaintiff's infringement theories.  *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-CV-02243, 2014 WL 709865, at *14 (N.D. Cal. Feb. 23, 2014)(holding that the local rules "require the patentee to describe ***with specificity*** where each limitation of each asserted claim is found" and that "ambiguity must be construed against [the patentee] in light of the purpose of the patent local rules, which is to establish the universe of infringement theories that will be litigated in any given case." (emphasis added)); *KlausTech, Inc. v. Google LLC*, No. 10CV05899, 2018 WL 5109383, at *6 (N.D. Cal. Sept. 14, 2018) ("[T]he patent local rules [] place the burden on the patentee to make ***explicit disclosures*** regarding all infringement theories." (emphasis added)).  Yet, Straight Path's opposition does not point to a single document or a bit of testimony in which it actually disclosed its "real" infringement theory and, instead, suggests Apple should have somehow just figured it out on its own.

Straight Path asserted the patents at issue in an original Complaint in 2014, a second Complaint in a new action in 2016, an Amended Complaint in 2016 and a Second Amended Complaint in 2017.  It also served two sets of infringement contentions.  Yet, none of those documents disclose Straight Path's "track or check" interpretation of the "is connected" limitation.  And, Straight Path's attempts to argue the merits of a theory it never disclosed did not

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 1 -

DEFENDANT APPLE INC.'S REPLY ISO
MOTION FOR ATTORNEYS' FEES
3:16-CV-03582-WHA

end with summary judgment or even appeal. Straight Path now articulates yet another spin on the "is connected" claim construction, in which there is a "multi-stage" determination that allegedly satisfies the "is connected" limitation as long as it turns out to be "retroactively accurate."

In short, Straight Path reversed itself on claim construction arguments, advocating for a critical "timing element" to preserve validity and then later reading it out of the construction entirely to allege infringement. Its real infringement theory was facially inconsistent with its prior validity arguments to multiple courts, and its explanations for the bait and switch drew incredulous responses from the judges at the Federal Circuit. Further, Straight Path took four different and contradictory positions on Apple's alleged infringement of the '208 patent—one of which its expert admits was supplied by the attorneys—and then essentially defaulted when Apple sought to invalidate that patent in an ex parte reexamination. Straight Path does not deny this. On damages, Straight Path's lawyers claimed that it and its licensees marked products consistently, but its predecessor's attorney provided a document at her deposition showing they didn't. Straight Path claimed Apple had pre-suit notice of infringement, but its CEO and Rule 30(b)(6) witness disagreed. Yet, its lawyers and expert ignored their own client's testimony, continuing to claim millions in pre-suit damages. Straight Path does not mention its CEO's testimony anywhere in its opposition, because that testimony is both damning and unrefuted.

Straight Path does not and cannot cite a single case with comparable patent plaintiff behavior that a court has found to be "unexceptional" for purposes of a fee application. There was nothing normal about how Straight Path chose to litigate this case. Worse, even after this Court and the Federal Circuit rejected Straight Path's belated "track or confirm" theory, Straight Path is still claiming that it is not at fault but, rather, this Court and Apple are the ones muddying the construction by "adding limitations." Opp. at 3. On these facts, awarding Apple its full fees and costs is both reasonable and merited.

## II. ARGUMENT

Straight Path overstates Apple's burden in requesting its attorney's fees and costs. Under §285, "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the

Hogan Lovells US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Straight Path also overstates Apple's burden in demonstrating Straight Path's bad faith, as precedent in analogous areas has long held that subjective bad faith can be proved through circumstantial evidence. *See, e.g., Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 829 (Fed. Cir. 2010) ("[A] party can prove intent to deceive the PTO based on direct evidence or on circumstantial evidence."); *United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989) ("Since bad faith and evil intent involve intangible mental processes, proof of willfulness usually must be accomplished by means of circumstantial evidence."). Straight Path's objectively unreasonable positions, conscious failure to follow the Patent Local Rules, and its overasll conduct in this case provide a more than adequate basis to infer subjective bad faith.

Straight Path argues that the 2016 action could not have been unusually weak or brought in bad faith because it was filed after the validity of the patents had been confirmed in *IPR* proceedings. Opp. at 2-3. That might be true if (a) Straight Path had stuck to the arguments it made during the IPR proceedings, and (b) if the Court had ruled against Straight Path on validity. But that is not what happened. Straight Path reversed the arguments it made before PTAB and the Federal Circuit, and the Court then ruled against Straight Path's exceptionally weak and untimely substitute infringement theory. During the PTAB and Federal Circuit proceedings, Straight Path argued for a claim construction of the "is connected" term that rendered its "track or check" theory not just exceptionally weak, but exceptionally frivolous. Because revealing this theory at the outset of the case would have exposed its now breathtakingly broad "track or check" infringement theory to an early and decisive invalidity attack, Straight Path simply played hide the ball, ignoring its obligations under the Local Rules. [1]

---

[1] There should be little doubt that had Straight Path fully disclosed a theory in which a caller confirms her phone is on-line by answering a call, it would have resulted in an early resolution to this case. The Court observed at summary judgment that the theory that Straight Path now calls "track or check" resulted in a concept that was patently obvious. Dkt. 155 at 14 ("[T]his expansion to Straight Path's infringement theory rests on a premise so patently obvious it cannot possibly be the key to any claimed invention[.]")

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 3 -

DEFENDANT APPLE INC.'S REPLY ISO
MOTION FOR ATTORNEYS' FEES
3:16-CV-03582-WHA

**A.** **Straight Path did not disclose its actual infringement theory until summary judgment.**

Patent L.R. 3.1 requires early and complete disclosure of a patent plaintiff's infringement theories and, once made, those disclosures are binding. *See e.g. Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-CV-02243-JST, 2014 WL 709865, at *13 (N.D. Cal. Feb. 23, 2014) ("Once served, the infringement contentions constitute the universe of infringement theories. The contentions may be amended only by order of the court and upon a showing of good cause."); *KlausTech, Inc. v. Google LLC*, No. 10CV05899, 2018 WL 5109383, at *4 (N.D. Cal. Sept. 14, 2018) ("Implicit disclosures are contrary to the purpose of the local patent rules, which require parties to disclose the basis for their contentions in order to make them explicit and streamline patent litigation." (quotations omitted)). In its opposition, Straight Path provides several pages of attorney argument regarding what it allegedly "understood" the implications of its "is connected" construction to be and how Apple might be alleged to infringe under Straight Path's "track or check," or what it now describes as its "retroactively accurate," theory. The challenge for Straight Path in opposing Apple's motion is that it does not even attempt to argue that this theory was expressly disclosed in any of its pleadings or in its infringement contentions.

Straight Path suggests that it disclosed some portion of its theory in an attachment to its Second Amended Complaint. Opp. at 14-15. The problem is, the disclosures in that attachment do not say what Straight Path suggests and do not come remotely close to disclosing a theory in which the timing of the on-line status determination is irrelevant and in which a caller confirms its own on-line status by answering a ringing phone. In fact, in context, Straight Path's attachment plainly was designed to lead Apple to believe Straight Path was still asserting a theory in which timing and accurate tracking were critical. The attachment does have the following vague statement: "If the user is not available, querying FaceTime client will learn that the user is unavailable." Dkt. 84-10 (Ex. J to Second Amended Complaint). But, this says nothing about how any determination of "unavailability" is made or whether the unavailability reflects off-line status or some other factor, e.g. the user was away from the phone and didn't hear the call. Moreover, that statement is followed immediately by the following: "The phrase 'is connected to the computer

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

DEFENDANT APPLE INC.'S REPLY ISO
MOTION FOR ATTORNEYS' FEES
3:16-CV-03582-WHA

network' has been construed by the Federal Circuit to mean 'is connected to the computer network at the time that the query is transmitted to the server.' On information and belief, Apple's systems only track the IP addresses of devices currently on-line." *Id.* That statement emphasizes both timing and accurate tracking, nothing in the attachment even hints at a theory in which an assumption or guess that turns out to be "retroactively correct" can substitute for an accurate determination of on-line status made at the precise time the query is sent to a server. To the contrary, in context it says the opposite. Straight Path does not point to any pleading or disclosure in which it articulated its "track or check" or "retroactively correct determination" theories. And, while it points to certain statements by *Apple's* expert, Dr. Astrachan, that it suggests are not inconsistent with Straight Path's theory, it does not claim that its own expert ever disclosed such a theory or that the theory was disclosed to or in any way adopted by Dr. Astrachan.

### B. Straight Path's "Track or Check" theory of infringement was objectively unreasonable

Straight Path has argued twice—once on summary judgment and then to the Federal Circuit—that its "track or check" infringement theory was unsuccessful only because Apple (and this Court) imported "additional restrictions" into the agreed claim construction. Opp. at 6 ("No language in the construction restricted the mechanism or process by which the server must make the determination of connection status. For example, the construction does not require that the determination must be made by means of a connection server contacting an always-accurate database."). It made this same "additional restrictions" argument on appeal. *See* Ex. 28 (Opening Br. in *Straight Path IP Grp., LLC. v. Apple Inc.*, Appeal Nos. 2018-1491, 2018-1492, Dkt. 40) at 14 ("The District Court also failed to acknowledge that this Court, after having actually heard the same statements the District Court relied on, held that the plain meaning of the claim term applied and did not impose the District Court's *additional limitations*."); at 15 ("In granting summary judgment, the District Court suggested it was applying this Court's construction, but instead *imported limitations* that were not part of this Court's construction."); 24 ("In reality, however, the District Court relied on isolated excerpts of oral argument statements to impose *additional*

*limitations* this Court never imposed.").

Straight Path's "additional restrictions" argument not only does not excuse its conduct, it is emblematic of Straight Path's bad faith. Apple and this Court's attention have always been focused on the "timing" element of the construction, because Straight Path had argued it was critical to patentability. Indeed, this precise timing requirement was baked into the literal language of the construction for "is connected," *i.e.*, "is connected to the computer network *at the time* that the query is transmitted to the server," at Straight Path's insistence. Yet, on summary judgment and on appeal Straight Path pretended it did not exist. One of the Federal Circuit panel called Straight Path out on this reversal during oral argument: "*Time was the underpinning* for the claim construction." Ex. 9 (Tr. of Oral Argument in *Straight Path IP Grp., LLC. v. Apple Inc.*, Appeal Nos. 2018-1491, 2018-1492 (Fed. Cir. Jan. 11, 2019)) ("*Apple* Oral Argument Transcript") at 12 (emphasis added). In affirming this Court's decision, the Federal Circuit implicitly rejected the "additional restrictions" argument. Yet, Straight Path continues not only to argue that the Court got it wrong, but that *Apple* was at fault for not seeking to "clarify" what Straight Path's preferred construction meant – after Straight Path spent two years telling the Federal Circuit and the PTAB exactly what it meant: "But Apple never sought to have the construction clarified to include the additional restrictions it argued for on summary judgment." Opp. at 3.

Straight Path's previously undisclosed "track or check" interpretation of the "is connected" construction is facially inconsistent with the arguments it made to preserve validity, and its arguments against Apple's request for fees serve mainly to emphasize that its summary judgment theory was never reasonable. Straight Path concedes that though the process might appear instantaneous to a human user, the series of messages that result in a FaceTime connection occur sequentially. Opp. at 9 ("All of these messages and the point-to-point communication set up take place instantaneously from the user perspective, but they happen in a precise sequence."); *see also id.* at 7 ("Apple's system implements a series of messages before providing a first device with the information needed to begin establishing a point-to-point communication."). By virtue of the "precise sequence," the Accept Request necessarily occurs after the Invite Push, which in

Hogan Lovells US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

DEFENDANT APPLE INC.'S REPLY ISO
MOTION FOR ATTORNEYS' FEES
3:16-CV-03582-WHA

1    turn occurs after the Invite Request (*i.e.*, the query).  In short, the server determines that the callee

2    device is online when it receives the Accept Request – not at the time the Invite Request query is

3    transmitted by the caller device. That sequences is facially irreconcilable with the construction

4    that Straight Path advocated for and won.

### C.    Straight Path's "Retroactively Accurate" interpretation was not supported by any record evidence or by the disclosures in the asserted patents.

7    Straight Path now says that a determination that happens at the very end of the connection

8    process can "confirm" an initial attempt to connect that reflected no determination at all regarding

9    current connectivity but which, by virtue of the callee answering the phone, turns out to be

10   "retroactively correct." Opp. at 6-7.  But, that simply is not what Straight Path argued to preserve

11   validity.  Instead, in *Sipnet* Straight Path insisted that there was a precise sequence and that the

12   "binary decision" had to happen at the beginning, not the end: "That binary decision has to be

13   made by the server then because it takes — the connection server under the patent is required to

14   do a different thing based upon its decision and determination."  Ex. 7 at 6:23-7:1 (Tr. of Oral

15   Argument in *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, Appeal No. 15-1212 (Fed. Cir. Sept.

16   9, 2015). Straight Path's "retroactively accurate" theory depends on removing this timing element

17   it once argued was critical to patentability, such that the determination of on-line status need not

18   occur "at the time that the query is transmitted to the server." Instead, Straight Path argues in a

19   new spin on its summary judgment argument, the determination does not have to be made

20   accurately *at* the time of the query as long as a determination is eventually made that turns out to

21   reflect what the callee's status was *as of* the time of the query:

> The construction did not specify how that determination must be made. Straight Path understood this to be akin to a question like: "Is the temperature 75 degrees now?" when transmitted at 4:00 p.m. . . The fact that the response might be determined at 4:01 p.m. by looking at the information that was current at 4:00 p.m. (the relevant time of the query) would not change the fact that the response matched the query by providing accurate information for the time of the query.

27   Opp. at 6.

28   One of the many problems with this new articulation of Straight Path's post hoc

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 7 -

DEFENDANT APPLE INC.'S REPLY ISO
MOTION FOR ATTORNEYS' FEES
3:16-CV-03582-WHA

explanation of its "understanding" is that, like its arguments on summary judgment, it is not supported by any evidence in the record, and it reads both timing and accuracy right out of the construction even though Straight Path argued both were critical. Straight Path now contends that if the callee device receives the Invite Request message, it must necessarily have been online at the time of the Invite Push message, because it has been continuously connected since the callee device's last registration. *See* Opp. at 10 ("[B]ased on the server receiving [the Accept Request] message, the server has determined that the callee device is on line at that time (and was necessarily on line since its last registration with the server, including at the precise time of the query))."). But, Straight Path doesn't point to any infringement contention disclosure of that theory, or even to any expert opinion supporting it. In fact, the actual evidence in the case was to the contrary and showed that Apple's presence tables contain stale information and inaccurate information – *i.e.*, indicate devices are online when they are actually off-line. In other words, a callee device may register with the server and drop off line before an Invite Request is sent. Moreover, as Dr. Astrachan testified, a callee that is off-line at the time of the Invite Request query may then come on-line in time to receive the Invite Push message. *See* Ledahl Decl. Ex. C [Dkt. 221-4] at 92:2-22.

When Straight Path previewed this argument at the Federal Circuit, it was accorded the same treatment this Court gave it on summary judgment. Straight Path argued:

> MR. FENSTER: [T]he temporal requirement is determining that the callee was online at the time of the query. . . . It's not requiring when that determination is made or how that determination is made. . . .
>
> THE COURT: You're saying it's okay if it's a retroactive determination, or the determination that occurs later so long as it's retroactively accurate?
>
> MR. FENSTER: As long as it's retroactively determining the right thing. . .

*Apple* Oral Argument Transcript at 12-13. A judge on the panel responded:

> THE COURT: Well, how does the comport with . . . you know, among other things we said in our *Sipnet*, the present tense is -- and is connected the computer network **plainly says that the query transmitted to the server seeks to determine whether the second unit is connected at that time, i.e. connected at the time the query**

Hogan Lovells US LLP
Attorneys At Law
San Francisco

*is se[n]t*. . . . I mean, the question answers -- is supposed to be answered at the time.

*Id.* at 13 (emphasis added).    Straight Path had no coherent response.

Worse, Straight Path's bad faith is evident in the fact that it could never explain to the Federal Circuit panel how its new "check with the callee" theory was actually covered by its patents. *See Apple* Oral Argument Transcript at 16-17 ("THE COURT: ***Because I read your specification, and I see where, you know, you've got that database environment*** and embodiment that's disclosed, ***but I don't see a whole lot else*** about this claimed invention in the specification. . . . MR. FENSTER: ***I don't think that specifically disclosed here.***").    Indeed, when further pressed, Straight Path could only point to an *unasserted* email embodiment that no one was accused of infringing. *Id.*

In short, after years of litigation, Straight Path could not answer the most fundamental questions as to how its "track or check" or "retroactively accurate" interpretations were consistent with its prior arguments or even disclosed in the patents.

**D.     Straight Path introduces a new multi-phase theory to defend against claims that it improperly asserted new infringement theories**

In its opposition, Straight Path also introduces a "multi-phase" infringement theory, which classifies certain messages that are part of the FaceTime connection process as either part of a postulated "Phase 1" or part of a postulated "Phase 2." Opp. at 4-5. Straight Path discusses these phases for more than two pages, without a single cite to the record. That is because at no prior point has Straight Path used the terms "Phase 1" or "Phase 2" to describe FaceTime's signaling process, nor are such phases included in any claim construction, or described in a single line in the patents, or disclosed in its infringement contentions, or discussed in any expert testimony. Straight Path's attorneys are, even after summary judgment and an unsuccessful appeal, simply making up infringement theories as they go along.

**E.     Straight Path's inability to defend the '208 patent before the PTAB is strong evidence that the patent was facially invalid**

Straight Path contends that fees should not be awarded on the'208 patent because Apple relies "entirely on proceedings that occurred in other fora." Opp. at 21. Not so. Straight Path's

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

DEFENDANT APPLE INC.'S REPLY ISO
MOTION FOR ATTORNEYS' FEES
3:16-CV-03582-WHA

decision not to defend the '208 patent's validity in the *ex parte* reexamination proceedings, after the Examiner preliminarily rejected the claims on six independent grounds, evidences that the '208 patent was so flimsy as to render Straight Path's district court assertions facially unreasonable.

Straight Path argues that its decision not to defend the validity of the '208 patent reflected "an economic decision to limit further costs."[2] Opp. at 22. Yet, Straight Path's desire to limit costs for *itself* does not reflect a desire to limit costs for *Apple* and is inconsistent with its attempts to protract the litigation by advancing at least *four* different theories of infringement (two of which were mutually exclusive, *i.e.* based on blocked calls and non-blocked calls) in its effort to maintain infringement without conceding invalidity while eventually defaulting before the PTO. Nor does Straight Path deny or explain why, when questioned on one of those reversals, its infringement expert admitted that Straight Path's counsel asked him to change his opinion and that he could not remember who had initially written that portion of his report. Ex. 8 (Cole Tr.) at 81. Straight Path also does not deny that its desire to "limit further costs" to itself did not prevent it from driving up Apple's costs by challenging the authenticity of a declaration signed by a prior art inventor, even though Straight Path had attended a deposition of that same inventor where he provided similar testimony. Opp. at 21-22. Straight Path also does not dispute that it "communicated" its decision not to defend the '208 patent only when the Examiner contacted Straight Path by telephone after its deadline for responding had passed. *Id.* Straight Path's decision to assert a facially invalid patent, to advance ever-changing infringement theories when the evidence was unfavorable, and finally to challenge the authenticity of a declaration rather than defend the '208 patent on the merits is exceptional and supports an award of fees.

F.     **Straight Path's positions on certain issues that were not ruled upon by the Court were objectively unreasonable in light of facts not in dispute**

With respect to the issues of marking, pre-suit notice, and reasonable royalty, Straight Path contends that because this Court has not ruled upon these issues, it cannot possibly evaluate

---

[2] Straight Path's assertion that it merely "made a decision about the economic viability of pursuing the '208 patent alone under the new circumstances," Opp. Br. at 21-22, constitutes pure attorney argument unsupported by a declaration or any other evidence.

the reasonableness of Straight Path's litigation position without conducting a mini-trial. Straight Path is mistaken, however, because the evidence upon which these legal issues turn is not in dispute.

### 1. Contrary to Straight Path's interrogatory answers, many licensed products were not marked[3]

Straight Path accuses Apple of ignoring evidence that it and its predecessor (a related entity called IDT) and their licensees marked their products, but the evidence from its own witnesses paints a very different picture and one that Straight Path cannot dispute. At the very end of discovery, Vandana Koelsch, an attorney who had performed work for predecessor IDT, produced on the morning of her appearance as a Straight Path 30(b)(6) deponent a previously unproduced internal Straight Path document, which stated: "While previous owner (IDT) did mark their product with the accused [sic] patents, subsequent licensees have not marked." Ex. 19 (Koelsch Dep. Exh. 403).

Similarly, in its interrogatory responses, Straight Path claimed that its "non-litigation licensees[4] . . . have marked all VoIP dialers believed to practice the patents-in-suit." Ex. 18 (Straight Path's November 14, 2016 Response to Apple's Interrogatory No. 9.) However, when questioned as to whether numerous product licensees had marked, Mr. Jonas, Straight Path's first Rule 30(b)(6) deponent on marking, had no knowledge of whether these products had been marked. *See* Ex. 29 (Jonas Tr.) at 154:11-164:5 (testifying that he had no knowledge of the following licensed dialer products being marked: BlastPhone, CallSpeak, Cell2Fone, Fring2Phone, LongCallz, LowFone, PCTalker, RacerCall, and RazorFone); *see also id.* at Exs. 30-41 (screenshots from the aforementioned licensed dialer products). Straight Path now argues that Apple should have identified patent practicing products, citing *Arctic Cat Inc. v. Bombardier*

---

[3] Straight Path argues that compliance with the marking statute is not required for claim 3 of the '365 patent because it is a method claim and the only claim asserted in that patent. Opp. at 16-17. Yet Straight Path's damages expert, Mr. Dell, did not apportion pre-suit damages down to this single claim or to any particular claim.
[4] With respect to its litigation-related licensees, Straight Path admits that only one has marked its products. Ex. 18 (Straight Path's November 14, 2016 Response to Apple's Interrogatory No. 9) (explaining "[m]ost of Straight Path's litigation-related licensees have denied that they practice the Patents-in-Suit.").

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Recreational Prod., Inc.*, 876 F.3d 1350 (Fed. Cir. 2017). But, that decision *post*-dates the foregoing discovery and, in any event, makes clear that the burden of pleading and proving marking is on the patentee. Here, Straight Path asserted consistent marking but could not prove it because its own witnesses *contradicted* it.

### 2. The 2007 and 2012 Letters did not provide pre-suit notice of infringement

Straight Path argued that Apple had notice of actual infringement by virtue of letters that its predecessor sent to Apple in 2007 and 2012 and used those letters as the basis for a claim to pre-suit damages. As an initial matter, Straight Path concedes that "the 2007 letters [] preceded Apple's introduction of Face Time." Opp. at 19. It follows that the 2007 letters could not have put Apple on notice that FaceTime infringed, and any claim otherwise is manifestly unreasonable.

With respect to the 2012 letter, Straight Path now argues that notice of infringement was provided by a "24-page presentation about Straight Path's patents, and their applicability to Apple." Opp. at 18. Yet in those 24 pages, FaceTime is mentioned only once and then only as an example of a video conferencing system. Ledahl Decl. Ex. M [Dkt. 221-14] at APL-STR_00057475 ("Google Talk and Apple Face Time are examples of consumer video conferencing systems."). Moreover, when listing products that Straight Path's predecessor, ICTI, believed were "related" to the asserted patents, FaceTime was ***not*** listed. *Id.* at APL-STR_00057476 ("The ICTI portfolio (US 6,108, 704; 6,226,678; 6,513,066; 6,687,738; 6,701,365; 6,829,645; 7,149,208) discloses technology that relates to both consumer and enterprise VoIP products, such as: Google Talk, Cisco Jabber, Avaya Aura Presence, Cisco Telepresence, and Cisco ATA."). Moreover, Straight Path's CEO, in his capacity as a Rule 30(b)(6) witness, categorically denied that the 2012 letter was sent to put Apple on notice that FaceTime infringed:

> Q Did you authorize Global to send this letter?
> A On behalf of the company, yes.
> Q And the date on this letter is September 25, 2012?
> A Yes.
> Q Was this letter intended to put Apple on notice that it was infringing Straight Path IP Group's patents?
> A I do not believe that was the intent of the letter.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Ex. 4 (Jonas Tr.) at 246:25-247:11.  Indeed, when asked when Apple first received actual notice

of infringement, Mr. Jonas conceded that it was in 2014 with the filing of Straight Path's initial

complaint:

> Q So what's the earliest date on which you contend Apple received
> notice of its infringement?
> A I believe that the filing of the lawsuit in the Northern District of
> California.
> Q That's the -- you're referring to the 2014 lawsuit?
> A That's right. Correct.

*Id.* at 275:20-276:7.

**G.    This Court has discretion to award attorneys' fees in proceedings related to the 2016 action**

Straight Path argues that no fees should be awarded because some of the fees sought were

spent on related proceedings, rather than the 2016 lawsuit itself.  The Federal Circuit has

interpreted attorneys' fees "to include those sums that the prevailing party incurs in the

preparation for and performance of legal services related to the suit."  *Cent. Soya Co. v. Geo. A.

Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).  Courts have interpreted such services to

include fees incurred in related proceedings before the PTO.  As explained by one court:

> Here, the legal services counsel performed for defendant during
> reexamination of the '770 Patent were related to this suit.
> Reexamination was initiated during and in reaction to plaintiff's
> action here. Further, the PTO's cancellation of the asserted '770
> Patent claims on grounds of invalidity disposed of plaintiff's
> complaint here and made defendant the prevailing party.

*Deep Sky Software, Inc. v. Sw. Airlines Co.*, No. 10-CV-1234, 2015 WL 10844231, at *2 (S.D.

Cal. Aug. 19, 2015) (declining to exclude time entries incurred in related *reexam* proceedings);

*see also Munchkin, Inc. v. Luv N' Care, Ltd.*, No. CV 13-06787, 2018 WL 7504404, at *7 (C.D.

Cal. Dec. 27, 2018) (explaining that "[b]ut for the filing of the patent infringement claim in this

case, [defendant] would not have incurred attorneys' fees and costs for the IPR and Federal

Circuit appeal."); *IA Labs CA, LLC v. Nintendo Co.*, No. CV10-833, 2012 WL 1565296, at *4 (D.

Md. May 1, 2012), aff'd, 515 F. App'x 892 (Fed. Cir. 2013) (awarding attorneys' fees, including

"fees incurred as a result of filing a petition for reexamination before the PTO.").  Here, it is

beyond dispute that the '208 *reexam* preceding (and the appeal, for which Apple does not seek

fees) was related to the 2016 action.[5]

## III.    CONCLUSION

Given the misconduct described above and in Apple's opening brief, Straight Path should be ordered to pay Apple's attorneys' fees and costs for this entire case and the '208 *reexamination* proceeding.

Dated:  May 23, 2019                                    HOGAN LOVELLS US LLP


                                                        By: */s/ Clayton C. James*
                                                            Clayton C. James
                                                            Attorneys for Defendant
                                                            APPLE INC.

---

[5]      Straight Path also argues that expert witness fees are not recoverable under section 285. Opp. at 23.  However, they are recoverable under 28 U.S.C. § 1927.  *See e.g. Manion v. Am. Airlines, Inc.*, 395 F.3d 428, 432 (D.C. Cir. 2004) (affirming award of expert witness fees under section 1927); *Advantacare Health Partners v. Access IV*, No. C 03-04496, 2004 WL 1837997, at *10 (N.D. Cal. Aug. 17, 2004) (rejecting argument that Rule 54 precluded sanctions of expert witness fees under section 1927).

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -

DEFENDANT APPLE INC.'S REPLY ISO
MOTION FOR ATTORNEYS' FEES
3:16-CV-03582-WHA